UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                      :
DERRICK WHEATT, *et al*.,                             :          Case No. 1:17-CV-00377
                                                      :
                    Plaintiffs,                       :
                                                      :
        vs.                                           :          OPINION & ORDER
                                                      :          [Resolving Docs. 15, 34]
CITY OF EAST CLEVELAND, *et al*.,                     :
                                                      :
                    Defendants.                       :
                                                      :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Plaintiffs Derrick Wheatt, Laurese Glover, and Eugene Johnson[1] spent twenty years in

jail for Clifton Hudson's murder.[2] The City of East Cleveland investigated the murder and

Cuyahoga County prosecuted the Plaintiffs.[3]  However, after exculpatory evidence emerged,

Ohio courts ordered a new trial.  The Plaintiffs were released from prison, and the charges were

dropped.[4]

    After their release, Plaintiffs sued seven East Cleveland police officers, the City of East

Cleveland, two Cuyahoga County prosecutors, and Cuyahoga County for violating

constitutional, federal, and Ohio law.[5]  Now, the East Cleveland officers and the City of East

Cleveland (hereafter, "East Cleveland Defendants" or "Defendants") ask the Court to dismiss

them from the lawsuit, alleging generally that Plaintiffs fail to state a claim.[6]

---

[1] Plaintiffs Wheatt and Glover originally filed a separate lawsuit from Plaintiff Johnson.  Following a May 16, 2017 case management meeting, this Court consolidated the two lawsuits to a single lawsuit.
[2] Doc. 1 at 2.
[3] *Id*.
[4] *Id*.
[5] *Id*.
[6] Doc. 15.  Plaintiffs opposed.  Doc. 26.  Defendants replied.  Doc. 33.  Plaintiffs also moved to file a surreply.  Doc. 34.  The Court reviewed the surreply.

Case No. 1:17-CV-00377
Gwin, J.

For the following reasons, the Court **DENIES** East Cleveland Defendants' motion to dismiss.

## I.    Background

Plaintiffs allege that East Cleveland and Cuyahoga County officials failed to disclose exculpatory evidence for nearly twenty years, thereby violating Plaintiffs' constitutional rights.

This order concerns Plaintiffs' claims against the East Cleveland Defendants.[7]  East Cleveland Defendants argue that only the county officials are subject to Plaintiffs' § 1983 claims.

In this section, the Court summarizes the facts of the underlying murder, relevant exculpatory evidence, Plaintiffs' 1996 conviction, Plaintiffs' 1998 public records request, Plaintiffs' 2013 public records request, and the 2015 post-conviction relief proceedings.

### A.  Clifton Hudson's murder

On February 10, 1995, 19 year-old Clifton Hudson was shot and killed on Strathmore Avenue in East Cleveland, Ohio.[8] Plaintiffs Derrick Wheatt, Laurese Glover, and Eugene Johnson, Jr. witnessed the shooting.

At the time of the shooting, Wheatt, Glover and Johnson were in a black GMC SUV, stopped at a stop sign next to a post office.[9] The post office is on the southeast side of a bridge on Strathmore Avenue.[10]

---

[7] The East Cleveland Defendants are the City of East Cleveland, John C. Bradford, Terrence Dunn, Vincent K. Johnstone, Patricia Lane, D. J. Miklovich, Michael C. Perry and Charles Teel. Doc. 15 at 1.
[8] Doc. 1 at 6.
[9] *Id*. at 7.
[10] *Id*.

Case No. 1:17-CV-00377
Gwin, J.

Tamika Harris, then 14 years old, observed the shooting from the opposite side of the bridge.[11] Harris saw the shooter approach Hudson on foot, but Plaintiffs' vehicle obscured Harris's view.[12]

East Cleveland police officers Vincent K. Johnstone, Patricia Lane, D. J. Miklovich, Michael C. Perry, and Charles Teel arrived at the scene.[13] Based on Harris's statement that a black SUV was nearby during the shooting, the East Cleveland police began searching for a vehicle matching that description.[14]

Later that night, Defendant officers identified Plaintiff Glover's vehicle parked in his driveway a few blocks from the murder scene.[15] Based on Harris's description of the vehicle at the scene, Defendant officers Johnstone, Miklovich, and Perry arrested Plaintiffs Wheat and Glover.[16]

Defendant officers later arrested Plaintiff Johnson and interrogated all three of them.[17]

### B. Exculpatory evidence

The following subsections summarize Defendant officers' alleged illegal conduct and the exculpatory evidence that Plaintiffs did not receive until 2013. The summaries are taken from Plaintiffs' Complaint.

---

[11] *Id*.
[12] *Id*.
[13] *Id*.
[14] *Id*. at 8.
[15] *Id*.
[16] *Id*.
[17] Plaintiffs told the officers they witnessed the shooting but were not involved. *Id*. at 8-10.

Case No. 1:17-CV-00377
Gwin, J.

### 1.  Tamika Harris's Statement

Shortly after the shooting, Harris told Defendant officer Lane that there was a black SUV near the victim and she believed the shooter came from the vehicle.[18] Harris could not identify the make and model of the vehicle or the persons in the vehicle.[19]

Plaintiffs allege that Harris' description of the shooter did not match Plaintiffs.[20] Harris told the officers that she "didn't see his face that clear."[21]

The day after the shooting, February 11, 1995, Ms. Harris came to the police station for more questioning.[22] Defendant officers Perry, Johnstone, and Miklovich showed Harris a photo of Plaintiff Glover's GMC SUV in the police garage.[23]

According to Plaintiffs, Defendant officers did not show Harris any other photos.[24] Defendant officers also allegedly told Harris that the vehicle shown in the photos was the murder suspects' vehicle.[25] Ms. Harris identified the vehicle as the one she saw at the crime scene.[26]

Defendant officers also created a photo array of suspects for Ms. Harris.[27] Before showing her the photos, Defendant officers allegedly told Harris that "these guys did it" and the police "had them in jail."[28]

---

[18] *Id*. at 7.
[19] *Id*. at 8.
[20] *Id*.
[21] *Id*.
[22] *Id*. at 10.
[23] *Id*. at 11. Plaintiffs state that Officers Perry, Johnstone, and Miklovich were involved in the questioning at the station. Perry is a supervisor. *Id*. at 13. Defendants Teel and Lane were supervisors and "knew about" and "encouraged" the other officers' conduct. *Id*.
[24] *Id*. at 10.
[25] *Id*.
[26] *Id*.
[27] *Id*. at 12.
[28] *Id*.

-4-

Case No. 1:17-CV-00377
Gwin, J.

The officers then showed Harris photos of Plaintiffs the police had taken at the station earlier that day.[29] The officers allegedly pointed to Johnson's photo, suggesting he was the shooter, and pointed to Wheatt and Glover's photos, saying they had "gunpowder on them."[30]

Harris signed a statement identifying Glover's SUV as the one at the scene, Johnson as the shooter, and Plaintiffs Wheatt and Glover as being in the SUV.[31]

Plaintiffs argue that Defendant officers were unduly suggestive and misleading while interviewing Harris. Plaintiffs say that Defendant officers led Harris to falsely identify Plaintiffs and their vehicle.

### 2. Perry brothers' statements

On February 12, 1995, Monica Salters called East Cleveland police officer John C. Bradford.  She told Officer Bradford that she and her sons, Eddie Dante Petty and Gary Petty, lived near the crime scene. Salters told Bradford that her son, Dante, witnessed the shooting.[32]

Dante Petty said he saw the shooter come out of the post office parking lot on the east side of Strathmore, saw the shooter walk towards the victim who was on the other side of the street, and saw the shooter take a gun out of his pocket, and shoot at the victim.[33]

Dante stated that he had earlier seen the shooter when the shooter visited a classmate at Dante's school. Dante said the shooter might have been Dante's classmate's brother.[34]

Plaintiffs allege that Defendant officer Bradford made a written report of the information and put it in the case file.[35] Plaintiffs also say Bradford communicated the information to the

---

[29] Id.
[30] Id.
[31] Id. at 13.
[32] Id. at 14.
[33] Id.; Doc. 15 at 2-3.
[34] Id.
[35] Doc. 1 at 14

Case No. 1:17-CV-00377
Gwin, J.

other Defendant officers, who also saw Bradford's report.[36]  Plaintiffs reason that these

statements support Plaintiffs contention that they did not kill Clifton Hudson.

On February 15, 1995, Defendant officers Miklovich and Johnstone followed up on the

report and met with the Petty brothers and their mother.[37] One brother again told the officers that

he saw a man exit the post office driveway, cross the street, and shoot the victim.[38]

Plaintiffs say Miklovich and Johnstone prepared a written report of their meeting and put

the report in the file.[39]  Plaintiffs allege the other Defendant officers saw the report and knew the

information.[40]

Plaintiffs also say that Defendant officers agreed to withhold these reports from

Plaintiffs. Plaintiffs further allege that Defendant officers did not disclose the

reports to the prosecutors until after Plaintiffs' trial and convictions.

### 3. Derek Bufford's statement

On February 13, 1995, Defendant officers Lane and Teel interviewed Derek Bufford, the

victim's brother.[41] Bufford told the officers that in the days before the murder unknown men had

threatened his and his brother's lives.[42]

Specifically, a few days before the murder, unknown men in a Chevy Cavalier pulled up

to Bufford near the murder scene and began shooting.[43] Then, the day before the murder,

unknown men pulled a shotgun on his brother.[44]

---

[36] *Id*. at 14-15.
[37] *Id*. at 15.
[38] *Id*.
[39] *Id*. at 16.
[40] *Id*.
[41] *Id*. at 17.
[42] *Id*. at 18; Doc. 15 at 3.
[43] *Id*.
[44] *Id*.

Case No. 1:17-CV-00377
Gwin, J.

Defendant officers showed Bufford photos of Plaintiffs and the GMC SUV.[45] Bufford did not identify Plaintiffs as the men who shot at Bufford and his brother.[46]

No Plaintiff owned a Chevy Cavalier.[47]

Lane and Teel made a written report of their meeting and put it in the file.[48]  The other Defendant officers saw the report and knew the report's information.[49]

Plaintiffs allege that Defendant officers agreed among themselves to withhold these reports from Plaintiffs. Plaintiffs further allege that Defendant officers never turned over the reports to the prosecutors until after Plaintiffs' trial and convictions.

### C.  1996 conviction and appeal

In January 1996, Plaintiffs Wheatt, Glover, and Johnson were tried.[50] Prosecutor Michael Horn prosecuted the case.[51] The jury never considered the Petty brothers' statements or Derek Bufford's statements.[52]

A jury convicted the Plaintiffs of murder. The trial court sentenced Glover to 15 years to life and Johnson and Wheatt to 18 years to life.[53]

Plaintiffs appealed their convictions.[54] The state court of appeals and Ohio Supreme Court denied the appeal.[55]

Plaintiffs allege that if the Defendant officers had disclosed the exculpatory evidence the Plaintiffs would not have been convicted.

---

[45] *Id.*
[46] *Id.*
[47] Doc. 1 at 18.
[48] *Id.* at 18-19.
[49] *Id.*
[50] *Id.* at 20.
[51] *Id.* at 21. Michael Horn is not a defendant in this case.
[52] Doc. 15 at 3.
[53] Doc. 1 at 20-21.
[54] *Id.* at 21.
[55] *Id.* at 21-22.

Case No. 1:17-CV-00377
Gwin, J.

### D.  1998 public records request

In 1998, Plaintiffs made a public records request to East Cleveland and asked for all police and investigatory records related to Hudson's murder.[56]

Plaintiffs allege that Defendant officers told Defendants Carmen Marino and Deborah Naiman, both Cuyahoga County assistant county prosecutors, about the request.[57]

In June 1998, Defendants Marino and Naiman sent a letter to Defendant East Cleveland Police Officer Terrence Dunn.[58] The letter directed Defendant Dunn to withhold release of the Hudson murder file.[59] Instead, the Marino and Naiman letter directed East Cleveland to turn the file over to the Cuyahoga County Prosecutor's Office.[60]

East Cleveland gave a copy of the file to Marino and Naiman.[61] Marino and Naiman did not turn the file over to Plaintiffs.[62] Nor did Marino and Naiman disclose the information to the trial prosecutor, Michael Horn, or any court.[63]

### E.  2013 public records request and 2015 post-conviction relief proceedings

In 2013, Plaintiffs submitted another records request to the East Cleveland Police requesting the Hudson murder file.[64] In response, the Department released the police reports, including reports of the Petty brothers and Derek Bufford's interviews.[65]

---

[56] *Id*. at 21.
[57] *Id*. at 5, 22.
[58] *Id*. at 22; Doc. 15 at 4. In the alternative, Plaintiffs state that Defendants Marino and Naiman intervened to stop East Cleveland from releasing the file. Doc. 1 at 22.
[59] *Id*.; Doc. 15 at 4.
[60] *Id*.
[61] Doc. 1 at 23.
[62] *Id*.
[63] *Id*. at 24.
[64] *Id*.
[65] *Id*.

Case No. 1:17-CV-00377
Gwin, J.

In 2015, Plaintiffs relied on the Petty and Bufford statements in filing an Ohio court

motion for a new trial and a petition for post-conviction relief.[66] The state court vacated

Plaintiffs' convictions and granted them a new trial.[67] In August 2016, the state dismissed the

charges against Plaintiffs without prejudice.[68]

### F.  Plaintiffs' 28 U.S.C. § 1983 claims in this Court

On February 23, 2017, Plaintiffs filed a complaint that alleged constitutional, and alleged

federal, and Ohio state law violations.[69]

On March 22, 2017, the East Cleveland Defendants filed a motion to dismiss Plaintiffs'

claims against them.[70] In support of the motion, the East Cleveland Defendants generally argue

that Plaintiffs fail to state a claim against them. The East Cleveland Defendants say the state

court's order granting Plaintiffs a new trial finds that the Defendant county prosecutors—not the

East Cleveland Defendants—are responsible for any violations of Plaintiffs' rights.

Plaintiffs oppose, generally arguing that they successfully plead all eleven counts in their

Complaint.[71]

### II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss

when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be

granted.[72]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'"[73]  In deciding a motion

---

[66] *Id*. at 25. Tamika Harris had also previously recanted her in-court identification of Plaintiff Johnson as the shooter. Doc. 15 at 4.
[67] Doc. 1 at 25.
[68] *Id*.; Doc. 15 at 4.
[69] Doc. 1.
[70] Doc. 15. Defendants reply.  Doc. 33.
[71] Doc. 26.
[72] Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957).
[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570(2007)).

Case No. 1:17-CV-00377
Gwin, J.

to dismiss under Rule 12(b)(6), "a court should assume the [] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true.[74]

### III.    Analysis

The Court denies the East Cleveland Defendants' motion to dismiss.  First, the Court concludes that the Plaintiffs successfully plead a due process claim for unduly suggestive identification. Second, the Court declines to take judicial notice of a 2015 state court's factual determinations. Third, we determine that Plaintiffs successfully plead Fourth and Fourteenth Amendment claims. Fourth, the Court concludes that Plaintiffs properly state a claim for denial of access to courts. Last, the Court holds that Plaintiffs sufficiently allege that the Defendants willfully concealed or withheld exculpatory police reports.

#### A.  Plaintiffs successfully allege a due process claim for unduly suggestive identification.

Plaintiffs say Defendants violated Plaintiffs' due process rights to be free from unduly suggestive identifications.[75] Plaintiffs allege that Defendants manipulated then-fourteen-year-old witness Tamika Harris into identifying Plaintiff Johnson as the shooter and Plaintiff Glover's GMC SUV as the vehicle Harris saw at the crime scene.[76]

Defendants ask the Court to dismiss these claims because Plaintiffs fail to support an overly suggestive identification claim.[77] Defendants' argument loses.

"Criminal suspects have a constitutional right to be free from identification procedures 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that the identification's use violates due process of law."[78]  "[A]n identification violates a defendant's

---

[74] *Iqbal*, 129 S.Ct. at 1949–51.
[75] Doc. 1 at 27.
[76] *Id.* at 10-13.
[77] Doc. 15 at 6-9.
[78] *Gregory v. City of Louisville*, 444 F.3d 725, 746 (6th Cir. 2006) (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).

-10-

Case No. 1:17-CV-00377
Gwin, J.

right to due process where the identification procedure was so unnecessarily suggestive as to run

the risk of irreparable mistaken identification."[79]

Plaintiffs allege sufficient facts to support their identification claim.  For instance,

Plaintiffs allege that the photo array police showed to Tamika Harris included only the Plaintiffs'

photos.[80]  Moreover, the officers allegedly pointed to Johnson's photo, suggesting he was the

shooter, and pointed to Wheatt and Glover's photos, saying they had "gunpowder on them."[81]

Additionally, Plaintiffs say the only vehicle East Cleveland police showed Harris was

Glover's GMC SUV. Defendant officers allegedly told Harris it was the suspects' vehicle.[82]

Plaintiffs sufficiently allege that Harris's identification was so unnecessarily suggestive that it

risked irreparable mistaken identification.

Defendants also say Plaintiff's unduly suggestive identification claim fails because the

criminal case did not end in Plaintiffs' favor.[83] This argument loses for two reasons.

First, Plaintiffs do not need a favorable termination of their criminal proceedings to bring

an unduly suggestive identification claim.[84]

---

[79] *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) (citing *Stovall*, 388 U.S. at 301-02; *Neil v. Biggers,* 409 U.S. 188, 199  (1972).
[80] Doc. 1 at 12.
[81] *Id.*
[82] *Id.*  Defendants argue that Harris accurately identified Glover's GMC SUV, so the Plaintiffs cannot claim irreparable mistaken identity.  Doc. 15 at 8; Doc. 33 at 8.  This argument loses because the Plaintiffs allege sufficient facts to survive a motion to dismiss—most importantly that they were mistakenly identified as murderers because of these unduly suggestive identification procedures. Doc. 1 at 10-13.
[83] Doc. 15 at 8-9.
[84] *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) ("In analyzing whether a defendant was denied due process of law, we conduct a two step inquiry. First, we assess whether the identification was unnecessarily suggestive. If so, we then consider whether the evidence was nevertheless reliable despite the impermissible suggestiveness of the identification procedure.") (internal citations omitted).

Case No. 1:17-CV-00377
Gwin, J.

Second, Plaintiffs' convictions were vacated and the Cuyahoga County Prosecutor's

Office dismissed the charges without prejudice. This procedural posture generally amounts to

termination in Plaintiffs' favor.[85]

The Court denies Defendants' motion to dismiss Plaintiffs' unduly suggestive

identification claim.

### B. This Court does not take judicial notice of the Ohio state court's 2015 factual determinations.

The East Cleveland Defendants argue that this Court should take judicial notice of the

Cuyahoga County Court of Common Pleas 2015 order granting Defendants a new trial.[86]

Defendants say the state court determined that the East Cleveland Defendants did not willfully

conceal or interfere with the disclosure of exculpatory evidence.[87] Defendants reason that this

judicial finding applies in this case and defeats Plaintiffs' due process claims.[88]

"When reviewing a motion to dismiss, a district court [generally] may not consider

matters beyond the complaint."[89]

---

[85] *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (holding that a plaintiff accrues a cause of action for unconstitutional imprisonment when plaintiff's conviction is "declared invalid by a state tribunal authorized to make such determination."); *see also Dawson v. Monroe Cty., Tenn.*, 2014 WL 700400, at *6 (E.D. Tenn. Feb. 24, 2014) ("[T]he trial court dismissed the murder indictment against plaintiff, a result which was favorable to him. While [defendant] asserts that there is nothing from stopping the prosecution from seeking another indictment against plaintiff, the Court finds such speculation insufficient to dismiss a well-pleaded complaint, particularly given that there are currently no pending charges against plaintiff.")

[86] Doc. 15 at 11-14. Defendants also argues *res judicata* applies here. Defendants argue *res judicata* when they really refer to issue preclusion. *See, e.g.*, *Potts v. Hill*, 77 F. App'x 330, 333 (6th Cir. 2003) (stating that issue preclusion is 'the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided'"). In considering issue preclusion, federal courts apply the law of the state where the prior judgment was rendered. *Id.* at 334. Therefore, we apply Ohio law. "Under Ohio law, 'issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action.'" *Id.* at 334 (citing *MetroHealth Med. Ctr. v. Hoffman-LaRoche, Inc.*, 685 N.E.2d 529, 533 (Ohio 1997)). As discussed in this section, the state court never "actually" determined whether the East Cleveland Defendants concealed or interfered with disclosure of exculpatory materials. Therefore, issue preclusion does not apply.

[87] Doc. 15 at 12.

[88] In their motion, Defendants make this argument in reference to Counts IV-XI in Plaintiffs' Complaint. The Court addresses the argument here because whether the East Cleveland Defendants willfully concealed or interfered in disclosure of exculpatory evidence is first relevant to Count I.

[89] *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001)).

-12-

Case No. 1:17-CV-00377
Gwin, J.

An exception allows district courts to "look at public records, including judicial proceedings, in addition to the allegations in the complaint."[90] The court "may take judicial notice of another court's opinion *not for the truth of the facts recited therein*, but for the existence of the opinion."[91] Therefore, this Court may note that the state court issued an order, but not the factual determinations within the order.

Defendants argue that "a presumption of correctness applies to factual determinations, as well as to credibility determinations, made by either state trial or appellate courts."[92] Defendants cite 28 U.S.C. § 2254(e)(1) and a Ninth Circuit case in support.[93] Neither apply here—those authorities concern how a federal court reviews state-court factual determinations in habeas proceedings.[94] This is a § 1983 case, not a habeas case.

Furthermore, even if the Court took judicial notice of the facts in the state court's order, they would not support Defendants' argument. In its opinion, the state court found that multiple pieces of undisclosed, exculpatory evidence were "in the East Cleveland Police Department's investigative file."[95] The court stated that it was "not clear from the testimony whether [the prosecutor at the time of trial] knew about these [exculpatory] reports. Regardless of whether he knew or did not know, the fact is that *law enforcement had the reports* . . . ."[96]

---

[90] *Id*. (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999)).
[91] *Id*.
[92] Doc. 33 at 2.
[93] *Id*. (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002)).
[94] 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *Pollard*, 290 F.3d at 1034 (reviewing a petition for habeas corpus).
[95] Doc. 15-1 at 5.
[96] *Id*. at 13 (emphasis added).

-13-

Case No. 1:17-CV-00377
Gwin, J.

The court also noted that in 1998, the "East Cleveland Police Department . . . surely . . . must have suspected that [the county prosecutor's] letter [directing them not to turn over their files in response to the records request] was unethical."[97]

The state court never definitively "determined that the East Cleveland Defendants did not willfully conceal or interfere with the disclosure of exculpatory evidence."[98] Instead, the state court seems to suggest the possibility, however unlikely, that the East Cleveland Defendants never turned the reports over to the trial prosecutor. The state court also makes clear that the East Cleveland Defendants should have suspected foul play when the prosecutor later directed them not to turn over the East Cleveland files.

In sum, this Court does not take judicial notice of the state court's 2015 order granting Plaintiffs a new trial. And, even if it did, the state court's order would not support Defendants' argument.

### C. Plaintiffs successfully plead Fourth and Fourteenth Amendment claims for Due Process violations and continued detention without probable cause.

East Cleveland Defendants argue Plaintiffs fail to state a claim for detention without probable cause.[99] Defendants reason that a grand jury indicted Plaintiffs and that an indictment, "fair upon its face," "conclusively determines the existence of probable cause."[100]

Generally, a grand jury's indictment establishes probable cause. However, Plaintiffs can overcome this presumption where

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence,

---

[97] *Id.* at 12.
[98] Doc. 15 at 11-14; Doc. 33 at 3-6.
[99] Doc. 15 at 9-10.
[100] *Id.* at 10 (quoting cause *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)).

Case No. 1:17-CV-00377
Gwin, J.

and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).[101]

Here, Plaintiffs allegations satisfy this three-part test.

First, Plaintiffs claim that the East Cleveland Defendants "fe[d] [Tamika Harris] information about the crime in order to falsely implicate Plaintiffs and Mr. Johnson and fabricate evidence against them."[102]  Furthermore, Defendants allegedly manipulated Harris into falsely identifying Johnson as the shooter by pointing to Plaintiff Johnson's photo and assuring Harris they had arrested the correct person—even after Harris told the police she never saw the shooter's face.[103] Plaintiffs' allegation that Defendant officers recklessly led Harris to make false identifications satisfies the test's first prong.

Second, Plaintiffs allege that "by their actions, the Defendant Officers thereby misled and misdirected the criminal prosecution of Plaintiffs. Absent this misconduct, the prosecution of Plaintiffs could not and would not have been pursued, and there is a reasonable probability that they would not have been convicted." This allegation satisfies the test's second prong.

Third, the Plaintiffs allege "false statements, evidence, and omissions [that do] not consist solely of grand jury testimony."  For instance, Defendants' alleged manipulation of Harris occurred at the police station, not in front of a grand jury.

Accordingly, Plaintiffs have sufficiently pled Fourth and Fourteenth Amendment Claims for Due Process violations and continued detention without probable cause.

---

[101] *King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017)
[102] Doc. 1 at 11.
[103] *Id.* at 12.

Case No. 1:17-CV-00377
Gwin, J.

### D.  Plaintiffs successfully state a claim for denial of access to courts.

In their denial of access claim, Plaintiffs say the Defendants concealed exculpatory evidence.[104]  Plaintiffs reason that this concealment prevented Plaintiffs from obtaining relief from the courts.  Defendants respond that Plaintiffs fail to state a denial of access to courts claim.[105]

"The Supreme Court has recognized a constitutional right of access to the courts, whereby a plaintiff with a nonfrivolous legal claim has the right to bring that claim to a court of law."[106] Like §1983, the right to access the courts does not provide a substantive right. Rather, "a denial-of-access plaintiff must have an arguable, nonfrivolous underlying cause of action."[107]

Denial-of-access claims can be either forward or backward-looking. Plaintiffs' claim here is backward-looking—"the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim."[108]

The Sixth Circuit has established a four-factor test for backward-looking claims: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable.[109] "Plaintiffs must make out the denial-of-access elements against each defendant."[110]

---

[104] *Id.* at 33-36.
[105] Doc. 15 at 10.
[106] *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (citing *Christopher v. Harbury,* 536 U.S. 403, 415 n. 12 (2002)).
[107] *Id*. (citing *Christopher*, 536 U.S. at 415).
[108] *Id*. (citing *Christopher*, 536 U.S. at 413-14).
[109] *Id*. (internal citations and quotations omitted).
[110] *Id*.

Case No. 1:17-CV-00377
Gwin, J.

Defendants take issue with the fourth element.[111] Defendants say that Plaintiffs do not claim a "unique remedy" that is unavailable in some future lawsuit.[112] Defendants say that because Plaintiffs can pursue a tort claim against the individual defendants who arguably hid exculpatory evidence, there is no "unique remedy" being pursued here.

Defendants misunderstand the fourth element. Whether Plaintiffs could pursue other tort claims against the East Cleveland Defendants is irrelevant. Instead, what matters is whether Plaintiffs now seek relief they were barred from seeking in the past due to Defendant's alleged actions.

As this Court understands the fourth element, Plaintiffs must (1) seek relief in this Court that (2) they would have sought in their state post-conviction case, but (3) cannot seek now.

Plaintiffs' complaint tracks this theory. In this case, Plaintiffs seek damages to compensate them for seventeen years of lost freedom that Defendants allegedly caused by concealing exculpatory evidence.[113] In their post-conviction case, Plaintiffs would have sought their freedom in 1998 when they first made a public records request had they received the exculpatory evidence.[114] Plaintiffs cannot travel back in time to seek their freedom in 1998 with the allegedly withheld evidence—seeking damages now is the best substitute.

Plaintiffs successfully plead a backward-looking denial of access claim.

---

[111] Because Defendants focus their argument on the fourth element, the Court addresses Plaintiffs' satisfaction of the first three elements briefly. First, Plaintiffs underlying claims include First, Fourth, Fifth, and Fourteenth Amendment violations, as well as a violation of Article IV of the Privileges and Immunities Clause. Doc. 1 at 34. Second, Plaintiffs state that Defendants concealed exculpatory evidence in 1998, thereby barring Plaintiffs from succeeding in post-conviction or habeas relief for seventeen years. *Id.* Third, the state court cannot remedy this prejudice—Plaintiffs were unsuccessful in pursuing their claims without the exculpatory evidence for seventeen years. *Id.* Further, Plaintiffs make this claim against all individual East Cleveland Defendants. *Compare* Doc. 15 at 1 (listing the East Cleveland Defendants) *with* Doc. 1 at 4, 34 (identifying all individual East Cleveland Defendants in Count III).

[112] Doc. 15 at 10.

[113] Doc. 1 at 36 (seeking damages for the injury caused by the additional years Plaintiffs lost in prison due to Defendant's alleged conduct).

[114] *Id.* at 35 (explaining that if Plaintiffs had received the exculpatory evidence in 1998, they would have pursued motions for new trial and petitioners for post-convictions relief then).

-17-

Case No. 1:17-CV-00377
Gwin, J.

### E. Plaintiffs successfully plead that the individual East Cleveland Defendants willfully concealed or withheld exculpatory police reports in support of Counts IV-XI.

The East Cleveland Defendants next argue that the Court should dismiss Counts IV-XI of Plaintiffs' Complaint.[115] Defendants say these counts require a common allegation—that the East Cleveland Defendants willfully concealed or interfered with the disclosure of exculpatory evidence. Defendants argue that the Cuyahoga County Court of Common Pleas addressed this issue in Plaintiffs' 2015 case and found that the state prosecutor—not the East Cleveland Defendants—concealed evidence. Defendants say that this finding applies here under the doctrine of *res judicata*.

Defendants' argument fails. First, some of the counts Defendants include in this argument do not include a "willful concealment or interference" element. For example, Defendants bring a failure to intervene claim in Count IV. "The elements of the failure to intervene claim are '(1) the defendant observed or had reason to know that the constitutional violation was occurring, and (2) had both the opportunity and the means to prevent the harm from occurring.'"[116]

Therefore, to make out a failure to intervene claim, Plaintiffs need not have alleged that the East Cleveland Defendants willfully concealed evidence on their own.[117] Defendants' umbrella argument is overbroad and inapplicable, at least to some counts.

Second, as discussed above in Section III.B, this Court is not required to take notice or accept the facts as determined by the state court in 2015.

---

[115] Doc. 15 at 11-14.

[116] *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2015 WL 542415, at *10 (N.D. Ohio Feb. 10, 2015), *aff'd in part, 678 F. App'x 362 (6th Cir. 2017)* (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

[117] For example, to support a failure to intervene claim, Plaintiffs could have alleged that the East Cleveland defendants witnessed other defendants violating Plaintiffs' rights and failed to intervene. Plaintiffs need not have alleged that the East Cleveland Defendants themselves "willfully concealed or interfered" with the exculpatory evidence.

-18-

Case No. 1:17-CV-00377
Gwin, J.

Third, also as discussed in Section III.B, Defendants misrepresent the 2015 state court opinion.

Therefore, the Court denies Defendants' motion to dismiss Counts IV-XI.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the East Cleveland Defendants' motion to dismiss.


IT IS SO ORDERED.


Dated:  July 26, 2017                                      *s/          James S. Gwin*
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE