**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DERRICK WHEATT,** *et al.,* | ) | **CASE NO.: 1:17-CV-0377** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE JAMES S. GWIN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF EAST CLEVELAND,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

### THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, the City of East Cleveland, John C. Bradford, Terrence Dunn, Vincent K. Johnstone, Patricia Lane, D. J. Miklovich, Michael C. Perry and Charles Teel (hereinafter "the City Defendants") respectfully moves this honorable Court for summary judgment on all of Plaintiffs Derrick Wheatt, Laurese Glover and Eugene Johnson' claims against the City Defendants.  A memorandum in support of this motion is attached hereto and incorporated herein by reference.

Respectfully submitted,


/s/ *Willa M. Hemmons*
Willa M. Hemmons (0041790)
Director of Law
City of East Cleveland
14340 Euclid Avenue
East Cleveland, Ohio 44112
whemmons@eastcleveland.org
Counsel for the City of East Cleveland, John C. Bradford,
Terrence Dunn, Vincent K. Johnstone, Patricia Lane, D. J.
Miklovich, Michael C. Perry and Charles Teel

### CITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Table of Contents**

TABLE OF AUTHORITIES ...........................................................................2

MEMORANDUM IN SUPPORT ...................................................................3

I.     INTRODUCTION. ................................................................................3

II.    STANDARD OF REVIEW. ................................................................4

     A. ..... EVIDENCE OF THE PETTY BROTHERS' STATEMENTS AND DEREK BUFFORD'S STATEMENT CANNOT MEET THE LEGAL REQUISITE OF EXCULPATORY EVIDENCE. ...................................9

     B. ... THE EAST CLEVELAND THREE HAVE FAILED TO PRESENT ANY EVIDENCE DEMONSTRATING A HISTORY OF POLICE MISCONDUCT IN THE EAST CLEVELAND POLICE DEPARTMENT SUFFICIENT TO DEMONSTRATE THAT POLICE MISCONDUCT WAS UNDERTAKEN PURSUANT TO THE POLICY AND PRACTICE. ......................................................................12

     C. . COUNTS TWO AND SIX MUST BE DISMISSED AS THERE WAS PROBABLE CAUSE TO ARREST AND CHARGE THE EAST CLEVELAND THREE WITH THE MURDER OF CLIFTON HUDSON. ...............................................................................15

     D. ....................... COUNT THREE FOR DENIAL OF ACCESS MUST BE DISMISSED AS THE CITY DEFENDANTS WERE RESTRAINED AS A MATTER OF LAW FROM RELEASING THE CLIFTON HUDSON HOMICIDE FILE. ..........................................................17

CERTIFICATE OF TRACK ASSIGNMENT AND COMPLIANCE WITH PAGE LIMITATIONS .......................................19

# TABLE OF AUTHORITIES

## Cases

*Brady v. Maryland* ......................................................................................................................... 3, 9

*D'Ambrosio v. Marino*, 747 F.3d 278, 389-390 (6th Cir. 2014)( ............................................. 12

Fox v. DeSoto, 489 F.3d 227, 237 (6th Cir. 2007) ...................................................................... 16

Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007) ...................................................................... 16

*Moldowan v. City of Warren*, 578 F.3d 351, 377-378 (6th Cir. 2009) ........................................ 11

*Moore v. Illinois*, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) ................................ 9, 10

*Ricky Jackson v. City of Cleveland, et al.,* U.S. District Court for the Northern District of Ohio, Eastern
      Division   Case No.: 1:15-CV-00989 ................................................................................................ 19

*Ricky Jackson v. City of Cleveland, et al.,* U.S. District Court for the Northern District of Ohio, Eastern
      Division Case No.: 1:15-CV-00989 ................................................................................................ 4, 14

*State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875 ........................................ 9, 10

Sykes v. Anderson, 625 F.3d 294 308-09 (6th Cir. 2010) ........................................................ 16

*United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ................................ 9

2

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION.**

On February 10, 1995, Clifton Hudson (19-years old) was shot five times in the back as he tried to escape an ambush.  Having recently moved to Cleveland, Ohio from Elyria, Ohio to live with his older brother (Derek Bufford) Mr. Hudson attempted to establish his illicit drug trade on the streets of East Cleveland.  Support for this fact is confirmed inasmuch as 16 crack rocks and $166.00 were found in his pockets after his demise.

However, his traverses through East Cleveland led him to Strathmore Avenue where Mr. Hudson sought to ply his trade in a neighborhood victimized by the notorious drug-dealing street gang, the Tribe, (a younger subsidiary of the Valley Low Boys gang).  On two occasions Mr. Hudson was warned (once at gun point) to stop selling drugs in East Cleveland.  However, Mr. Hudson failed to heed these warnings; and less than a month after moving to Cleveland, Ohio Mr. Hudson was shot dead.

Plaintiffs Derrick Wheatt, Eugene Johnson and Laurese Glover (heralded by a grass roots movement are described hereinafter as the "*East Cleveland Three*") were identified as suspects, arrested, charged and later convicted of the murder of Clifton Hudson.  On January 18, 1996 Plaintiff Laurese Glover was sentenced to 15 years to life.  Plaintiffs Derek Wheatt and Eugene Johnson were sentenced to 18 years to life.   See Doc. 1 at ¶ 128.

Premised primarily upon the purported "recantation" of the state's primary witness Tamika Harris, on December 5, 2014, the *East Cleveland Three* filed a *Motion for New Trial* seeking relief under Crim.R. 33(A) and *Brady v. Maryland* and its progeny pursuant to the theory of newly discovered evidence, technological advancements in gunshot residue testing; and

3

allegations that at the time of the trial, the City Defendants withheld exculpatory evidence possibly provided by pre-teen boys.

On March 26, 2015 Cuyahoga County Judge Nancy Margaret Russo in Case No.:  CR-95-324431-B granted the *Motion for a New Trial* which was affirmed by the Eighth District Court of Appeals on May 5, 2016.  Thereafter, on June 27, 2016 the Cuyahoga County Prosecutor's Office filed its *Motion to Dismiss Without Prejudice*.

The *East Cleveland Three* have now brought an eleven-count Complaint alleging that the City Defendants deprived them of their constitutional rights. It is further observed, that the issues of this case are essentially identical to those of a case recently before this Court, *Ricky Jackson v. City of Cleveland, et al.,* U.S. District Court for the Northern District of Ohio, Eastern Division Case No.: 1:15-CV-00989, involving a young adolescent "recanting" and reconstructing the circumstances of his or her identification belatedly alleging police manipulation. As with the *Jackson* case, a gullible youngster fell victim, not to the police or the prosecution - who had pursued evidence provided by them in a good faith effort to solve a heinous crime - but to the wiles of community outcry and opinion.  Opinion that rises to the level of a social movement bent on reversing decades old facts.  Fortunately, this case will be judged by a Court of Law rather than by a Court of Public Opinion.

As more fully set forth hereinafter, this case is ripe for summary judgment adjudication as there is absent a genuine issue of material fact as to any of the claims raised by the *East Cleveland Three* and thus as, the City Defendants are entitled to Judgment in their favor, this Court should dismiss the *East Cleveland Three's* Complaint with prejudice.

## II.      STANDARD OF REVIEW.

4

Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden to "demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Finally, "[i]n making this assessment, [the Court] must view all evidence in the light most favorable to the nonmoving party." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016).

As more fully set forth hereinafter, although the *East Cleveland Three* are entitled to a favorable review of the evidence; in that the evidence of record finds that there is no genuine issue of material fact, and as the City Defendants are entitled to judgment as a matter of law, this Court should enter summary judgment in favor of the City Defendants and issue an Order dismissing the *East Cleveland Three's* Complaint with prejudice.

## III.  CLAIMS OF A SUGGESTIBLE PHOTO ARRAY FAIL TO RISE TO AN UNCONSTITUTIONAL LEVEL OF IMPROPRIETY

Under Count one, the *East Cleveland Three* have asserted claims for:  (i) denial of due process and fair trial; (ii) wrongful withholding of exculpatory evidence; and (ii) engaging in police misconduct undertaken pursuant to policy and practice.  As the operative claim under Count One, is the *East Cleveland Three's* allegation that the City Defendants manipulated Tamika Harris into identifying Eugene Johnson as the shooter and thereby implicated Derrick Wheatt and Laurese Glover.  (See ECF Doc. 1 at ¶ 170); "resulting in the unjust criminal convictions of Plaintiffs…"  Id. at ¶ 172.

Specifically, the *East Cleveland Three* allege that the photo array shown to Tamika Harris included only the Plaintiffs' photos.  They further assert that officers allegedly pointed to

5

Johnson's photo, suggesting he was the shooter, and pointed to Wheatt and Glover's photos, saying they had "gunpowder on them."

In order to demonstrate that an identification is "so unreliable that it violates due process to allow the jury to hear it" is a "high standard," *Johnson v. McCaughtry*, 92 F.3d 585, 597 (7th Cir. 1996).  The Supreme Court has held that an identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification.  *Stovall v. Denno,* 388 U.S. 293, 301-02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir.1986).

In *U.S. v. Dial*, United States District Court, N.D. Ohio, Eastern Division, February 27, 2012: … Due process requires the exclusion of testimony of pretrial identification when identification procedures used were unnecessarily suggestive or caused a mistaken or coerced identification.  *Neil v. Biggers*, 409 U.S., 188, 198 (1972) ("Suggestive confrontations are disapproved because they increase the likelihood of misidentification…")

In *Perry v. New Hampshire*, 2012 WL 75048:  Due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary. ...Reliability of the eyewitness identification is the linchpin of that evaluation.

At trial, "counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification" thus substantially lessening the likelihood of convictions based upon misidentifications.  *Clemens v. U.S.*, 408 F.2d 1230, 1251 DC Cir. 1968.  That is exactly what the *East Cleveland Three's* counsel did.

In *Manson v. Brathwaite*, 432 U.S. 98 (1977) the U.S. Supreme Court was faced with the issue of whether or not the Due Process clause prohibited the use of a single photograph.  The

trial court had said the Due Process clause did not preclude such use; the Court of Appeals for the U.S. Second Circuit reversed and the Supreme Court reversed the Second Circuit.

The U.S. Supreme Court thus held that the Due Process Clause of the Fourteenth Amendment does not compel the exclusion of the identification evidence.  Id. at 109-116.  The *Manson Court* opined that reliability is the linchpin in determining the admissibility of identification testimony for confrontations occurring both prior to and after *Stovall v. Denno*, 388 U.S. 293, wherein it was held that the determination depends on the "totality of the circumstances." *Id.* at 388 U.S. 302.  The factors to be weighed against the corrupting effect of the suggestive procedure in assessing reliability are set out in *Neil v. Biggers*, 409 U.S. 188.  The *Biggers* factors are;

1)    the opportunity of the witness to view the criminal at the time of the crime;

2)    the witness' degree of attention;

3)    the accuracy of the witness' prior description of the criminal;

4)    the level of certainty demonstrated by the witness at the confrontation; and

5)    the length of time between the crime and the confrontation.

According to *Simmons v. United States,* 390 U.S. 377, 390 U.S. 384 under the totality of the circumstances standard there are test factors to prohibit, "a very substantial likelihood of irreparable misidentification."

In instant case, Ms. Harris made a statement approximately 24 hours [February 11, 1995] after the incident which occurred on February 10, 1995 that:

"The Blazer was going so fast around the corner that he almost hit a car.  The Blazer went down Manhatten to Shaw and stopped at the corner.  The guy that did the shooting then ran around the corner past me and to the Blazer and got into the Blazer.  The Blazer then turned left onto Shaw."

7

In corroboration of Ms. Harris' statement, two days later, another witness, Mr. Lee Malone, according to an East Cleveland Police Report,

> …responded to the East Cleveland Police Garage and was shown a black Chevy Blazer with temporary tag of D6663689.  The male then positively identified the blazer being occupied by three individuals, as being the one that he observed turn from Manhatten onto Ardenall and drive by him toward Allegeny."

Hence, Mr. Malone's confirming identification helps to make up the "totality of circumstances" through which Ms. Harris' identification must be viewed per *Manson*.

Pursuant to *Biggers,* then, the other factors in the instant case militate against a violation of the Due Process clause.  Ms. Harris' identification of the "shooter" was made hours after he "ran past" her.  She thus had a close encounter with him providing her an excellent opportunity to view Mr. Johnson.  Ms. Harris accurately described Mr. Johnson's clothing prior to being presented with the three juvenile's photographs.  And, at the time of her identification, she was confident and certain in that identification.

Further, as is pointed out by Mr Justice Harlan in *Simmons v. U.S.*, 390 U.S. 377; 88 S. Ct. 967 (1968): …Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs.

A poignant fact is that Ms. Harris was shown three juveniles about the same age, all brown skinned African Americans, all with distinguishing clothing on and distinguishing features.  Nevertheless, Ms. Harris did not pick out Mr. Wheatt.  She did not pick out Mr. Glover.  Instead, with great confidence that his clothing matched that of the shooter, she picked out Mr. Johnson.  Neither do the *East Cleveland Three* provide any convincing evidence as to why Detectives would want to have her select Mr. Johnson over Messrs. Wheatt or Glover.

Their appearance in the case was NOT based upon any identification of Ms. Harris but upon totally different independent circumstances.

Based upon this fact alone, their claim for any photo array error must fail.  Ms. Harris never picked them out for anything.

### A.   EVIDENCE OF THE PETTY BROTHERS' STATEMENTS AND DEREK BUFFORD'S STATEMENT CANNOT MEET THE LEGAL REQUISITE OF EXCULPATORY EVIDENCE.

Further, in Count One, the *East Cleveland Three* allege that the City Defendants withheld exculpatory evidence.  Specifically, they allege that the City Defendants withheld exculpatory evidence obtained from one or more of the Petty brothers.  See Doc. 1 at ¶¶ 76-106.  They further assert that the City Defendants withheld exculpatory evidence obtained from Derek Bufford.  Id. at ¶¶ 107-135.

The United States Supreme Court has held that a criminal defendant may claim denial of due process when the prosecution fails to disclose the existence of exculpatory evidence.  *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Exculpatory evidence is defined as evidence favorable to the accused, which "if disclosed and used effectively, * * * may make the difference between conviction and acquittal."  *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 70, citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

The *East Cleveland Three* must prove three elements: (1) the prosecution failed to disclose the evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material.  *Moore v. Illinois*, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).  Evidence is material if there is a reasonable probability that the result of the proceeding

would have been different if the prosecution had disclosed the evidence to the defense.  *Braun* at ¶ 66.

In addressing the latter contention first, a review of the record finds that Derek Bufford was disclosed as a witness by the prosecution on September 28, 1995 in the Prosecuting Attorney's *Response to Request for Discovery Under Rule 16*.  See Exhibit A.  Accordingly, the *East Cleveland Three* being incapable of meeting the first requisite in the *Moore* test, their claim of failure to disclose exculpatory evidence under this component, must fail at the summary judgment stage.

In addressing the *East Cleveland Three's* claim that the statements of the Petty brothers was wrongfully withheld or suppressed this Court is urged that Assistant District Attorney Michael Horn was clearly aware of at the very least the existence of Eddie Dante Petty as a witness. This inference is made upon the observation that Lee Malone (aka Leroy Malone) was identified in the Prosecuting Attorney's *Response to Request for Discovery Under Rule 16* as a possible witness.  Id. at Exhibit A.  Disclosure of Lee Malone as a witness was provided through East Cleveland Police Report EC-95-03123 dated February 13, 1995 (see Exhibit B); significantly, on that same report Eddie Dante Petty was identified as a possible witness.

Furthermore and moreover, examination finds that the statements of Gary Petty and Eddie Dante were internally inconsistent and not material; and could not be considered exculpatory evidence as they were not reliable.  First, it is observed that the statement of Eddie Dane Petty was related to detectives by Eddie Petty's mother, Monica Salters.

According to the police reports dated February 12, 1995 and February 15, 1995, these two witnesses saw the shooting from the south of Strathmore — the opposite angle as Harris. According to the two brothers' accounts, the shooter, who they described as a 5'0 to 5'5" tall,

10

dark-skinned black man, walked out of the nearby post office parking lot with his hands in his pockets, pulled out a gun, and shot Clifton Hudson.

The statement attributed to Eddie Dante Petty is inconsistent with the statement made by Gary Petty.  According to Eddie Dante, he was a witness to the shooting, ran home, and saw his brother Gary shoveling snow.  *Id.*  But according to Gary Petty, Gary saw the shooting, ran home, and told his mother.  The officer who prepared the report noted that Gary had changed his story and terminated the interview.  See Exhibit C.

It is urged that nothing about Ms. Harris' testimony was contradicted by the Petty brothers' statements.  Ms. Harris testified that the vehicle she saw near the shooting was "on the street, by the post office driveway".  Trial Tr. at 822.  She admitted that she did not see anyone exit the vehicle at the time of the shooting.  Trial Tr. at 878-79.  Ms. Harris testified that the shooter came from "[t]he passenger's side, but the rear. He didn't walk around the front. He walked around from the rear." Trial Tr. at 905.  The Petty brothers' statements corroborate the movement of the shooter from the post office driveway, behind Derrick Wheatt's vehicle, to the middle of the street.  Both brothers place the shooter exiting the post office driveway.  Def.s Hearing Ex. B ("exiting the Post Office parking lot"); Def. 's Hearing Ex. C ("exit the driveway of the Post Office parking lot"). The State's theory was that Eugene Johnson exited the passenger side of the vehicle, near the Post Office driveway, came around the back side of the vehicle, and fired at Mr. Hudson in the street. Nothing about the Petty brothers' account contradicts that theory.

Finally, it is observed that the Sixth Circuit Court of Appeals has held that the duty to disclose exculpatory evidence to a criminal defendant rests with the prosecutor, not with the police.  See *Moldowan v. City of Warren*, 578 F.3d 351, 377-378 (6th Cir. 2009).  Thus, the Sixth

11

Circuit has held that the police only have a duty to disclose exculpatory evidence to the prosecutor (not the defense), and then only "when its exculpatory value is 'apparent' to the officer.  *D'Ambrosio v. Marino*, 747 F.3d 278, 389-390 (6th Cir. 2014)(citations omitted.  It is therefore urged that based on the clear inconsistencies, and indeed contradictory nature of the Petty brothers' statements, there was no exculpatory value to attach to these statements; and accordingly, this Court should find that these statements cannot meet the legal requisites of exculpatory evidence; and thus this Court must dismiss Count One of the *East Cleveland Three's* Complaint with prejudice.

> **B.  THE EAST CLEVELAND THREE HAVE FAILED TO PRESENT ANY EVIDENCE DEMONSTRATING A HISTORY OF POLICE MISCONDUCT IN THE EAST CLEVELAND POLICE DEPARTMENT SUFFICIENT TO DEMONSTRATE THAT POLICE MISCONDUCT WAS UNDERTAKEN PURSUANT TO THE POLICY AND PRACTICE.**

Further, at Count One, the *East Cleveland Three* have alleged that police misconduct was undertaken pursuant to the policy and practice of the City Defendants. Id. at 180.  They further this claim by asserting that, among the employment of other unconstitutional methods, it was the policy and practice of the City Defendants to withhold and/or suppress exculpatory evidence, fabricate evidence, feed information to witnesses, engage in the use of unduly suggestive identification procedures and engage in leading, coercive and/or unduly suggestive question of witnesses; and that such practices were widespread, clear, and persistent patterns and practice of officers in the Department.  Id. at ¶ 180.

In furthering their claim, the *East Cleveland Three* assert that these practices were so well-settled as to constitute a *de facto* policy and were allowed to exist because municipal policymakers with authority over them exhibited deliberate indifference to the problem, thereby effectively ratifying them.  Id. at ¶181.

In order to "…prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.") (quotation marks omitted).

In this regard, the Sixth Circuit has recognized that there are four methods available to establish a *Monell* claim. *Monnell v. Department of Social Services,* 436 U.S. 658 (1978)  *France v. Lucas,*No. 107CV3519, 21012 WL 5207555, at *10 (N.D. Ohio Oct. 22, 2012) , aff'd, 836 F.3d 612 (6th Cir. 2016).  "[T]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  France, 2012 WL 5207555, at *10 (citing Thomas, 398 F. 3d at 429).  Here, the *East Cleveland Three* cannot satisfy the legal standards for a Monell claim, thus the City is entitled to Judgment as a matter of law.

The *East Cleveland Three* cannot establish that the City of East Cleveland ever adopted an official policy that directed, encouraged or authorized any police officer to engage in the alleged unconstitutional conduct.  However, even if the *East Cleveland Three* could prove that one or more of these officers engaged in any of the alleged unconstitutional conduct they cannot prove that such individual misconduct was the result of an official policy of the City.  In other words, the *East Cleveland Three* cannot show that the City ever adopted or promulgated an official policy or custom of concealing exculpatory evidence, fabricating false evidence, or engaging in the malicious prosecution of persons without probable cause.  No such policy exists,

or has ever existed in the City.  (See also *Ricky Jackson v. City of Cleveland, et al.,* U.S. District Court for the Northern District of Ohio, Eastern Division Case No.: 1:15-CV-00989.)[1]

Moreover, the *East Cleveland Three* have failed to provide any evidence through a historical accounting demonstrating that any officers engaged in concealing exculpatory evidence, fabricating false evidence, or engaging in the malicious prosecution of persons without probable cause.

At this juncture, this Court is urged to also dismiss Counts IV, V and VIII which respectively allege claims for Failure to Intervene, Conspiracy to Deprive Constitutional Rights and Civil Conspiracy as all of such claims rely upon a primary constitutional violation, which claims as studied above must be dismissed.

Accordingly, this Court is respectfully urged that there is no genuine issue of material fact and as the City Defendants are entitled to judgment as a matter of law, this Court should enter summary judgment in favor of the City Defendants and dismiss Count I as well as Counts IV, V and VIII of the Complaints with prejudice.

---

[1] This case is presently on appeal to the United States Court of Appeals for the Sixth Circuit.

14

**C.     COUNTS TWO AND SIX MUST BE DISMISSED AS THERE WAS PROBABLE CAUSE TO ARREST AND CHARGE THE EAST CLEVELAND THREE WITH THE MURDER OF CLIFTON HUDSON.**

The *East Cleveland Three* have asserted at Count Two a claim for the deprivation of their constitutional rights under the Fourth and Fourteenth Amendments for Due Process Violation and Continued Detention Without Probable Cause.  Further, at Count VI, the *East Cleveland Three* have asserted a claim for malicious prosecution.

In order that they could prevail under Count Two, "it is clear that [they] must show, at a minimum, 'that **there was no probable cause** to justify [their] arrest and prosecution.'"  See *Rodriguez v. City of Cleveland*, 09-3679, 09-3799 (FED6) ref. *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 259 (6th Cir. 2001)).

Furthermore, and in order to prevail under Count Six, the *East Cleveland Three* are required to demonstrate:  (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (2) "that there was a **lack of probable cause for the criminal prosecution**"; (3) "that, 'as a consequence of a legal proceeding, ' the plaintiff suffered a 'deprivation of liberty' . . . apart from the initial seizure"; and (4) that "the criminal proceeding must have been resolved in the plaintiff's favor." See *Sykes v. Anderson*, 625 F.3d 294 308-09 (6th Cir. 2010) (emphasis added), (first quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007), then quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)).

In  support of their claim that there was absent probable cause to arrest them for the murder of Clifton Hudson, the *East Cleveland Three* have asserted:

15

> "Based on nothing other than Ms. Harris' statement that she saw a black 4x4-type vehicle at the scene of the shooting, and the fact that Mr. Glover had a 4x4-type vehicle, the Defendant Officers…arrested Plaintiffs very late at night."

ECF Doc.# 1 at ¶ 44.

It is observed that Tamika Harris was not the only person to witness Clifton Hudson's murder.  Shortly after the shooting, responding police officers, Detectives Sgt. Perry, D. J. Miklovich and Johnstone were approached with information relayed by Robert Hunt who advised that he was standing on Manhattan at Ardenall when he heard 5 to 6 gunshots coming from the area of Strathmore and Manhatten.  He further advised that he observed a black Chevrolet Blazer, 2-door, older model, 4x4 turn right from Strathmore…he further observed the driver of the blazer to be Laurese Glover of Knowles Avenue in the City of East Cleveland aka Quink, a known member of the Tribe Gang.  Finally, he advised that the driver of the Chevy hangs with Ramone Malone and Derrick Wheatt (aka Lil Joe).  See East Cleveland Police Department Supplementary Report EC 9503123 attached hereto as Exhibit D.

Additional information was provided by East Cleveland resident Jerry Vaught, who provided that he was standing on the corner of Elderwood and Strathmore talking with a friend when he observed the victim running in his direction being followed by another male who was shooting at the victim.  Later being shown photographs of the *East Cleveland Three* Mr. Vaught positively identified Eugene Johnson as the person who shot and killed Clifton Hudson.  Id.

It is further urged that probable cause was supported by the following facts: (1) Derrick Wheatt, Laurese Glover and Eugene Johnson admitted to being together at the scene at the time of the shooting; (2) physical evidence tied them to the shooting, namely, Wheatt's hands were consistent with gunshot residue, Johnson's left glove was consistent with gunshot residue, and the Blazer contained lead residue on the front passenger's-seat bottom, side-door armrest, and

exterior, and (3) Harris's testimony placed the their vehicle at the post office driveway.  Finally, it is observed that when arrested Eugene Johnson was wearing the same clothes as Ms. Harris described the shooter to be wearing.

Accordingly, as the evidence of record clearly demonstrates that there was sufficient probable cause to arrest and charge the *East Cleveland Three* with the murder of Clifton Hudson, this Court should find that Counts Two and Six of the Complaints must be dismissed and that summary judgment should be entered in favor of the City Defendants.

### D. COUNT THREE FOR DENIAL OF ACCESS MUST BE DISMISSED AS THE CITY DEFENDANTS WERE RESTRAINED AS A MATTER OF LAW FROM RELEASING THE CLIFTON HUDSON HOMICIDE FILE.

Under Count Three of their Complaints, the *East Cleveland Three* assert that the City Defendants interfered with the City of East Cleveland's response to a 1998 public records request seeking the Clifton Hudson Homicide file; and that such interference constituted a denial of access.  See ECF Doc #1, at ¶ 207 also see Exhibit E.  They have further alleged that subsequent to this request instructions were received from the Cuyahoga County Prosecutor's Office demanding that the City of East Cleveland not only refuse the request, but was further instructed to turn over the entire file and all copies thereof to the Cuyahoga County Prosecutor's Office.  See Exhibit F.

This Court is urged that as a matter of law, the City Defendants were not required to respond to the public records request.  First, it is observed that pursuant to *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (Ohio 1994) the City Defendants were not under any obligation to release the Clifton Hudson Homicide files.  As pertinent here, the *East Cleveland Three* alleged that:

17

"In 1998 as part of an initial post-conviction investigation, Plaintiffs sent a public records request to the City of East Cleveland.  The request sought copies of all police and investigatory records related to the murder of Clifton Hudson.

At the time, Plaintiffs' criminal convictions had become final.  Plaintiffs' convictions had been affirmed by the state court of appeals, and the Ohio Supreme Court had denied review.  No motion for new trial or petition for post-conviction relief had been filed.  There was nothing pending in court in Plaintiffs' criminal cases."

See ECF Doc. #1 at ¶ ¶ 136-7.

Based on these alleged facts and pursuant to the authority under *Steckman* the City

Defendants had no obligation to release the Clifton Hudson Homicide file.  In this regard,

*Steckman* provided at the syllabus:

3.      Information, not subject to discovery pursuant to Crim.R. 16(B), contained in the file of a prosecutor who is prosecuting a criminal matter, is not subject to release as a public record pursuant to R.C. 149.43 and is specifically exempt from release as a trial preparation record in accordance with R.C. 149.43(A)(4).

4.      Once a record becomes exempt from release as a "trial preparation record," that record does not lose its exempt status unless and until all "trials," "actions" and/or "proceedings" have been fully completed.

6.      A defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief.

See *Steckman* at the syllabus.

Indeed, Plaintiffs' assertion that the County Prosecutor's office was not counsel for the

City Defendants is incorrect as upon bindover to the County, law enforcement officers are

counselled and advised by County Prosecutors.  The City Law Department and City Prosecutors

thereby lose all authority.  See R.C. 1901.20, also see R.C. 2151.23(H).

Accordingly, it stands certain that the East Cleveland Three's claims at Count Three must

be dismissed and that as a matter of law the City Defendants are entitled to Judgment in their

favor.

18

Finally, in Counts VIII and IX Plaintiffs have respectively alleged claims for Intentional Infliction of Emotional Distress, and Tortious Interference.  Further, in Counts X and XI Plaintiffs have asserted claims for *respondeat* superior liability and indemnification.   As studied *supra*, these claims must also fail.

## CONCLUSION

For these reasons, the City Defendants respectfully requests that this Honorable Court grant summary judgment in their favor on all of the claims contained in the *East Cleveland Three's* Complaints.  In the alternative, the City Defendants ask that this matter be held in abeyance until the Sixth Circuit makes a ruling in the *Ricky Jackson v. City of Cleveland, et al.,* U.S. District Court for the Northern District of Ohio, Eastern Division Case.

Respectfully submitted,

/s/ *Willa M. Hemmons*
Willa M. Hemmons (0041790)
Director of Law
City of East Cleveland
14340 Euclid Avenue
East Cleveland, Ohio 44112
whemmons@eastcleveland.org

Counsel for the City of East Cleveland, John C. Bradford, Terrence Dunn, Vincent K. Johnstone, Patricia Lane, D. J. Miklovich, Michael C. Perry and Charles Teel

## CERTIFICATE OF TRACK ASSIGNMENT
## AND COMPLIANCE WITH PAGE LIMITATIONS

The undersigned certifies that the case is currently assigned to the standard track and that this foregoing *Memorandum in Support of the City Defendants' Motion for Summary Judgment* complies with the 20 page limitation for standard track cases as set forth in Loc.R. 7.1(f).

/s/ *Willa M. Hemmons*
Attorney for City Defendants

19

**<u>CERTIFICATE OF SERVICE</u>**

A true and accurate copy of *The City Defendants' Motion for Summary Judgment* was electronically filed with the Court on this 18th day of September, 2017; and that by operation of this Court's electronic notification system a copy thereof is made available to all registered parties.

*/s/ Willa M. Hemmons*
Attorney for City Defendants