**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK WHEATT, et al., | ) | Case No: 1:17-CV-377 |
| | ) | consolidated with |
| Plaintiffs, | ) | Case No. 1:17-CV-611 |
| | ) | |
| v. | ) | JUDGE JAMES S. GWIN |
| | ) | |
| | ) | |
| CITY OF EAST CLEVELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**DEFENDANTS CUYAHOGA COUNTY, DEBORAH NAIMAN, AND CARMEN
MARINO'S MOTION FOR SUMMARY JUDGMENT**

---

Defendants Cuyahoga County, former Assistant Prosecuting Attorney Deborah Naiman, and former First Assistant Carmen Marino respectfully move this Court for summary judgment based on absolute immunity, or in the alternative, qualified immunity, ORC 2744 immunity, and that no genuine issue of material fact exists to present to a jury.  The reasons for this motion are fully discussed in the attached memorandum in support.

Respectfully submitted,

MICHAEL C. O'MALLEY (0059592)
Prosecuting Attorney of Cuyahoga County, Ohio

By:  s/ Jennifer M. Meyer
　　　JENNIFER M. MEYER (0077853)
　　　CHARLES HANNAN (0037153)
　　　Assistant Prosecuting Attorneys
　　　1200 Ontario Street, 8th Floor
　　　Cleveland, Ohio  44113
　　　Tel:  (216) 443-7800/Fax: (216) 443-7602
　　　Email:  jmeyer@prosecutor.cuyahogacounty.us
　　　channan@prosecutor.cuyahogacounty.us
　　　*Counsel for Defendant Cuyahoga County, Naiman, and
　　　Marino*

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK WHEATT, et al., | ) | CASE NO. 1:17-CV-377 |
| | ) | consolidated with |
| Plaintiffs, | ) | CASE NO. 1:17-CV-611 |
| | ) | |
| vs. | ) | JUDGE JAMES GWIN |
| | ) | |
| CITY OF EAST CLEVELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**DEFENDANTS CUYAHOGA COUNTY, DEBORAH NAIMAN, AND CARMEN MARINO'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

## I.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     The Complaint

Plaintiffs Derrick Wheatt and Laurese Glover filed the complaint seeking damages for alleged 1983 civil rights violations after Plaintiffs, along with Plaintiff Eugene Johnson, were convicted and served almost 20 years in prison for the murder of Clifton Hudson.  (ECF 1).  The Defendants listed are the City of East Cleveland, several East Cleveland Officers, Cuyahoga County, former Assistant Prosecuting Attorney Deborah Naiman, and former First Assistant Carmen Marino.  Plaintiff Eugene Johnson filed a subsequent almost identical lawsuit. (1:17-CV-611).   At the Case Management Conference, this Court consolidated the matters for judicial economy. (ECF 29).   The claims before this Court against the Defendants are as follows:  Count One is a Fourteenth Amendment Due Process claim against all individual Defendants (ECF 1 at ¶ 167-188); Count Two is a Fourth and Fourteenth Amendments Due Process and Continued Detention without Probable Cause against all individual

1

Defendants (Id. at ¶ 189-201); Count Three is a Denial of Access to Courts claim under the First, Fourth, Fifth, and Fourteenth Amendments and Article IV of the Privileges and Immunities Clause of the U.S. Constitution against all individual Defendants. (Id. at ¶ 202-214); Count Four is a generic Failure to Intervene claim against all Defendants (Id. ¶ 215-219); Count Five is a Conspiracy to Deprive Constitutional Rights against all Defendants (Id. ¶ 220-226); Count Six is a Malicious Prosecution claim under Ohio Law against all Defendants (Id. ¶ 227-232); Count Seven is Intentional Infliction of Emotional Distress claim under Ohio Law against all Defendants (Id. ¶ 233-237); Count Eight is a Civil Conspiracy claim under Ohio Law against all Defendants (Id. at ¶ 238-243); Count Nine is a tortious interference under Ohio Law against all Defendants (Id. at ¶ 244-250); Count Ten is a *Respondeat Superior* claim under Ohio Law against Defendants City of East Cleveland and Cuyahoga County (Id. at ¶ 251-254); and Count Eleven is titled Indemnification against Defendants East Cleveland and Cuyahoga County (Id. 255-257).

### B.    Factual Background

On February 10, 1995, 19 year old Clifton Hudson was shot and killed on the sidewalk of Strathmore Avenue in East Cleveland, Ohio.  (Id. at ¶ 29).  Plaintiffs Wheatt, Johnson, and Glover were in a black GMC Jimmy stopped on Strathmore Avenue when the shooting of Clifton Hudson occurred. (Id. at ¶ 32).  Plaintiff Glover claims that he drove off from the shooting and drove to his girlfriend's house while Plaintiffs Wheatt and Johnson went to two friends' house on Shaw. (Glover Depo., ECF 83-1, pgs. 31-33.  Fourteen year old eye-witness Tamika Harris identified the Plaintiffs' vehicle and Plaintiff Johnson based on the clothing he was wearing. ECF 1 ¶ 61,

Plaintiffs, represented by different counsel, went to trial in January 1996 and were found guilty by a jury. Id. at ¶ 126, 128.  Plaintiffs were incarcerated for almost 20 years until the Ohio Innocence

Project alleged that exculpatory evidence was withheld from Plaintiffs' trial attorneys.  In 1995 and 1996, the current open discovery laws in Ohio did not exist.  Instead of defense counsel receiving copies of police reports, the file was read to opposing counsel and the defense attorneys would make notes of any information the attorneys felt was pertinent.  (Marino Depo. ECF 81-1, pg. 49-50).  To date, Plaintiffs nor their counsel who were served with subpoenas have provided any notes from the reading of the files to ascertain what information Plaintiffs' counsel did have at the time of their criminal trials.

After Plaintiffs' convictions and in preparation for another appeal, one of Plaintiffs' family members sent a public records request to the City of East Cleveland for requesting the entire file regarding her son in preparation for an additional appeal.  Defendant then Assistant Prosecuting Attorney Deborah Naiman sent a letter to the City of East Cleveland requesting that they not release the file and to turn over the file to the Cuyahoga County Prosecutor's Office.  She wanted to maintain the status quo of the file and prevent Plaintiffs from circumventing Criminal Rule 16 and case law applicable at the time. (ECF 80-1, 42-43, 117).  Defendant Carmen Marino only signed the letter sent to East Cleveland as the First Assistant to the Prosecutor's Office and had no knowledge of the criminal file. (ECF 81-1).  Defendant East Cleveland apparently did not turn over their original file to the Prosecutor's Office because East Cleveland later produced it to the Ohio Innocence Project years later after State Law changed regarding public records.

In 2015, despite not reviewing any notes or the file, Attorney Richard Drucker testified that certain evidence was withheld.  (Exhibit A, Motion for New Trial Transcript).  Attorney Drucker has subsequently testified that he can vaguely remember sitting down with the other defense attorneys and listening to Michael Horn read the reports.  (ECF 82-1, pg. 12-13).  "[W]hat specifically in detail

3

[Michael Horn] said to me, I can't recall." Id. at pg. 13:9-11.  The trial court ordered a new trial based on Mr. Drucker's testimony.  Plaintiffs were released in 2015 and subsequently filed this action.

## II.      LEGAL ARGUMENT

### A.      Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed.R.Civ.P. 56; *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts.  *Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied sub nom*. Superior Roll

*Forming Co. v. Interroyal Corp.*, 494 U.S. 1091 (1990).  Rather, the burden is on the nonmoving party

"to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street*

*v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in

dispute.  *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-405.

> **B.**     **Plaintiffs' § 1983 Claims against Defendants Naiman and Marino fail as a Matter of Law because these Defendants have Full and Absolute Prosecutorial Immunity.**

Plaintiffs have sued Defendants Deborah Naiman and Carmen Marino in their individual

capacities.  ECF 1 at ¶ 23; Johnson Complaint at ¶ 22.  Plaintiffs' claims against Defendants Naiman

and Marino fail because these Defendants have absolute prosecutorial immunity. Despite the limited

involvement they had in this matter, the actions they took were prosecutorial functions of upholding

criminal convictions.  They should accordingly be granted a summary judgment.

> **i.**     **Absolute Prosecutorial Immunity**

When determining whether a particular public officer should be afforded immunity from suit

that is absolute as opposed to qualified, courts employ a functional analysis that "looks to the nature of

the function performed, not the identity of the actor who performed it."  *Buckley v. Fitzsimmons*, 509

U.S. 259, 269, (1993), *quoting Forrester v. White*, 484 U.S. 219, 229 (1988).

Applying this functional approach, a prosecutor has absolute immunity from a § 1983 damages

suit when the prosecutor was functioning as advocate for the State and engaged in activities that are

intimately associated with the judicial phase of the criminal process, including the initiation of the

prosecution and presentation of the State's case.  *See Imbler v. Pachtman*, 424 U.S. 409, (1976).

Absolute immunity attaches even as to claims that the prosecution used perjured testimony or

suppressed exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83, (1963).  *See Imbler*, 424 U.S. at 431.

Absolute immunity extends not just to prosecutors directly involved in a particular criminal prosecution, but also to other prosecutor's supervisory personnel and office staff so long as the conduct at issue concerns prosecutorial functions intimately associated with the judicial phase of the criminal process.  Thus in *Van de Kamp v. Goldstein*, 555 U.S. 335, (2009), the Court held that the district attorney and his chief assistant had absolute prosecutorial immunity as to claims that they failed to properly supervise or train prosecutors or establish an information management system that would facilitate the disclosure of impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150, (1972).

Notwithstanding plaintiff Goldstein's attempt in *Van de Kamp* to characterize the district attorney's office management activities as being "administrative" in nature, the Court discerned that the plaintiff's claims focused upon a kind of administrative obligation that itself was directly connected with the conduct of a trial:

> Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim.  The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like.  Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, *e.g.*, in determining what information should be included in the training or the supervision or the information-system management.  And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees.  Given these features of the case before us, we believe absolute immunity must follow.

*Id*. at 344.

6

Because the actions at issue ultimately concerned the prosecution's failure to disclose evidence to the plaintiff during in the course of his criminal case proceedings, absolute immunity extended to prosecutor's office staff who may have had no direct involvement in his particular case, for "it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance." *Id*. at 345, quoting *Kalina*, *supra*, 522 U.S. at 125.  The Court explained:

> [T]o permit this suit to go forward would create practical anomalies.  A trial prosecutor would remain immune, even for *intentionally* failing to turn over, say *Giglio* material; but her supervisor might be liable for *negligent* training or supervision.  Small prosecution offices where supervisors can personally participate in all of the cases would likewise remain immune from prosecution; but large offices, making use of more general office wide supervision and training, would not.  ***
>
> We conclude that the very reasons that led this Court in *Imbler* to find absolute immunity require a similar finding in this case.

*Van de Kamp v. Goldstein*, 555 U.S. at 347-348, (emphasis in original).

### ii. The June 24, 1998 Response to the Public Records Request

In the instant case, the conduct of Defendants Naiman and Marino upon which Plaintiffs' claims are predicated plainly concern actions taken strictly in their capacity as prosecutors in connection with the ongoing judicial phase of the criminal process.  In particular, the evidence establishes that someone from the East Cleveland Police Department contacted the Cuyahoga County Prosecutor's Office in June 1998 to make the office aware of recent public records requests – including at least one made by Wheatt's new counsel – to the City of East Cleveland for the police investigatory file.  The East Cleveland police contacted the Cuyahoga County Prosecutor's Office because it had prosecuted the underlying charges with direct appeals having been determined one year earlier in 1997.  Defendant Naiman fielded the call and, after reviewing the matter with the supervisor of the office's

Appeals Unit, drafted the June 24, 1998 letter – expressly referencing the underlying criminal case caption and trial court case number – informed East Cleveland police that the contents of that department's investigation file was not public record.

And as it relates to Ohio's public records law at that time, the prosecutors were correct in stating that East Cleveland's police investigation file as not public record.  Almost four (4) years earlier, in *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, (1994), the Supreme Court of Ohio heard three appeals in which criminal defendants or their agents used Ohio's public records law, R.C. 149.43, to request police department investigation records relating to their respective criminal prosecutions.  Two defendants made their requests while their cases were still be prosecuted, while the third defendant did not make his request until after he had exhausted his direct appeals.

Realizing the complications caused by the increased use of public records requests in connection with criminal case prosecutions, *Steckman* established new rules of practice in Ohio. Among other things, the court declared that records assembled by law enforcement officials in connection with a probable or pending criminal case proceeding were not public records because they were statutorily exempt as "confidential law enforcement investigatory records" (CLEIRs) under R.C. 149.43(A)(2) and/or "trial preparation records" under R.C. 149.43(A)(4).  Id. at syllabus ¶ 3, 5.

*Steckman* further established that a defendant could not use Ohio's public records law to obtain discovery in the criminal proceeding itself but rather could use only Ohio Criminal Rule 16 to obtain discovery.  *Id*., syllabus at ¶  2.  The court expressly forbade the use of public records requests to obtain post-conviction relief, declaring:

> A defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief.  (*State ex rel. Clark v. Toledo*, 54 Ohio St.3d 55, 560 N.E.2d 1313 [(1990)], and its progeny, overruled.)

8

*Steckman*, syllabus at ¶ 6.

The *Steckman* decision further established that once a record was exempt from release as a "trial preparation record," that record did not lose its exempt status unless and until all trials, actions, and/or proceedings had been fully completed.  *Id*., syllabus at ¶ 4.  Left unaddressed by *Steckman* was for how long CLEIRs would retain their exempt status.

The answer came on January 22, 1997, when the Supreme Court of Ohio issued its decision in *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, (1997).  The court there stated:

> *Steckman* expressly held at paragraph four of its syllabus that "once a record becomes exempt from release as a "trial preparation record," that record does not lose its exempt status unless and until all "trials," "actions" and/or "proceedings" have been fully completed."  Analogously, once applicable, the records continue to be exempt work product until all proceedings are fully completed.

*State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d at 360.

In that case, criminal charges had been filed against three individuals, two of whom had already been convicted and sentenced.  But their conviction and sentencing did not mean that their case proceedings had been fully completed:

> In the case at bar, although Patterson and Hornsby have been convicted of and sentenced for certain crimes, further proceedings on these offenses are possible because they could be granted a new trial pursuant to (1) Crim.R. 32.1, permitting the withdrawal of their guilty and no contest pleas, or (2) a petition for postconviction relief under R.C. 2953.21.  In addition, Taylor has been charged but remains untried so the possibility of a trial still exists.  Therefore, based on *Steckman* and [*State ex rel. Leonard v. White*, 75 Ohio St.3d 516, 664 N.E.2d 527 (1996)], the vast majority of the requested records are exempt from disclosure as R.C. 149.43(A)(2)(c) work product and R.C. 149.43(A)(4) trial preparation records.

*Id*.[1]

---

[1] On December 28, 2016, the Supreme Court of Ohio fundamentally changed course by its decision in *State ex rel. Caster v. City of Columbus*, 2016-Ohio-8394.  In light of significant changes to Ohio Criminal Rule 16 and the advent of "open discovery," the *Caster* court held that the specific

As it pertains to the case at bar, the complained of actions of Defendants Naiman and Marino in June 1998 can now be seen in better context.  The undisputed facts show that the then-defendants/now-plaintiffs were convicted of murder on January 18, 1996.  On January 16, 1997, the Ohio Court of Appeals for the Eighth District affirmed each conviction.  *See State v. Wheatt*, 8th Dist. No. 70197, 1997 Ohio App. LEXIS 96 (Jan. 16, 1997); *State v. Glover*, 8th Dist. No. 70215, 1997 Ohio App. LEXIS 98 (Jan. 16, 1997); *State v. Johnson*, 8th Dist. No. 70234, 1997 Ohio App. LEXIS 100 (Jan. 16, 1997).

Glover did not appeal further.  On May 14, 1997, the Supreme Court of Ohio denied Johnson's motion for leave to file a delayed appeal.  *See State v. Johnson*, 78 Ohio St.3d 1485 (1997).  On May 28, 1997, the Supreme Court of Ohio declined to hear Wheatt's discretionary appeal.  *See State v. Wheatt*, 78 Ohio St.3d 1512 (1997).

Plaintiffs admit that after having exhausted their direct appeals in 1997, the 1998 public records request to the City of East Cleveland was "part of an initial post-conviction investigation."  ECF 1, ¶ 134; Johnson Complaint at ¶ 136.  The *Steckman* decision established that a defendant in a criminal case who had exhausted his direct appeals could not use R.C. 149.43 to support a petition for post-conviction relief. *Steckman*, at ¶ 6.  For all intents and purposes, the 1998 public records request attempted to do precisely what the *Steckman* decision forbade.  The prosecutors' June 24, 1998 correspondence to East Cleveland police served to communicate to the recipients that the attempt to obtain that department's police file by public records request was not proper under Ohio law.  While it

---

investigatory work product exception of R.C. 149.43(A)(2)(c) does not extend beyond the completion of the trial for which the information was gathered. *Id*. at ¶ 47.  To the extent the *Steckman* and *WLWT-TV5* held otherwise, they were overruled. *Id*.  The relevant inquiry in the instant case is the law that was in effect in 1998 when Defendants Naiman and Marino sent their letter to the East Cleveland

remained East Cleveland's prerogative at all relevant times to respond as it deemed appropriate to public records requests directed to that city, the prosecutors' attempt to prevent a seeming attempt to circumvent the law under *Steckman* was clearly an act undertaken by prosecutors in the post-conviction judicial phase of criminal case proceedings.

Absolute prosecutorial immunity attaches to prosecutorial actions that occur in connection with post-conviction proceedings. *See Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003) ("Absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings, including direct appeals, habeas corpus proceedings, and parole proceedings…")

The prosecutor's role of advocate does not expire with the conclusion of particular judicial proceedings. As explained in *Warney v. Monroe County*, 587 F.3d 113, 121 (2nd Cir. 2009),

> [O]nce a conviction becomes final, there is no longer a pending adversarial criminal proceedings; the "judicial phase" is technically finished. Yet, by the nature of their office, prosecutors will necessarily remain involved in criminal cases: opposing civil habeas petitions (or other forms of collateral relief); amending restitution orders; pursuing parole violations, or resolving disputes over a prisoner's projected release date. These functions may be somewhat administrative, and may not always relate to an ongoing "judicial phase" of a prosecution.

In the case at bar, the post-conviction judicial phase of Plaintiffs' criminal case proceedings had not been completed by June 1998.[2] Indeed, Plaintiffs admit that the June 1998 public records

_____

police department.

[2] To the contrary, the record reflects a long list of post-conviction relief sought by Plaintiffs: Wheatt filed for a new trial and post-conviction relief in April 1999, but his motions were subsequently denied. *See State v. Wheatt*, 8th Dist. No. 77292, 2000 Ohio App. LEXIS 4953 (Oct. 26, 2000). New trial motions filed in 2004, relying on Tamika Harris's recantation, were later denied. *See State v. Johnson*, 8th Dist. No. 85416, 2005-Ohio-3724; *State v. Wheatt*, 8th Dist. No. 86409, 2006-Ohio-818. Johnson's 2006 habeas corpus petition under 28 U.S.C. 2254 was later denied in *Johnson v. Gansheimer*, N.D. Ohio No. 1:06 CV 2816, 2009 U.S. Dist. LEXIS 87690 (Sep. 21, 2009). 2009 rulings denying the new-trial motions based on alleged forensic science advances concerning gunshot residue were rejected. *See State v. Glover*, 8th Dist. No. 93623, 2010-Ohio-4112; *State v. Wheatt*, 8th

11

request was part of their initial post-conviction investigation. (ECF 1, ¶ 134).  After the East Cleveland police alerted the prosecutor's office to the request, prosecutors Naiman and Marino, having become aware of the procedural posture of the plaintiffs' criminal cases, utilized their legal skills as advocates for the State in order to defend Plaintiffs' recently-affirmed convictions from collateral attack.  Despite that fact that there was not at that time an *active* post-conviction judicial proceeding pending, the post-conviction judicial phase of Plaintiffs' criminal case proceedings plainly had not been completed by that time.

And the action prosecutors Naiman and Marino took was clearly taken as advocates for the State in anticipation of Plaintiffs' post-conviction collateral attacks.  Regardless of whether the direction that Defendants Naiman and Marino gave to East Cleveland police was correct or incorrect, absolute immunity attaches when the prosecutor is performing *prosecutorial* functions irrespective of whether the prosecutor's action was right or wrong.  *See Imbler*, *supra*.

Moreover, their conduct is fundamentally distinguishable from the circumstance in *Burns v. Reed*, *supra*, where the prosecutor gave legal advice to the police during the investigative phase before the initiation of the judicial phase of judicial phase of the criminal process.  In the matter at hand, the judicial phase of the plaintiffs' criminal case proceedings had long since commenced.  Once the judicial phase of the criminal process has begun, a prosecutor's legal advice to law enforcement in connection those proceedings is protected by absolute prosecutorial immunity.  *See*, *e.g.*, *Lomaz v.*

---

Dist. No. 83671, 2010-Ohio-4120.  Wheatt and Glover's 2012 habeas corpus petitions were denied in *Wheatt v. Bradshaw*, N.D. Ohio No. 1:12 CV 0266, 2013 U.S. Dist. LEXIS 38948 (Mar. 4, 2013), and *Glover v. Morgan*, N.D. Ohio No. 1:12 CV 0267, 2013 U.S. Dist. LEXIS 38947 (Mar. 4, 2013).  Wheatt and Glover's January 2013 state court petitions for post-conviction relief were denied.  *See State v. Glover*, 8th Dist. Nos. 100330, 100331, 2014-Ohio-3228.

*Hennosy*, 151 F.3d 493, 499 (6th Cir. 1998) (prosecutors absolute immune when advising law enforcement to continue with search warrant seizure in preparation for judicial proceedings).

The fact that Defendants Naiman and Marino may have had no prior or subsequent direct involvement in Plaintiffs' criminal case proceedings is immaterial.  *See Howell v. Sanders*, 668 F.3d 344, 353 (6th Cir. 2012) (prosecutor who did not try the case was nevertheless entitled to absolute immunity for advocacy functions).  As indicated previously, absolute prosecutorial immunity attaches based on the nature of the function performed, not the identity of the actor who performed it.  *See Buckley v. Fitzsimmons*, *supra*.  Indeed, denying absolute immunity to fellow prosecutors would be fundamentally inconsistent with the principles espoused in *Imbler* and *Van de Kamp* and would have a demoralizing effect on prosecutors' offices generally.  But most importantly, for even the limited involvement that they had in this matter, Naiman and Marino functioned strictly as *advocates* for the State.

Indeed, even Plaintiffs' own case theory here confirms that the actions for which they seek to hold Defendants Naiman and Marino liable are functions of a prosecutor acting as advocate for the State.  In particular, Plaintiffs insist that these Defendants "deliberately failed to disclose and withheld and/or suppressed exculpatory evidence from Plaintiffs, their counsel, and prosecutors, among others, and prevented such evidence from being disclosed by the City of East Cleveland, after Plaintiffs convictions became final and no adversarial proceedings were ongoing."  ECF 1 at ¶ 176; Johnson Complaint at¶ 181.

Accepting Plaintiffs' allegations as true for purposes of this argument, any claim that Defendants Naiman and Marino failed to disclose exculpatory evidence necessarily implies that they utilized their legal skills *as prosecutors* to appreciate the exculpatory nature of the East Cleveland

13

police file and then violated their duty *as prosecutors* when they failed to disclose or otherwise interfered with the disclosure of such exculpatory evidence. Disclosing relevant evidence in a criminal prosecution that has entered the judicial phase of the criminal process assuredly is a quintessential core function of a prosecutor as advocate for the State. So notwithstanding any attempt to mischaracterize the conduct of Naiman and Marino as having been engaged in "administrative" or "investigative" functions, it is readily apparent that they were drawn into the underlying criminal case proceedings – and have been named in this civil case – solely because they were *prosecutors* called upon to exercise prosecutorial functions.

Because Defendants Naiman and Marino functioned strictly as advocates for the State following the initiation of the judicial phase of Plaintiffs' criminal case proceedings, they should be granted absolute prosecutorial immunity as a matter of law.

**C.** **Plaintiffs' § 1983 claims against Defendants Marino and Naiman fail as a Matter of Law because these Defendants are entitled to Qualified Immunity.**

Even if this Court determines that Defendants are not entitled to absolute immunity, they would be entitled to qualified immunity from Plaintiffs' claims in this case. That alternative immunity likewise entitles Defendants Naiman and Marino to summary judgment as a matter of law.

**i.** **Qualified Immunity**

Government officials performing discretionary functions enjoy qualified immunity that shields them for civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton*, 483 U.S. 635, 638, (1987). Qualified Immunity attaches when an official's conduct does not violate clearly established constitutional or statutory rights that would have been known to a reasonable person. *See White v. Pauly*, __ U.S. __, 137 S.Ct. 548, 551 (2017). The doctrine gives officials "breathing room to make

reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011).  It thus protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Once the qualified immunity defense has been raised, the burden is on Plaintiffs to demonstrate that the official is not entitled to it.  *See France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016).  To do that, Plaintiffs must prove that (1) the official violated a right and (2) the right was clearly established at the time of the official's conduct.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The right claimed must have been sufficiently clear that a reasonable official would have known that what he did violated that right.  *See Anderson v. Creighton*, *supra*, 483 U.S. at 639-640.  While it is unnecessary for the very action in question to have been held unlawful, the unlawfulness of the official's action must nevertheless have been apparent in light of the pre-existing law.  *Id*. at 640.  And although Plaintiffs must establish both prongs, the court has discretion to consider the prongs it whatever sequence it deems appropriate.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In this case, Counts I through V of Plaintiffs' complaints allege that Defendants Naiman and Marino committed violations of federal law including various constitutional rights violations.  For the reasons that follow, however, Defendants Naiman and Marino respectfully submit that they should be accorded qualified immunity as to those claims.

### a.     Fourteenth Amendment Due Process Claim regarding Exculpatory Evidence Fails

Count I of Plaintiffs' complaints contends that Defendants violated Plaintiffs' Fourteenth Amendment right to due process of law failing to disclose, withholding, and/or suppressing exculpatory evidence.  As to Defendants Naiman and Marino in particular, Plaintiffs allege that they

failed to disclose, withheld, and/or suppressed exculpatory witness statements contained in the East Cleveland police file.

To be sure, the Due Process Clause of the Fourteenth Amendment requires a prosecutor to disclose material exculpatory evidence to the defendant *prior to trial*. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  In this case, however, Plaintiffs were tried and convicted and had their convictions upheld by the Ohio Court of Appeals before Defendants Marino and Naiman had any involvement in this matter at all.  Plaintiffs acknowledge that Michael Horn was the only prosecutor who worked on the Plaintiffs' trials.  ECF 1 at ¶ 133; Johnson Complaint at ¶  131. Because Plaintiffs have already been convicted in what had then been determined to be a constitutionally fair trial, the pre-trial *Brady* right to exculpatory evidence would seem to be "the wrong framework."  *See DA's Office v. Osborne*, 557 U.S. 52, 68-69 (2009).

At any rate, the issue here is whether prosecutors Naiman and Marino violated constitutional rights that were clearly established in June 1998 if, as Plaintiffs allege, they received but did not disclose material exculpatory evidence that had not been provided previously to trial prosecutor Horn. But the clearly established law – then and now – was that a prosecutor's alleged failure to disclose exculpatory material was the functional responsibility of a prosecutor as the State's advocate engaged in activities that are intimately associated with the judicial phase of the criminal process that was subject to absolute prosecutorial immunity.  *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Howell v. Sanders*, 668 F.3d 344, 354 (6th Cir. 2012); *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir.), *cert. denied*, 562 U.S. 829 (2010); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). Inasmuch as the essential gist of Plaintiffs' claim is that prosecutors Naiman and Marino failed to disclose material exculpatory evidence, Defendants are unaware of any clearly established law

16

applicable to events in June 1998 that would cause prosecutors Marino and Naiman to be treated differently from the trial prosecutor just because they may have obtained exculpatory evidence after Plaintiffs had been convicted at trial and their convictions were upheld through direct appeals.

Moreover, Plaintiffs' claim against Naiman and Marino fundamentally rests on a series of dubious assumptions, namely, that Marino and Naiman: (1) reviewed the East Cleveland police file that was brought to the Prosecutor's Office in 1998; (2) discerned – from a case with which they had no prior involvement whatsoever – that the East Cleveland police file contained material exculpatory evidence; (3) compared the East Cleveland police file they received with the records and reports contained in the Prosecutor's Office criminal case file and discovered either that (a) the Prosecutor's Office file did not contain the exculpatory evidence, or (b)  the Prosecutor's Office file did contain the exculpatory evidence but that it had not been disclosed prior to trial; and (4) decided deliberately to withhold material exculpatory evidence – that was received over two years after the underlying convictions and after all direct appeals had been exhausted.  The record is complete devoid of any evidence to substantiate any of Plaintiffs' assumptions/allegations.

Defendants Marino and Naiman should accordingly be granted qualified immunity.

**b.**     **Substantive Due Process Claim Fails**

In Count II of their complaints, Plaintiffs allege that Defendants Naiman and Marino violated Plaintiffs' Fourteenth Amendment right to substantive due process by engaging in "arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness."  ECF 1 at ¶ 198; Johnson Complaint at ¶  203.  For the reasons that follow, qualified immunity precludes this claim as well.

17

In *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992), the Court observed: "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision-making in this unchartered areas are scarce and open-ended." In *Albright v. Oliver*, 510 U.S. 266 (1994), the Court held that a claim for arrest without probable cause was to be considered under the Fourth Amendment, not under the substantive due process clause of the Fourteenth Amendment.  The plurality opinion there noted that when a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing the claim.  *Id*. at 273, citing *Graham v. Connor*, 490 U.S. 386, 395 (1989).

In this case, the evidence most favorable to Plaintiffs indicates that Defendants Naiman and Marino told East Cleveland police that the contents of their investigatory file was not public record and that releasing the file would be a willful violation of law – as the use of Ohio's public records act to obtain records for post-conviction relief was in direct violation of *Steckman's* prohibition.  But the mere act of communicating the prosecutors' legal opinion to the police department did not violate any right of Plaintiffs, let alone shock the conscience.  East Cleveland had its own legal counsel that could have be consulted to determine how to respond to the June 1998 public records request, the prosecutors' mere act of expressing their legal opinion to East Cleveland police about the legal status of their case file did not violate any clearly established right of Plaintiffs.

Moreover, the decision whether to release East Cleveland's police file in response to a public records request rested at all times with East Cleveland.  Had Plaintiffs believed that East Cleveland's refusal to disclose its file was contrary to Ohio's public records law, they could have filed an original action in mandamus – which even the *Steckman* decision acknowledged.  *See Steckman*, syllabus at ¶

18

1.  Even Plaintiffs – then and now – do not contend that they were entitled in 1998 to obtain East Cleveland' police file under the Ohio public records law in effect at that time.

Further, the fact that Defendants Naiman and Marino requested that the complete police file be delivered to the Prosecutor's Office forthwith did not violate any clearly established right of Plaintiffs. Indeed, Plaintiffs can hardly fault prosecutors for wanting to obtain the complete police file.  The City of East Cleveland obviously retained at least a copy if not the original file inasmuch as Plaintiffs subsequently obtained it to support their motions for new trial.  In any case, there is nothing conscience-shocking about prosecutors seeking the complete police case file.

To the extent Plaintiffs contend that the alleged failure of Marino and Naiman to disclose exculpatory evidence was conscience-shocking, *Brady v. Maryland* established that the right to obtain material exculpatory evidence prior to trial is protected as a matter of *procedural* due process.  There is accordingly no need to recast it post-conviction here as a matter of *substantive* due process.

But regardless of whether the failure to disclose exculpatory evidence were cognizable as a matter of *substantive* due process, the clearly-established law in 1998 conferred absolute prosecutorial immunity for any such failure.  Defendants Naiman and Marino should accordingly be granted qualified immunity.

### c.      Access to Federal Courts Claim Fails

Count III alleges that the alleged concealment by Defendants Naiman and Marino of information Plaintiffs needed to obtain redress through the courts violated their federally-protected right of access to the courts.  While virtually any prosecutor's alleged failure to disclose exculpatory evidence could alternatively be characterized as having interfered with a right of access to the courts, there is no apparent reason to think that a prosecutor would not still have absolute prosecutorial

19

immunity despite Plaintiff's pleading.  In any case, the record here establishes that Defendants Naiman and Marino would have qualified immunity against Plaintiffs' claims.

In the instant case, Plaintiffs have alleged a backward-looking claim that prosecutors Naiman and Marino concealed evidence from Plaintiffs.  Nevertheless, the clearly-established law in 1998 concerning a prosecutor's concealment of exculpatory evidence in a matter that had entered the judicial phase of the criminal process was *not* that it was actionable for violating a right of access to the courts but rather that it was not actionable based on absolute prosecutorial immunity.  Even accepting the truth of Plaintiffs' allegations solely for purposes of argument, Defendants Naiman and Marino did not prevent Plaintiffs from filing post-conviction court proceedings.  And again accepting solely for purposes of argument that Marino and Naiman withheld and/or concealed exculpatory evidence from Plaintiffs, there was no clearly established law in 1998 suggesting that a prosecutor's failure to disclose exculpatory evidence violated a constitutionally protected right of access to the courts.

Accordingly, Defendants Marino and Naiman would at least be entitled to qualified immunity.

### d.  <u>Plaintiffs' Failure to Intervene Claim Fails.</u>

Count IV of Plaintiffs' complaints alleges that the defendants failed to intervene to prevent other Defendants from violating Plaintiffs' constitutional rights.  This claim does not have any independent basis for relief but rather would appear to incorporate the constitutional claims set forth in the first three counts.

At any rate, Defendants Marino and Naiman should be granted summary judgment for this claim.  In *Elkins v. Summit County*, the Court granted qualified immunity to officers who allegedly failed to intervene to prevent a *Brady* violation, finding no clearly established law as of 1999 creating such a duty. Case No. 5:06 CV 3004, 2009 U.S.Dist. LEXIS 36077 (Apr. 28, 2009).  Incorporating

their previous arguments, this duplicative claim for relief fails to provide any further basis for relief against these Defendants.  Indeed, these Defendants were hardly in any position to intervene as to any act or omission that occurred prior to 1998.  Nor was there any clearly established law in 1998 imposing such a legal duty under these circumstances. For these reasons, summary judgment should be granted for a failure to intervene claim.

### e.    Conspiracy Claim Fails

Count V would similarly appear to lack any independent basis for relief but rather incorporates the constitutional claims set forth previously to plead that Defendants were engaged in a conspiracy to deprive Plaintiffs of their constitutional rights.

Defendants Naiman and Marino should again at least have qualified immunity as to this claim. Incorporating their previous arguments to this duplicative claim for relief, it fails to provide any further basis for relief against these Defendants.  Indeed, these Defendants could hardly have been engaged in a conspiracy with any of the other Defendants prior to 1998.  And there is no evidence that they engaged in such a conspiracy after 1998.

At any rate, inasmuch as the claimed failure to disclose exculpatory evidence was not actionable as to prosecutors Marino and Naiman based on absolute prosecutorial immunity, there was no clearly established law that would make that claim actionable simply by pleading it as a matter of conspiracy.  Defendants Marino and Naiman should accordingly be granted qualified immunity as to Count V.

### D.    Plaintiffs' § 1983 claims against defendant Cuyahoga County fail as a matter of law.

Plaintiffs cannot provide anything other than baseless allegations to support their claims against failure-to-train claim under 42 U.S.C. § 1983.  Plaintiffs bear the burden of providing more than simply reciting a laundry list of causes of action. They must prove that the County "itself" caused the constitutional violation.  A governmental entity cannot be held liable for the unconstitutional actions of its employees under a theory of *Respondeat Superior*. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), citing *Monell v. Department of Soc. Servs. of City of New York* 436 U.S. 658 (1978).   Instead, a plaintiff seeking to establish government liability under §1983 must "identify conduct properly attributable to the municipality itself." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003), quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

Second, Plaintiffs "must show that the government action was taken with the requisite degree of culpability."  Id. "A showing of deliberate indifference requires a showing of something more culpable … than a negligent failure to recognize [a] high risk of harm."  *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912 (6th Cir. 1995), quoting *Black v.Indiana Area Sch. Dist.*, 985 F.2d 707, 712-12 (3d Cir. 1993) (internal citations omitted).  See also, *Lewis v. City of Irvine, Kentucky*, 899 F.2d 451, 455 (6th Cir. 1990)  (It does not suffice "to prove that an injury or accident could have been avoided if [the employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.")

Finally, Plaintiffs "must demonstrate a direct causal link between the (governmental) action and the deprivation of constitutional rights." *Cherrington*, 344 F.3d at 645, quoting *Board of Cty. Comm'rs  of Bryan Cty.*, 520 U.S. at 404.  Plaintiffs must demonstrate that, through the County's deliberate conduct, the unconstitutional conduct of the County itself was the moving force behind the

injury alleged.  Id.  Plaintiffs fail to meet any of these requirements because no such evidence exists in the record.

Obviously, if this Honorable Court should determine that there was no underlying constitutional violation by the individual government employees; Plaintiffs' claims against the County necessarily fail. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*).

**E.**    **Plaintiffs' State Law Claims against Defendants Naiman, Marino, and Cuyahoga County fail as a Matter of Law based on State Law Statutory Immunity ORC 2744.**

Counts VI through XI of Plaintiffs' complaints purport to plead claims for relief arising under Ohio State law.  For the reasons that follow, however, none of these counts state viable claims for relief against Defendants Naiman, Marino or Cuyahoga County.

Reviewing the claims at the outset, Count VI purports to plead a state law claim for malicious prosecution that appears to be directed solely against the Defendant Officers.  It is not directed against defendants Marino, Naiman, or Cuyahoga County.

Count X does not plead any claim for relief but rather contends that under the doctrine of *Respondeat Superior*, Cuyahoga County is legally liable for the torts committed by Defendants Naiman and Marino.

Similarly, Count XI does not plead any claim for relief but rather contends that Cuyahoga County is obligated to pay for any tort judgment that may be rendered against Defendants Marino and Naiman.  Indemnification is not at issue in this matter.

To the extent Counts VII through XI purport to plead state law tort claims against Defendants Naiman, Marino, and Cuyahoga County, those claims are barred by Ohio State law.

As to individual Defendants Naiman and Marino, assistant county prosecutors functioning as advocates for the State are immune from state tort liability under R.C. 2744.03(A)(6) and/or R.C. 2744.03(A)(7).  *See Moore v. City of Cleveland*, 8th Dist. No. 100069, 2014 Ohio App. LEXIS 1341, 2014-Ohio-1426; *Tutela v. Medical Mut. of Ohio*, 8th Dist. No. 100032, 2014 Ohio App. LEXIS 913, 2014-Ohio-930; *Jopek v. City of Cleveland*, 8th Dist. No. 93793, 2010 Ohio App. LEXIS 1922, 2010-Ohio-2356.

To the extent Plaintiffs purport to plead state tort claims against Cuyahoga County and/or the Cuyahoga County Prosecutor's Office, R.C. 2744.02(A)(1) provides that except as provided in R.C. 2744.02(B), a political subdivision is not liable in damages for any tort injury caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental function.[3]   R.C. 2744.03(A)(1) further provides that a political subdivision is immune from liability if the employee involved was engaged in the performance of a prosecutorial function. Consequently, Cuyahoga County and/or the Cuyahoga County Prosecutor's Office would not be liable and would be immune from Plaintiffs' State law tort claims.

Defendants Naiman, Marino, and Cuyahoga County accordingly request that they be granted a summary judgment as to Plaintiffs' State law tort claims.

## III.    CONCLUSION

For the foregoing reasons, Defendants Cuyahoga County, former Assistant Prosecuting Attorney Deborah Naiman, and former First Assistant Carmen Marino respectfully request that this Court grant summary judgment in their favor.

---

[3] "Political subdivision" includes a county or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state.  R.C. 2744.01(F).

24

Respectfully submitted,

MICHAEL C. O'MALLEY (0059592)
Prosecuting Attorney of Cuyahoga County, Ohio

By: s/ Jennifer M. Meyer
     JENNIFER M. MEYER (0077853)
     CHARLES HANNAN (0037153)
     Assistant Prosecuting Attorneys
     1200 Ontario Street, 8th Floor
     Cleveland, Ohio  44113
     Tel:  (216) 443-7800/Fax: (216) 443-7602
     Email:  jmeyer@prosecutor.cuyahogacounty.us
     channan@prosecutor.cuyahogacounty.us
     *Counsel for Defendant Cuyahoga County, Naiman, and Marino*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on September 18, 2017 and was served electronically on all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

 s/ Jennifer Meyer
Jennifer Meyer (0077853)

---

Prosecutorial functions are government functions.  See R.C. 2744.01(C)(2)(f).