IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DERRICK WHEATT,** *et al.,* | ) | CASE NOs.: 1:17-CV-0377 |
| | ) | and 1:17-CV-0611 |
| **Plaintiffs,** | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE WILLIAM H |
| **CITY OF EAST CLEVELAND,** *et al.,* | ) | BAUGHMAN, JR., |
| | ) | |
| **Defendants.** | ) | |

### CITY DEFENDANTS' MEMORANDUM IN OPPPOSITION TO PLAINTIFF'S JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

The City Defendants[1] submit the following *Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment* and incorporate herein all arguments made in *The City Defendants' Motion for Summary Judgment* and the memorandum in support attached thereto, as filed with this honorable Court on September 18, 2017.

It is urged that upon examining *Plaintiffs' Motion for Partial Summary Judgment* and the summary judgment evidence in this case, that there are no genuine issues of material fact sufficient to support the *East Cleveland Three's*[2] claims; and in light thereof, the City Defendants respectfully move this honorable Court to deny the *East Cleveland Three's Motion for Summary Judgment* and to enter Judgment in favor of the City Defendants.

---

[1] *"*City Defendants" refers to Defendants City of East Cleveland, John C. Bradford, Terrence Dunn, Vincent K. Johnstone, Patricia Lane, D. J. Miklovich, Michael C. Perry and Charles Teel.

[2] The "*East Cleveland Three*" refers to Plaintiffs Laurese Glover, Eugene Johnson and Derrick Wheatt.

**ISSUES RAISED IN PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND ELEMENTS NEEDED TO SATIFY EACH CLAIM**

The *East Cleveland Three* have brought an eleven-count Complaint alleging that the City Defendants deprived them of their constitutional rights to due process and access to the courts and caused them to suffer damages through their failure to disclose exculpatory evidence.

On September 18, 2017 the *East Cleveland Three* moved against Defendants Perry, Johnstone and Miklovich, for partial summary judgment urging, as undisputed, that the photo array shown to Tamika Harris was unduly suggestive as it included only the Plaintiffs' photos. See ECF Doc #: 78 at pp. 3-7. The *East Cleveland Three* further urged as undisputed that officers pointed to Johnson's photo, suggesting he was the shooter, and pointed to Wheatt and Glover's photos, saying they had "gunpowder on them." Id. at pp. 21-2. The *East Cleveland Three* further their claim by asserting that these Defendants failed to inform the prosecutor of their conduct. See ECF Doc #1 at ¶ 75.

Additionally, the *East Cleveland Three* assert that, despite being exculpatory in nature, statements made by Derek Bufford, Gary Petty and Eddie Dante Petty, were not provided to the prosecutor. ECF Doc #: 78 pp. 10-11.

As more fully set forth hereinafter, this Court should find that the *East Cleveland Three's* contentions lack merit as the identification of Derek Bufford, Gary Petty and Eddie Petty were either directly or implicitly provided to Assistant District Attorney Michael Horn. Furthermore, it is urged that the claim of an unduly suggestive photo array must be found to lack merit.

**UNDISPUTED AND MATERIAL FACTS**

1.     On February 10, 1995, Clifton Hudson (19-years old) was shot and killed in East Cleveland, Ohio in the 1700 block of Strathmore Avenue. See ECF Doc. #: 78 at Ex. 1 (Johnson Dep.) at 10.

2. Plaintiffs Wheatt, Glover, and Johnson each admitted to being at the scene of the Hudson Homicide, claiming that they were in Glover's vehicle stopped at a stop sign near the intersection of Manhattan and Strathmore Roads. *Id*. at Ex. 4 (State's Ex. 23).

3. Among others a 14-year-old girl named Tamika Harris witnessed the shooting. Id. at Ex. 7 (9/17/04 Hrg.Tr.) at 7–8; Ex. 8 (Harris Dep.) at 7–10.

4. Tamika Harris was standing on the opposite side of the bridge from Plaintiffs. Id. at Ex. 7 at 10; Ex. 9 (aerial map); Ex. 4 (State's Ex. 22); Ex. 5 at 650–51; Ex. 10 (Google Street View of Strathmore & Manhattan).

5. Harris was walking up Strathmore towards Euclid when she heard gunshots and saw a man with a gun approaching another man. Id. at Ex. 7 at 9–10.

6. From Harris's view, it appeared as if the shooter was coming from behind or around Glover's vehicle. Id. at Ex. 7 at 10–11, 29–30; Ex. 8 at 9, 15.

7. The shooter crossed the street, approached the victim, and fired shots. Id. at Ex. 7 at 12–13; Ex. 8 at 9, 16–17.

8. After the shooting was over, Harris saw the shooter run towards Manhattan and turn right. Id. at Ex. 8 at 9. The SUV took off. *Id.* at 16.

9. Harris could not see the shooter's face clearly. *Id.* at 13, 17–18; Ex. 7 at 15, 28, 38.

10. Harris never saw the shooter get into or out of the SUV. *Id.* at 15–16; Ex. 8 at 14–16, 45–46.

11. After the shooter left, Harris walked over to the victim and waited for the police. *Id.* at 9–

12. Harris told a police officer at the scene that she could not see the shooter's face *clearly* but was able to describe his clothing. *Id.* at 13, 17–18. (Emphasis added).

13. When Harris was interviewed by Defendant Lane approximately 2 hours after the shooting, Harris stated again that she could not see the shooter's face that *clearly*. Id, at Ex. 11 (2/10/95 Harris statement) at 2; Id. at Ex. 7 at 39. (Emphasis added).

14. She also described the shooter as "5'7" *or taller*." Id. at Ex. 11 at 2.

15. Eugene Johnson is 6'2". Id. at Ex. 39 (Booking Record).

16. Tamika Harris was not the only person to witness Clifton Hudson's murder. See East Cleveland Supplementary Report EC 9503123 produced as discovery with Bates number 9503123 and WG014653.

3

17. Shortly after the shooting, responding police officers, Detectives Sgt. Perry, D. J. Miklovich and Johnstone were approached with information relayed by Robert Hunt who advised that he was standing on Manhattan at Ardenall when he heard 5 to 6 gunshots coming from the area of Strathmore and Manhatten. See East Cleveland Police Department Supplementary Report EC 9503123 produced as discovery with Bates number WG014653.

18. Robert Hunt further advised that he observed a black Chevrolet Blazer, 2-door, older model, 4x4 turn right from Strathmore…he further relayed that the driver of the blazer was Laurese Glover of Knowles Avenue in the City of East Cleveland aka Quink, a known member of the Tribe Gang. Id. Robert Hunt further advised that the driver of the Chevy hangs with Ramone Malone and Derrick Wheatt (aka Lil Joe). Id.

19. Additional information was provided by East Cleveland resident Jerry Vaught, who provided that he was standing on the corner of Elderwood and Strathmore talking with a friend when he observed the victim running in his direction being followed by another male who was shooting at the victim. See East Cleveland Police Department Supplementary Report EC 9503123 produced as discovery with Bates number WG014468.

20. Later after being shown photographs of the *East Cleveland Three* Mr. Vaught positively identified Eugene Johnson as the person who shot and killed Clifton Hudson. See East Cleveland Police Department Supplementary Report EC 9503123 produced as discovery with Bates number WG014486.

21. The photo array presented to Jerry Vaught only included photographs of the *East Cleveland Three*. Id.

22. On February 11, 1995 Tamika Harris positively identified Eugene Johnson as the person who shot and killed Clifton Hudson. See East Cleveland Police Department Supplementary Report EC 9503123 produced as discovery with Bates number WG014487.

23. The photo array presented to Tamika Harris only included the photographs of *the East Cleveland Three*. Id.

24. On February 11, 1995 Plaintiffs Derrick Wheatt and Laurese Glover were identified as suspects and arrested.

25. Defendants Johnstone, Miklovich, and Perry interrogated Wheatt and Glover in the early morning hours of February 11, 1995. See ECF Doc. #: 78 at Ex. 15 (2/11/95 Johnstone report); Ex. 16 (2/11/95 Miklovich report); Ex. 5 at 754–64, 779–80, 792.

26. Wheatt and Glover both told the detectives that they had been witnesses to the shooting, and that Johnson was with them. Id. at Ex. 5 at 754–64.

27. Johnstone, Perry, and Miklovich arrested Johnson at his house later that morning. Id. at 764–67; Ex. 14 at 96.

28. During their separate interrogations, each Plaintiff voluntarily told the Defendants they were witnesses to the shooting and denied involvement in the crime. Id. at Ex. 5 at 754–73,

4

781– Case: 1:17-cv-00377-JG Doc #: 86 Filed: 09/18/17 6 of 31. PageID #: 3518 3 83; Ex. 15; Ex. 16; Ex. 17 (2/11/95 Johnstone report); Ex. 12 at 50.

29. Detective Vincent Johnstone testified that he conducted an atomic absorption spectroscopy test ("AAS test") on Wheatt and Johnson around 2:00 or 3:00 a.m. after they were in police custody on February 11, 1995. Johnstone swabbed their hands with a Q-tip swab and sent the swabs, along with ones from Glover, to the Cuyahoga County Coroner's Office. Both sides of both of Wheatts hands were positive for antimony and barium. Based on this evidence, the state's expert concluded that Wheatt either fired a weapon or that his hands were "very, very close" to a weapon as it was fired. Johnson and Glover's hands were negative for gunshot residue. However, test results on the palm of Johnson's left glove were consistent with gunshot residue. Gunshot residue was found on Eugene Johnson.

30. Derek Bufford was disclosed as a witness by the prosecution on September 28, 1995 in the Prosecuting Attorney's *Response to Request for Discovery Under Rule 16*. See EFC Doc No. 85 at Exhibit A produced as discovery with Bates number WG023064.

31. Eddie Petty was implicitly disclosed as witnesses to Assistant District Attorney Michael Horn. See East Cleveland Police Department Supplementary Report EC 9503123 produced as discovery with Bates number WG012664.

32. The photo array was presented as evidence in the trial Court by Assistant District Attorney Michael Horn. **See** EFC Doc No. 79 at Ex. 5 at State Exhibits 42 through 44.

33. On January 18, 1996 Plaintiff Laurese Glover was found guilty of murder and was sentenced to 15 years to life. Plaintiffs Derek Wheatt and Eugene Johnson were also found guilty and sentenced to 18 years to life. See EFC Doc. No.: 1 at ¶ 128.

## LAW AND ANALYSIS

The *East Cleveland Three* have asserted, at Count One that, "…the Defendant Officers violated [their] constitutional right to be free from identification procedures so unnecessarily suggestive and conducive to irreparable mistaken identification that the identification's use violates due process of law." ECF Doc. No. 1 at ¶ 171. (Emphasis added).

In furthering their claim the *East Cleveland Three* have alleged that the, "…Defendant Officers … withheld information concerning their misconduct, including but not limited to the … unduly suggestive photo array…from … prosecutors." ECF Doc. No. 1 at ¶ 74.

It becomes apparent that the *East Cleveland Three* recognize that, "… a suggestive identification *alone* is not a constitutional violation; rather, the constitutional

5

violation arises where a defendant's right to a fair trial was impaired by the *admission of testimony* regarding the unreliable identification." *Wray v. City of New York*, 490 F.3d 189, 193 (2nd Cir. 2007) (Emphasis added)

The question is therefore whether the *East Cleveland Three* can establish a claim against the City Defendants for the erroneous admission at trial of testimony regarding the unduly suggestive identification. See *Wray* Id. at ¶19. In *Wray* the Third District Court held that, "[i]n the absence of evidence that [the City Defendants] misled or pressured the prosecution or trial judge, we cannot conclude that their conduct caused the violation of [the *East Cleveland Three's*] constitutional rights; rather, the violation was caused by the ill-considered acts and decisions of the prosecutor and trial judge. Id.

Under *Brady*, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. "When there are multiple *Brady* claims, the Supreme Court instructs that we consider materiality "collectively." *Kyles*, 514 U.S. at 436. We must imagine that every piece of suppressed evidence had been disclosed, and then ask whether, assuming those disclosures, there is a reasonable probability that the jury would have reached a different result." *See, e.g.*, *Turner v. United States*, 137 S.Ct. 1885, 1893 (2017); *Cone v. Bell*, 556 U.S. 449, 473-74 (2009).

### A. DISCLOSURE OF DEREK BUFFORD AS A WITNESS WAS MADE PRIOR TO TRIAL.

As an initial matter, it is urged that identification of Derek Bufford (the brother of Clifton Hudson) as a possible witness was properly disclosed prior to trial. In this regard, it is observed as undisputed that Assistant District Attorney Michael Horn provided to the defense a list of

witnesses wherein Derek Bufford was identified as a possible witness. See Prosecuting Attorney's *Response to Request for Discovery Under Rule 16* dated September 28, 1995 attached as Exhibit A.

It is urged that Derek Bufford's statement, recalling an attempt on his life earlier in the week; and another attempt against his brother Clifton Hudson nearly immediate to his murder by unknown persons in a different vehicle from that as used by the *East Cleveland Three* could not be construed as materially exculpatory evidence.

First, it is observed that the *East Cleveland Three* were identified as members of the Tribe gang, a notorious drug-dealing street organization, (see East Cleveland Police Department Supplementary Report EC 9503123 produced as discovery with Bates number WG014653). This information provides that Derek Bufford's statement is not material and cannot be viewed as exculpatory as it goes without argument that a drug dealing street gang would certainly possess more than just one vehicle. Furthermore it is certain that having missed in their first attempt in the assassination of Clifton Hudson, it stands academic that the gang members would use a different vehicle and another team of assassins in order to avoid identification.

Accordingly, this Court is urged that the *East Cleveland Three* are incapable of supporting their *Motion for Partial Summary Judgment* on this component of their claim; and that this Court in weighing the evidence should find that Derek Bufford's statement was both disclosed to all parties and was of insufficient materiality to support the contention that a different outcome would have been reached had the Jury been informed of his statement.

    B.  THE PETTY BROTHERS STATEMENTS WERE OF INSUFFICIENT MATERIAL VALUE TO SUPPORT A FINDING OF A *BRADY* VIOLATION.

The *East Cleveland Three*, in a further attempt to support their claims, have asserted that the City Defendants failed to disclose as possible witnesses Eddie Dante Petty and Gary Petty (respectively 10 and 8 years of age at the time of the shooting).

The *East Cleveland Three* attempt to place great weight on the statements of these two children premised on their claim that unlike Tamika Harris they had an unobstructed view of the crime scene. However, an examination of their statements finds strong inconsistencies and indeed hearsay which requires the conclusion that the introduction of their statements would not have materially changed the outcome of the trial had the Jury been informed of these statements.

As an initial matter, the evidence of record clearly finds that the identity of Eddie Petty was implicitly provided to Assistant District Attorney Michael Horn. First, it is observed that in addressing the *East Cleveland Three's* claim that the statements of the Petty brothers was wrongfully withheld or suppressed this Court is urged that Assistant District Attorney Michael Horn was clearly aware of at the very least the existence of Eddie Dante Petty as a witness. This inference is made upon the observation that Lee Malone (aka Leroy Malone) was identified in the Prosecuting Attorney's *Response to Request for Discovery Under Rule 16* as a possible witness. See EFC Doc No. 84 at Exhibit A. Disclosure of Lee Malone as a witness was provided through East Cleveland Police Report EC-95-03123 dated February 13, 1995 (see EFC Doc. No. 84 at Exhibit B); significantly, on that same report Eddie Petty was identified as a possible witness.

Furthermore and moreover, examination finds that the statements of Gary Petty and Eddie Dante were inconsistent and not material; and could not be considered exculpatory evidence as they were not reliable. First, it is observed that the statement of Eddie Petty was relayed to detectives by Eddie Petty's mother, Monica Salters. It is well established that hearsay

8

evidence is generally inadmissible unless it falls under one of the stated exceptions to the hearsay rule. *See* Fed.R.Evid. 803-04; see also *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005), *abrogated in part on other grounds by Davis v. Washington*, 547 U.S. 813 (2006).

According to the police reports dated February 12, 1995 and February 15, 1995, these two witnesses saw the shooting from the south of Strathmore — the opposite angle as Harris. According to the two brothers' accounts, the shooter, who they described as a 5'0 to 5'5" tall, dark-skinned black man, walked out of the nearby post office parking lot with his hands in his pockets, pulled out a gun, and shot Clifton Hudson.

The statement attributed to Eddie Petty is inconsistent with the statement made by his brother Gary Petty. According to Eddie Petty, he was a witness to the shooting, ran home, and saw his brother Gary shoveling snow. *See* East Cleveland Supplementary Report EC 9503123 produced as discovery with Bates number WG012657. But according to Gary Petty, Gary saw the shooting, ran home, and told his mother. The officer who prepared the report noted that Gary had changed his story and terminated the interview. See East Cleveland Supplementary Report EC 9503123 produced as discovery with Bates number WG022796.

In this regard, it is observed that the Sixth Circuit Court of Appeals has held that the '…police only have a duty to disclose exculpatory evidence to the prosecutor (not the defense), and then only 'when its exculpatory value is 'apparent' to the officer. *D'Ambrosio v. Marino*, 747 F.3d 278, 389-390 (6th Cir. 2014) citations omitted.

Furthermore, it is urged that nothing about Ms. Harris' testimony was contradicted by the Petty brothers' statements. Ms. Harris testified that the vehicle she saw near the shooting was "on the street, by the post office driveway". See EFC Doc No. 78 at Exh. 5 p. 822. She admitted that she did not see anyone exit the vehicle at the time of the shooting. Id. at 878-79. Ms. Harris

testified that the shooter came from "[t]he passenger's side, but the rear. He didn't walk around the front. He walked around from the rear." Id. at 905.  The Petty brothers' statements corroborate the movement of the shooter from the post office driveway, behind Derrick Wheatt's vehicle, to the middle of the street.  Both brothers place the shooter exiting the post office driveway.  Def.s Hearing Ex. B ("exiting the Post Office parking lot"); Def. 's Hearing Ex. C ("exit the driveway of the Post Office parking lot"). The State's theory was that Eugene Johnson exited the passenger side of the vehicle, near the Post Office driveway, came around the back side of the vehicle, and fired at Mr. Hudson in the street. Therefore, nothing about the Petty brothers' account contradicts that theory.

Indeed, the Eighth District Court of Appeals in disposition of the materiality of the Petty brothers' statements concluded:

> "… a jury would still need to speculate about much: where the Petty brothers were during the shooting. How Gary could be shoveling snow but also view the shooting, and whether the shooter exited the general area of the post office or actually exited the post office parking lot. Without resolving ambiguities and inconsistencies in the police report, **the Petty brothers' statements are immaterial and their implication speculativ**e. … Given the inconsistencies in the Petty brothers' statements and the speculation needed to determine the material value of [the Petty brothers' statements] there is not a reasonable probability of a different outcome at trial.

See (Emphasis added).

Accordingly, it is respectfully urged that while there was an implicit disclosure of the Eddie Petty as a witness, the fact that it was disclosed as hearsay and would not have been admissible devaluates the material value of that statement and it could not be construed as exculpatory evidence.  Furthermore, in that the statement of Gary Petty was heavily inconsistent with that of his brothers, failed to impeach Tamika Harris' statement as to the approach of the shooter this Court is urged to find that the Petty brothers' statements were immaterial and failed to meet the requisite of exculpatory evidence.

10

### C. TAMIKA HARRIS' RECANTATION AND THE PHOTO ARRAY.

It is first observed that in *Response to Defendant's Request for Discovery* counsel for Derrick Wheatt, Laurese Glover and Eugene Johnson were provided copies of the photo array upon which Tamika Harris identified Eugene Johnson as the shooter. See EFC Doc No. 79 at Ex 5, pp. ID No 3064 at lns. 19-21.

An examination of the trial court's trial transcript further finds that counsel for the *East Cleveland Three* failed to move to suppress the identification testimony of Tamika Harris. See EFC Doc No. 79 at Ex. 5. Moreover, an examination of the trial transcript finds that there is absent any evidence that the City Defendants <u>misled</u> or pressured the prosecution or trial judge into admitting the photo array. Id. Finally, while the *East Cleveland Three* appear to place great weight on the fact that twenty years after the murder of Clifton Hudson, the City Defendants were unable to recall specifics about Tamika Harris' identification of Eugene Johnson, this Court is urged that an examination of the criminal trial transcript reveals that there was no undue influence placed on Tamika Harris in the identification process.

As an initial matter it is observed that in the criminal proceedings counsel for Plaintiffs failed to raise any issue with Tamika Harris' pre-trial identification of Eugene Johnson instead, this issue was first raised upon appeal where the Eighth District Court of Appeals held,

> "… We do not find the identifications of co-defendant Johnson tainted. … Further, appellant can show no prejudice in these proceedings as sufficient evidence exists in the record independent of the identification evidence of the co-defendant Johnson to support the conviction of appellant as a principle in the murder of Clifton Hudson."

*See State v. Wheatt,* 8th Dist. Cuyahoga No. 70197, 1997 Ohio App. LEXIS 96, 1997 WL 15273 (Jan. 16, 1997) (direct appeal).

11

Indeed, it is urged that the *East Cleveland Three's* Claim primarily hinges on Tamika Harris' recantation of her identification of Eugene Johnson. However, this Court is respectfully urged that it is well established that such recantations are to be viewed with suspicion. Here, that suspicion is attenuated as an examination of the deposition of Tamika Harris reveals the strong probability that Tamika Harris, a remarkably empathic person, was strongly influenced not by her own recollections but through the manipulations of Rosemary Johnson (Eugene Johnson's mother) who had encouraged Tamika Harris to visit the website http://www.innocentinmates.org which is undoubtedly biasedly slanted in favor of the *East Cleveland Three*. See EFC Doc. No. 91 at Exhibit 1.

However, a review of the trial transcript first finds that Tamika Harris when questioned on the identification procedures never mentioned any of the now alleged improprieties. When questioned in this matter it was found:

> Q. When you identified that photograph of Eugene Johnson, which was shown to you by Detective Perry, did you identify State's Exhibit Forty-two, as being the shooter because somebody told you to pick out that photograph?
>
> A.: No.

See EFC Doc. No. 79 at Exh. 5

Furthermore, although Defendant Perry does not now remember key facts regarding the identification procedure, at trial Defendant Perry testified as follows:

> Q. Did you tell Tamika Harris that, or to identify this sweat shirt as being the sweat shirt that Eugene Johnson was wearing?
>
> A. No .
>
> Q. • Did you tell her to identify the jacket, belonging to Eugene Johnson, as being the jacket that he was wearing at the time he committed this crime?
>
> A. No .

Q	All right . When you showed her those three photographs of these defendants, did you tell her which photograph to pick?

A.	No .

Q.	Did you tell her what vehicle to pick once you took her down in the garage?

A.	No.

See EFC Doc. No. 79 at Exh. 5, pp. 1023 ln 6-22.

It thus stands certain that the recantation by Tamika Harris when properly viewed against her trial testimony and Defendant Perry's trial testimony which explicitly denied any improprieties in the identification process reveals that the *East Cleveland Three's* claim of unduly suggestive pre-trial procedures is without merit.

## CONCLUSION

This Court is respectfully urged to find that that there are no genuine issues of material fact sufficient to support the *East Cleveland Three's* claims; and in light thereof, the City Defendants respectfully move this honorable Court to deny the *East Cleveland Three's Motion for Summary Judgment* and to enter Judgment in favor of the City Defendants.

    Respectfully submitted,

/s/ *Willa M. Hemmons*
Willa M. Hemmons (0041790)
Director of Law
City of East Cleveland
14340 Euclid Avenue
East Cleveland, Ohio 44112
whemmons@eastcleveland.org

Counsel for the City of East Cleveland, John C. Bradford, Terrence Dunn, Vincent K. Johnstone, Patricia Lane, D. J. Miklovich, Michael C. Perry and Charles Teel

## CERTIFICATE OF TRACK ASSIGNMENT
## AND COMPLIANCE WITH PAGE LIMITATIONS

The undersigned certifies that the case is currently assigned to the standard track and that this foregoing *City Defendants' Memorandum in Opposition to Plaintiff's Joint Motion for Partial Summary Judgment* complies with the 15 page limitation for standard track cases as set forth in Loc.R. 7.1(f).

*/s/ Willa M. Hemmons*
Attorney for City Defendants

## **CERTIFICATE OF SERVICE**

A true and accurate copy of *City Defendants' Memorandum in Opposition to Plaintiff's Joint Motion for Partial Summary Judgment* was electronically filed with the Court on this 2nd day of October, 2017; and that by operation of this Court's electronic notification system a copy thereof is made available to all registered parties.

*/s/ Willa M. Hemmons*
Attorney for City Defendants