## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK WHEATT, et al., | ) | CASE NO. 1:17-CV-377 |
| | ) | consolidated with |
| Plaintiffs, | ) | CASE NO. 1:17-CV-611 |
| | ) | |
| Vs. | ) | JUDGE JAMES GWIN |
| | ) | |
| CITY OF EAST CLEVELAND, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT DEBORAH NAIMAN'S OPPOSITION TO
### PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant former Assistant Prosecuting Attorney Deborah Naiman respectfully submits her opposition to Plaintiffs' joint motion for partial summary judgment against her on an access to courts claim. The brief in opposition is attached.

Respectfully submitted,

MICHAEL C. O'MALLEY (0059592)
Prosecuting Attorney of Cuyahoga County, Ohio

By: s/ Jennifer M. Meyer
JENNIFER M. MEYER (0077853)
CHARLES E. HANNAN (0037153)
Assistant Prosecuting Attorneys
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Tel: (216) 443-7800/Fax: (216) 443-7602
jmeyer@prosecutor.cuyahogacounty.us
channan@prosecutor.cuyahogacounty.us
*Counsel for Defendants Carmen Marino,*
*Deborah Naiman, and Cuyahoga County*

i

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**......................................................……………...........iii

I.      **INTRODUCTION**………………………………..……………..……………1

II.     **OBJECTIONS TO PLAINTIFFS' EXHIBITS 38 AND 59**………………………………2

III.    **LEGAL ARGUMENT**……………………………………………............................2

    A.  **Naiman is entitled to absolute prosecutorial immunity**……...…………………………....2

    B.  **Naiman is at least entitled to qualified immunity**……………………………………7

         1.  **Defendant Naiman's conduct did not deprive the plaintiffs of any right of access to the courts**………………………………………………………………..…………..8

         2.  **Naiman's conduct in 1998 did not violate rights that were clearly established by law**………………………………………………………………………18

IV.    **CONCLUSION** ……………………………….........................................20

    Certificate of Service………………………………………………………………….21

ii

## <u>TABLE OF AUTHORITIES</u>

<u>CASES:</u>                                                                                   <u>PAGE</u>

*Anderson v. Creighton*, 483 U.S. 635 (1987)……………………………………...……………………18

*Brady v. Maryland*, 373 U.S. 83 (1963)…………..………………………………………………..3, 11, 19

*Christopher v. Harbury*, 536 U.S. 403 (2002)……………………………………...………8, 9, 10, 11, 18

*Collins v. Harker Heights, Tex.*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)…...................16

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013)……………………………………..……..11, 18

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)…………………………………………..18

*Imbler v. Pachtman*, 424 U.S. 409 (1976)………………………………………………….……….3

*Park v. Coakley*, Case No. 4:14-CV-1537, 2015 U.S.Dist. LEXIS 11327 (N.D. Ohio Jan. 30, 2015)….16

*Pearson v. Callahan*, 555 U.S. 223 (2009)……………………………………………...………8, 14

*Perry v. Onunwor*, 8th Dist. No. 78398, 2000 Ohio App. LEXIS 5893 (Dec. 7, 2000)…………..……..14

*Saucier v. Katz*, 533 U.S. 194 (2001)……………………………………………………………..8

*State ex rel. Rasul-Bey v. Onunwor*, 94 Ohio St.3d 119, 760 N.E.2d 421 (2002)………………..………14

*State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994)………..…..…3, 5, 12, 14

*State of Ohio vs. Derrick Wheat* [sic], Case No. 324431……………………………..………………..4

*State of Ohio v. Eugene Johnson, et al.*, Cuyahoga County Criminal Case No. 324431…………………3

*Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997)…………………………...……………17, 19

*White v. Pauly*, __ U.S. __, 137 S.Ct. 548, 551 (2017)……………………………...……………………7

<u>LAWS</u>:                                                                                   <u>PAGE</u>

R.C. 149.43(C)………………………………………………………………...…………....12

iii

**RULES:**                                                                 **PAGE**

Fed.R.Civ.P. 56(c)(2)…………………………………………………………………………..2

Fed.R.Civ.P.
56(c)(1)(A)…………………………...………………………………………………………2

Fed. R. Evid. 801(C)……………………………………………………………….……..2

Fed. R. Evid. 802………………………………………………..………………………..2

Ohio Crim.R.16……………………….…………………………………………………3, 13

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK WHEATT, et al., | ) | CASE NO. 1:17-CV-377 |
| | ) | consolidated with |
| Plaintiffs, | ) | CASE NO. 1:17-CV-611 |
| | ) | |
| Vs. | ) | JUDGE JAMES GWIN |
| | ) | |
| CITY OF EAST CLEVELAND, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

DEFENDANT DEBORAH NAIMAN'S BRIEF IN OPPOSITION TO
PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT

---

## I.     <u>INTRODUCTION</u>

Plaintiffs seek a summary judgment that would hold defendant Deborah Naiman liable on their claim that they were denied access to the courts as alleged in Count III of the complaints.  Plaintiffs' motion should be denied for the following reasons:

a)  Absolute prosecutorial immunity bars plaintiffs' claims against Naiman; and/or

b)  Qualified immunity bars plaintiffs' claims against Naiman because (1) defendant Naiman's conduct did not deprive the plaintiffs of any right of access to the courts; and/or (2) defendant Naiman's conduct did not violate clearly established law.

Regardless of whether the plaintiffs' claim is considered on its merits or through the lens of absolute or qualified immunity, their access to court claim against defendant Naiman fails as a matter of law. Accordingly, the plaintiffs' motion for summary judgment should be denied.

Before addressing these legal arguments, defendants first note their evidentiary objections.

1

## II.    OBJECTIONS TO PLAINTIFFS' EXHIBITS 38 AND 59

Pursuant to Fed.R.Civ.P. 56(c)(2), defendant Naiman objects to the plaintiffs' submission of and reliance on Exhibit 38 (Transcript of 1/29/15 Motion for New Trial Hearing) and Exhibit 59 (3/26/15 Journal Entry and Opinion on Motion for New Trial).  Those exhibits cannot properly be considered under Fed.R.Civ.P. 56(c)(1)(A).  To the extent the plaintiffs rely here on statements made in those separate criminal case proceedings, such statements would be hearsay under Fed.R.Evid. 801(c) that is inadmissible under Fed.R.Evid. 802.  Indeed, the named defendants in the instant civil case were not even parties to those criminal state court proceeding and thus had no opportunity to participate or be heard.  Additionally, the Court has already declined to take judicial notice of the state court findings contained in Exhibit 59.  See ECF 40.

These exhibits and any testimonial statements contained therein should accordingly be excluded and not considered.

## III.    LEGAL ARGUMENT

Defendant Naiman submits that plaintiffs' motion for partial summary judgment should be denied initially because (A) Naiman is entitled to absolute prosecutorial immunity because the facts confirm that she functioned as advocate for the State engaged in activities intimately associated with the post-conviction judicial phase of the criminal process; and/or (B) Naiman is at least entitled to qualified immunity because: (1) her conduct did not deprive the plaintiffs of any right of access to the courts; and/or (2) her conduct did not violate clearly established law.

## A.    Naiman is entitled to absolute prosecutorial immunity.

Defendant Naiman will demonstrate in Section III(B)(1) of this brief that her conduct did not in fact, deprive the plaintiffs of any right of access to the courts.   However, assuming solely for purposes of this discussion that the plaintiffs had a viable claim for denial-of-access, their claim against

2

defendant Naiman would nevertheless necessarily fail because, as set forth in the motion for summary judgment on behalf of defendants Naiman and Marino, ECF 87, which is hereby adopted and incorporated by reference, Naiman was clearly functioning as advocate for the State of Ohio.  Since Naiman's conduct in attempting to prevent the then-defendants' "end-around" Ohio Criminal Rule 16 and *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), she was engaged in activities that were intimately associated with the post-conviction judicial phase of the criminal process and thus is entitled to absolute prosecutorial immunity, even as to claims that she suppressed exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  *See Imbler v. Pachtman*, 424 U.S. 409 (1976); *id*. at 431, n. 34.

While the plaintiffs contend that Naiman violated their right of access, the evidence in this case in fact shows that Naiman functioned strictly as an advocate for the State engaged in activities intimately associated with the post-conviction judicial phase of the criminal process.

In particular, the evidence reflects that Ms. Naiman received a telephone call from East Cleveland police Sgt. Terrence Dunn on June 24, 1998 concerning a public records request in reference to the underlying criminal prosecution docketed in the state Court of Common Pleas as *State of Ohio v. Eugene Johnson, et al.*, Cuyahoga County Criminal Case No. 324431.  ECF 80-1 Naiman Depo. at p. 1936-39.  That East Cleveland police would call Naiman is not entirely surprising: she was known among law enforcement to be available 24 hours a day, 7 days a week, 365 days a year and "would just do the work.  And I would answer my phone and I would answer my pager and the guys knew that I would."  ECF 80-1, pp. 34-35.  Sgt. Dunn clearly called Naiman concerning the underlying criminal prosecution because Naiman's June 24, 1998 letter bore that same case caption as well as the East Cleveland police file number.  Id. at 39, 47-48.

3

Upon learning that the East Cleveland mayor was about to release the police department's criminal case file in response to the public records request made on behalf of the then-defendants, Naiman was concerned that it was an improper discovery technique.  Id. at p. 40.  The public records request in fact was made by Wheatt's newly-retained criminal defense counsel.  ECF 79, Plaintiffs' Exhibit 49.  Indeed, defense counsel's June 9, 1998 public records request itself expressly referenced *State of Ohio vs. Derrick Wheat* [sic], Case No. 324431.  Id.  Naiman believed Sgt. Dunn was likewise concerned "that this was way out of the ordinary and he wanted to know, you know, what – what's up."  ECF 80-1, p. 52.  Naiman recalled:

> From the tone of the call and from the fact that I reacted quickly, this seemed to be something that was going to happen, like, now.
>
> What we were trying to do was protect the integrity of the trial – of the file.  Knowing the state of the law at that point, rather – removing the file allowed the dust to settle and people to figure out what it is they were going to do.  From what we heard, the mayor was going to turn this file over.  That's not the way discovery is handled and it certainly wouldn't have been appropriate for post-conviction relief.  At that time that was the state of the law.

Id. p. 42.  Challenged on her role in this matter, Naiman did not back down:

> Q.    It was not your job to tell the city of East Cleveland how to respond to public records requests, is that correct?
>
> ***
>
> A.    My job was to protect the integrity of that file that was being prosecuted by my office and to see that the law at the time was being followed.  And public records requests being used for discovery, not allowed back then.

Id. at p. 43.

Naiman immediately reviewed the matter with Assistant Prosecutor Christopher Frey in the office's Appeals Unit, who agreed that the public records request was improper under *State ex rel.*

4

*Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994) and its progeny.[1]  Id. at p. 41.  Naiman

and Frey "were concerned about post-conviction relief, which is, like, just a continuance of the battle."

Id. at p. 47.  And Naiman understood the public records request sent to East Cleveland "was part of

gearing up for a post-conviction relief filing ***."  Id. at 55.  She recalled:

> [T]he gist [of the Frey conversation] was we were discussing whether or not this case was
> still open, and because of the post-conviction relief, that – in our minds that case was still
> open.  We as the county prosecutor have the jurisdiction over it, the city was not
> prosecuting the case, the county prosecuted that case.  The county was responsible for the
> appeals and all other responses by those defendants as time marched on concerning this
> case.

Id. at 63.  See also Id. at p. 66 ("[I]n our mind this was a case the county was prosecuting, the county

has jurisdiction over, and so it was incumbent upon us to protect the integrity of the file.")

Indeed, according to the plaintiffs' own allegations, "[d]efendants Marino, Naiman, Dunn, and

Defendant Officers knew that Plaintiffs sought the police and investigatory records of the Hudson

murder from the City of East Cleveland because they maintained their innocence and were trying to

obtain information that *would assist them in filing motions for new trial, post-conviction or habeas

relief, or other redress in the courts*."  See Wheatt/Glover complaint, ECF 1 at para. 204 (emphasis

added).  The plaintiffs themselves are thus on record as confirming that the judicial phase of the

criminal process was not over and indeed a new phase of that process was beginning when defendant

Naiman took the limited action taken here.  Filing a petition for post-conviction relief is clearly the

initiation of, or more precisely, the carrying on of an existing judicial proceedings and, as argued in

ECF 87 at p. 11, the Sixth Circuit has clearly held that absolute prosecutorial immunity extends beyond

the predicate trial conviction phase of the judicial proceedings into the post-conviction phase of

---

[1] Naiman believes she probably tried to speak with trial prosecutor Michael Horn about the Dunn call
but apparently could not reach him at the time.  Id. at 49-50.

5

judicial proceedings.

After speaking with Frey, Naiman met with First Assistant Carmen Marino, at which time it was decided to send a letter to the East Cleveland police department for delivery of the police department files on the Hudson homicide to the Prosecutor's Office "for safe keeping until people could figure out what is going on in this particular case." Id. at 60; 69-74.  Naiman drafted the letter after meeting with Marino.  Id. at p. 72.  Naiman believed that delivery of the East Cleveland police files to the Prosecutor's Office would "protect the integrity of that file until *** cooler heads could prevail."  Id. at 60-61.  She testified:

> We wanted to keep the file intact, as it was, before any of it would, you know, be turned over by the mayor.
>
> We just wanted – it was improper to release it for post-conviction relief reasons via a public records request, and so we just wanted to protect it from that until it could be finally decided what was or was not appropriate.

Id. at 101.  See also Id. at 81 ("I wanted to protect the integrity of the file by getting it out of dodge until whoever need be decides what's going to go on with this, you know.")  She added: "You know, there's nothing – when that file was turned over to us, there's nothing stopping them from seeking that file the next week."  Id. at p. 61.

After Naiman drafted the letter, she brought it to Marino who reviewed and signed it with Naiman.  Id. at 73-74.  The June 24, 1998 letter was delivered to the East Cleveland police department that same day.  Id. at pp. 75-76.  A copy of the East Cleveland police file was eventually provided to the Prosecutor's Office investigators two (2) days later, on June 26, 1998.  Id. at 77; ECF 79, Plaintiffs' Exhibit 54.  Naiman recalled being aware that it had been delivered to the Prosecutor's Office but she did not review the file, believing that it was forwarded to the office's file room.  Id. at pp. 78-80.  Naiman had no further involvement in the underlying criminal case proceedings.

6

The undisputed evidence in this case makes clear that at all relevant times, defendant Naiman functioned as advocate for the State and was engaged in activities intimately associated with the post-conviction judicial phase of the criminal process.  When Sgt. Dunn contacted Naiman on June 24, 1998 following criminal defense counsel's public records request that itself expressly referenced the underlying criminal case, the likelihood of post-conviction proceedings was clear.  Naiman's response was thus written from the perspective of an advocate whose office would in all likelihood have to answer and defend against those post-conviction proceedings.  A petition for post-conviction relief is plainly part of the post-conviction phase of the judicial proceedings.  The effort to obtain the East Cleveland police reports *to be used as evidence in judicial proceedings* was clearly intimately associated with that judicial phase.  Naiman's response to the East Cleveland police department concerning the propriety of the public records request was no less associated with that judicial phase.

Absolute prosecutorial immunity should accordingly shield her from all of the plaintiffs' claims in this case, including their claim for denial of access to the courts.  Plaintiffs' motion for summary judgment should accordingly be denied.

**B.**     **Naiman is at least entitled to qualified immunity.**

The plaintiffs' motion for summary judgment contends that the evidence here substantiates their claim that defendant Naiman's conduct violated their right of access to the courts.  Even if there were grounds to deny Naiman absolute prosecutorial immunity here, qualified immunity, as argued previously in ECF 87, which is hereby adopted and incorporated by reference, shields government officials who perform discretionary functions from civil liability so long as their actions did not violate clearly established constitutional or statutory rights that would have been known to a reasonable person.  *See White v. Pauly*, __ U.S. __, 137 S.Ct. 548, 551, 196 L.Ed.2d 463, 468 (2017).

To defeat qualified immunity, plaintiffs must prove that (1) Naiman violated their right of access to the courts and (2) that right was clearly established in June 1998.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  This Court can consider these prongs it whatever sequence it deems appropriate.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  For purposes of responding to the plaintiffs' motion for summary judgment, defendant Naiman respectfully submits that (1) her conduct did not deprive the plaintiffs of any right of access to the courts; and/or (2) her conduct did not violate rights that were clearly established in 1998.

1.      **Defendant Naiman's conduct did not deprive the plaintiffs of any right of access to the courts.**

The plaintiffs advance a "backward-looking" denial of court access claim.  See ECF 86, p. 22.  Contrary to plaintiffs' contentions, however, the undisputed facts in this case demonstrate that defendant Naiman did not cause any denial of the plaintiffs' right of access to the courts.

In *Christopher v. Harbury*, 536 U.S. 403 (2002), the Court first addressed so-called "forward-looking" and "backward-looking" access to court claims.  In that case, the plaintiff sued the CIA, the State Department, the National Security Council, and various officials for damages, declaratory, and injunctive relief after her husband was detained, tortured, and killed by Guatemalan military officers who were being paid by the CIA.  For her backward-looking denial-of-access claim, the plaintiff alleged that government officials intentionally deceived her by concealing the true circumstances of her husband's detention and thus caused her to lose the opportunity to file a lawsuit that might have saved his life.  The District Court dismissed all of the plaintiff's claims save for her federal common law tort claims and her international law claim.  *Id*. at 410-411.  The Court of Appeals reversed the District Court's dismissal of the plaintiff's access-to-court claim.  *Id*. at 411-412.  Accepting the

government's appeal, the Supreme Court reversed, holding that the plaintiff's complaint failed to state any constitutional claim for denial of access.

The Court there explained that backward-looking denial-of-access claims concern "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id*. 413-414.  These claims cover official acts that allegedly caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity seek some particular relief or remedy that is no longer obtainable.  *Id*. at 414. "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future."  *Id*. Because the right of access claim is ancillary to the underlying claim, the plaintiffs' complaint must identify the underlying non-frivolous cause of action and the remedy that may be awarded as recompense but not otherwise available or obtainable in some suit that may yet be brought.  *Id*. at 415-416.

Viewed under those standards, the *Christopher* Court concluded that the plaintiff's complaint "did not come even close to stating a constitutional claim for denial of access upon which relief could be granted."  *Id*. at 418.  In particular, the plaintiff's complaint failed to identify any underlying *cause of action* that the alleged deception had compromised or caused to be lost.  *Id*.  Moreover, the plaintiff's complaint did not identify a *remedy* that was not otherwise obtainable through her other surviving claims:

> If an intentional-infliction claim can be maintained at all, Harbury, can seek damages and even conceivably some sort of injunctive relief for the demonstrated consequences of the infliction alleged.  It is true that she cannot obtain in any present tort action the order she would have sought before her husband's death, the order that might have saved her husband's life.  But neither can she obtain any such order on her access claim, which therefore cannot recompense Harbury for the unique loss she claims as a consequence of

9

her inability to bring an intentional-infliction action earlier.  She has not explained, and it is not otherwise apparent, that she can get any relief on the access claim that she cannot obtain on her other tort claims, i.e., those that remain pending in the District Court.  And it is just because the access claim cannot address any injury she has suffered in a way the presently surviving intentional-infliction claims cannot that Harbury is not entitled to maintain the access claim as a substitute, backward-looking action.

*Id*. at 421-422 (footnotes omitted).

Viewing the plaintiffs' case here just in light of *Christopher v. Harbury*, *supra*, their claim for denial-of-access is similarly deficient.  The plaintiffs do not specify any non-frivolous *cause of action* that was lost.  They suggest that the lost opportunity to sue or seek some particular order or relief includes "the loss of Plaintiffs' ability to obtain post-conviction relief years earlier due to Defendants Naiman's obstructive acts in response to the 1998 public records request."  See ECF 86 at p. 22.  But even if criminal post-conviction relief were to be equated with the civil cause of action contemplated by *Christopher*, the fact that the plaintiffs here – like the plaintiff in *Christopher* – did not seek judicial relief earlier may be germane to measuring their claimed damages but it does not displace the required identification of a non-frivolous claim for relief that the plaintiffs arguably had but can no longer pursue, thus necessitating the access-to-court claim as the next best substitute.  Beyond that, the plaintiffs do not specify any *remedy* that is not otherwise available or obtainable.  Indeed, the plaintiffs' complaints purport to set forth a variety of federal and state law claims.  Again like *Christopher*, the plaintiffs do not explain, and it is not otherwise apparent, that they can obtain any relief on the access claim that they cannot obtain on their other claims for relief.

Now considering the plaintiffs' case not just in light of *Christopher v. Harbury* but in light of relevant Sixth Circuit precedent, the evidence developed during pre-trial discovery in this case demonstrates that defendant Naiman did not cause any denial of access to the courts.

10

In *Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013), the plaintiffs alleged that governmental officials deprived the plaintiffs of their right of access to the courts by obstructing the criminal investigation of their decedent's death.  The district court granted the defendants' motions for summary judgment.  On appeal, the Sixth Circuit Court of Appeals observed:

> In backward-looking claims, such as those at issue in the instant case, the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim.

*Id*. at 173.  The *Flagg* court thereafter identified the elements of a backward-looking denial of access claim as being (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable.  *Id*. at 174.  The *Flagg* court ruled that the plaintiffs lacked evidence to support the third element of substantial prejudice by showing any reasonable probability that the decedent's killer would have been found but for the alleged obstruction.  *Id*. at 178-179.

*Flagg*, like *Christopher*, acknowledges backward-looking denial-of-access claims as being a next best substitute for an otherwise lost civil cause of action.  Neither case, either explicitly or implicitly, suggests its application to delayed criminal post-conviction proceedings.  But assuming for purposes of this discussion that a non-frivolous underlying claim could include the plaintiffs' application for post-conviction relief based on the State's failure to disclose exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the plaintiff's denial of access claim against defendant Naiman nevertheless fails for any number of reasons.

First, Naiman did not engage in any improperly obstructive conduct.  There is no claim or evidence suggesting that Naiman destroyed any evidence.  Even the plaintiffs acknowledge that the

11

East Cleveland police file they attempted to obtain in 1998 by public records request was in fact retained by the City of East Cleveland and produced in full in 2013.  ECF 1, paras. 155-156.  There can accordingly be no claim of evidence destruction by Naiman.

Nor did Naiman conceal evidence.  As she testified in deposition, she was contacted by East Cleveland police and was told that the East Cleveland mayor was about to release the criminal case file in response to a public records request in fact made by criminal defense counsel.  After confirming with Appeals Unit prosecutor Frey that defense counsel's attempt to obtain the criminal case file was improper under *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994) and its progeny, Naiman sent the June 24, 1998 letter to East Cleveland police and directed that the file and any copies in other city offices be provided to the Prosecutor's Office in order to protect the integrity of the file and maintain the status quo until the issues could be fully considered by the appropriate parties.  Far from engaging in surreptitious concealment, her June 24, 1998 correspondence expressly documented her actions as a matter of record that even the plaintiffs acknowledge was promptly sent to criminal defense counsel by East Cleveland Commander Teel.  ECF 80-1 pp. 86-87.

Surely a prosecutor's attempt to enforce compliance with then existing Ohio laws of criminal procedure does not constitute "obstructive actions by a state actor" that will convert a state criminal discovery dispute into a federal cause of action.  At any rate, there is no evidence that defense counsel, or anyone else, pursued the matter with the Prosecutor's Office.  Indeed, if criminal defense counsel or anyone else believed that the refusal to release the East Cleveland police file as a public record was contrary to law, any such aggrieved party could have sought a writ of mandamus pursuant to R.C. 149.43(C), as even *Steckman* allowed.  Even the plaintiffs do not contend that the City of East

12

Cleveland was required to release its police file under the Ohio public records law in effect at that time.

It is immaterial whether other Ohio public offices released records that they were not required to release, just as it is immaterial whether other Ohio prosecutor's offices followed different practices and procedures when engaged in criminal pre-trial discovery pursuant Ohio Criminal Rule 16.  The issue facing Naiman in 1998 was whether the East Cleveland police file was a public record when it was clear that all proceedings in the case, including post-conviction proceedings, had not yet concluded.  She ascertained correctly that the police file was not public record at that time.  Naiman's determination and ensuing response were not unreasonable under the circumstances presented.

Moreover, Naiman did not prevent East Cleveland from releasing its file even though it was not required to release it as a public record under Ohio law.  To be clear, the criticism that has been leveled at defendant Naiman (and defendant Marino) in this case is unwarranted, unfounded, and unfair.  There was nothing improper or unethical in Naiman's response when the East Cleveland police department reported to her that a public records request sent by criminal defense counsel directly to the East Cleveland mayor sought the criminal case file and that the mayor was about to release it.  Naiman ascertained that the public records request was procedurally improper under *Steckman* and expressed her opinion to the law enforcement agency that was responsible for initiating the criminal prosecution.  No Ohio or federal law forbids a prosecutor from communicating with an investigating law enforcement agency on the subject of that criminal prosecution.

That the City of East Cleveland had a law director that neither the mayor nor the police department apparently consulted on this matter is immaterial: the Prosecutor's Office prosecuted the case brought to it by the East Cleveland police department, and the East Cleveland police department

13

was alerting the Prosecutor's Office to the fact that the then defendants/now plaintiffs made a public records request that was in seeming circumvention if not defiance of *Steckman*. Defendant Naiman acted swiftly but simply to preserve the status quo. While it may be easy after the fact to question the statement that "any release could constitute a wilful [sic] violation of the law," that is immaterial here, for "[t]he protection of qualified immunity applies regardless of whether the governmental official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, *supra*, 555 U.S. at 231 (citations omitted). Notwithstanding the plaintiffs' criticism of Naiman's choice of words, her conduct cannot fairly be criticized. "This was a one-page letter to get this immediate job done." ECF 80-1 at p. 66.

In any case, the City of East Cleveland and its mayor were free to disregard Naiman's opinion and exercise their own judgment as to whether the police should be released.[2] Naiman testified that notwithstanding her letter, the mayor "could have still handed [the police file] over." Id. at 112. Indeed, inasmuch as Naiman's letter was sent on June 24, 1998 and the East Cleveland police file was not delivered to the Prosecutor's Office until June 26, 1998, the mayor "had a two-day window where he could have handed it over." Id.at p. 114. Even after that, East Cleveland kept its own copy of the file, as is evident by the fact of its subsequent release in 2013. In short, Naiman did not conceal or otherwise prevent proper disclosure of the East Cleveland police file.

Moreover, the undisputed facts are that Naiman never even looked in the East Cleveland police file and had no idea what it contained. Id. at pp. 64-65; 80. She did not know – and truly would have

---

[2] Whatever may have been East Cleveland's inclination as to the release of this criminal case file, that City would in fact deny other such requests on the basis of *Steckman*. *See, e.g., Perry v. Onunwor*, 8th Dist. No. 78398, 2000 Ohio App. LEXIS 5893 (Dec. 7, 2000); *State ex rel. Rasul-Bey v. Onunwor*, 94 Ohio St.3d 119, 760 N.E.2d 421 (2002).

14

no ability to know – whether it was a complete file.  Id. at p. 65. Neither Ms. Naiman nor Mr. Frey

looked at the county's criminal case file. Id. at p. 92; 96-97.  And she would not necessarily have

reason to know whether the East Cleveland police file contained exculpatory evidence: "Just looking at

a file doesn't necessarily tell you whether or not something is or is not exculpatory.  Things aren't

always obviously exculpatory."  Id. at 108.  When pressed further, she testified:

> Q.  Does it trouble you at all that there was elements in the file that had exculpatory
> material that was not turned over to the defendants?
>
> ***
>
> A.  Okay.  It does not trouble me that there may have been this kind of evidence that
> you describe.  It doesn't trouble me in terms of what I did then.  I had no idea,
> okay?  I totally was reacting to the issue as I've already described it.  Public
> records request, *Steckman*, post-conviction relief, inappropriate discovery venue.
>
>   If – hold on.
>
> Q.  Go ahead.
>
> A.  If I had known – first of all, I don't know what was or was not turned over.  I
> really do not know the particulars about 2013, 1998, or any of that.  I know
> nothing of that.  But if I had an inkling that anybody was trying to hide
> something, I would not have done what I did.

Id. at pp. 102-103.  Ms. Naiman acted based solely on the considered determination that the

defendants' public records request was not an appropriate way to obtain discovery in a post-conviction

proceeding, not to forever prevent the defendants from being able to use information contained in the

police file. Id. at pp. 120-122.  There is no evidence of any agreement between Naiman and Dunn or

anyone else not to release police reports.

The plaintiffs assert that "[t]he fact that Naiman denies knowing there was exculpatory

evidence in the file is irrelevant."  See ECF 86 at p. 23.  The plaintiffs can cite to no legal authority to

support their attempt to impose what really amounts to strict liability.

To the contrary, in *Park v. Coakley*, Case No. 4:14-CV-1537, 2015 U.S.Dist. LEXIS 11327 (N.D. Ohio Jan. 30, 2015), the court dismissed an inmate's denial-of-access claim where there was no evidence that the prison warden intended to impede any right of access to the courts, stating:

> [T]o hold [warden] Coakley liable for denying him access to the courts, Plaintiff must show that Coakley acted with the intention of impeding his filing.  Negligence does not suffice to state an access to the courts violation. *See Collins v. Harker Heights, Tex.*, 503 U.S. 115, 127-130, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).  *** Plaintiff cannot hold Coakley liable for denial of access to the courts if Coakley was not personally aware that he was impeding Plaintiff from complying with the Supreme Court's time limitations.

*Id*. at * 8-9.  Similarly, the plaintiffs cannot hold Naiman liable for denying them access to the courts when Naiman had no knowledge of the contents of the criminal case file, no knowledge of whether it contained exculpatory information, and no knowledge of whether that exculpatory information had been disclosed previously.

For their part, the plaintiffs rely on supposed findings of the Ohio common pleas court, when granting the plaintiffs' motion for a new trial, that the Naiman/Marino letter

> is proof positive that the State (by and through Marino) was aware of the police reports it had suppressed; otherwise there would have been no need for the letter directing the East Cleveland Police Department to 1) willfully disregard any lawful request for public records and 2) additionally, send the reports only to the Cuyahoga County Prosecutor's Office Investigators.

See ECF 86 at p. 24, quoting from Plaintiffs' Exhibit 59.  That the plaintiffs now rely on those state court findings is ironic since the plaintiffs opposed East Cleveland's request that judicial notice be taken and this Court declined to do so.  ECF 40.  In any case, those "findings" have no legal or evidentiary value here.  The Marino/Naiman letter did not direct East Cleveland to disregard any public records request.  The Marino/Naiman letter did seek to ensure that the Prosecutor's Office had the complete police department file – as would any responsible prosecutor's office.  Indeed, in light of the undisputed evidence showing that Marino's only involvement here was in meeting with Naiman

16

briefly before the letter was drafted and then afterwards just to sign the letter, the state court's belief that Marino was the chief architect of prosecutorial misconduct sadly betrays a belief based on bias, not fact.

The plaintiffs' reliance on *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997), is likewise unavailing.  In that case, the court held that despite allegations that the police engaged in an immediate cover-up of a motor vehicle collision in order to protect the son of a high-ranking police officer and interfere with the plaintiff's ability to seek civil recovery against the wrongdoer in the courts, the plaintiff's case there failed because the plaintiff had not even attempted to gain access to the courts and thus seek information about the alleged wrongdoer.  That case is readily distinguishable on its facts.  But even apart from that, characterizing conduct as a "cover-up" necessarily implies actual knowledge of the facts that are being concealed.  By contrast, there is no evidence here that Naiman had any knowledge of any exculpatory information that had not been disclosed.

In short, Naiman did not engage in any improperly obstructive conduct.  Beyond that, Naiman's conduct did not cause substantial prejudice to the underlying claim that could not be remedied.  The plaintiffs in fact did obtain the records they sought.  The plaintiffs in fact did obtain post-conviction relief that set aside their criminal convictions and granted them a new trial.  And the plaintiffs are in fact currently pursuing civil remedies that seek compensation.

Finally, the plaintiffs are not seeking relief on their denial-of-access claim that they would have sought on an underlying claim that is now otherwise unattainable.  They are not seeking relief for denial-of-access on any claim they were precluded from asserting in their criminal case proceedings because they in fact obtained the relief they sought in those criminal case proceedings.  Indeed, the relief the plaintiffs seek on their denial-of-access claim here is truly no different from the relief that

17

they are seeking on their other asserted claims: monetary damages against the defendants.  In short, their denial-of-access claim here is really but a separate alternate claim for relief, not a claim asserted because no other claim can be asserted.

The evidence in this case thus fails to demonstrate that defendant Naiman's conduct violated any right of access to the courts.

**2.**      **Naiman's conduct in 1998 did not violate rights that were clearly established by law.**

Whether or not Naiman's limited conduct here actually interfered with a right of access to the courts, qualified immunity nevertheless attaches because there was no clearly established law in 1998 that would have caused a reasonable person in Naiman's position to know that she was violating the plaintiffs' constitutional rights.  *See Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006) (constitutional right must be "so clearly established at the time in question that a reasonable person in the defendant's position would have known that he was violating the plaintiff's' constitutional rights.")  As stated in *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987), the right claimed cannot be set at an abstract level of generality but must be known in a more particularized sense: the contours of the right must have been sufficiently clear that a reasonable official would have known that what she did violated that right.  While it is unnecessary for the very action in question to have been held unlawful, the unlawfulness of the official's action must nevertheless have been apparent in light of the pre-existing law.  *Id*. at 640.

In this case, the plaintiffs contend that defendant Naiman's conduct violated their right of access to the courts.  While the plaintiffs now select language from the United States Supreme Court's 2002 decision in *Christopher v. Harbury*, 536 U.S. 403 (2002) and the Sixth Circuit's 2013 decision in *Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013) to support their claims here, those decisions

18

obviously post-date Naiman's 1998 conduct and thus could not constitute clearly established law for her.  Indeed, the fact that they both considered denial-of-access claims as being a substitute civil claim for relief only when an underlying civil cause of action could not be maintained provides no reason to think it might apply to criminal post-conviction proceedings.

In any case, the issue here is not whether Naiman should have foreseen that cases recognizing a civil cause of action as a substitute for an otherwise lost civil cause of action would later be used by creative lawyers to attack a prosecutor's response to a public records request concerning a criminal prosecution that was about to enter the post-conviction phase of judicial proceedings.  The issue here is whether the law in 1998 clearly established that Naiman's conduct denied access to the courts.[3]

The only Sixth Circuit authority that could possibly be relevant here would appear to be *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997), decided in July 1997.  As indicated previously, the court there held that despite allegations that the police engaged in an immediate cover-up of a motor vehicle collision in order to protect the son of a high-ranking police officer and interfere with the plaintiff's ability to seek civil recovery against the wrongdoer in the courts, the plaintiff's case nevertheless failed because the plaintiff had not even attempted to gain access to the courts and thus seek information about the alleged wrongdoer.  Aside from being readily distinguishable on its facts, nothing in that case would put a reasonable prosecutor on notice in 1998 that informing the police department that initiated a criminal prosecution that the department's criminal case file was not a public record and should be delivered to the Prosecutor's Office was such an obvious violation of the

---

[3] Naiman's post-conviction conduct could not have violated *Brady v. Maryland* – any violation of that Due Process right to exculpatory information occurred prior to the plaintiffs' January 1996 trial, well before Naiman's limited involvement in June 1998.

right of access to the courts that only an incompetent prosecutor would have done what Naiman did. Far from it.  Naiman's response was reasonable in light of the law at the time.

It is the plaintiffs' burden to demonstrate that the law was so clearly established at that time that Naiman does not deserve the protection afforded by qualified immunity.  It is not enough for the plaintiffs to quote selectively from court opinions – even those decided before 1998 – that describe a right to access to the courts in broadly abstract terms.  Their burden here is to show that Naiman's conduct was clearly contrary to law in 1998.  Nothing in the relevant decisional law suggests that Naiman's conduct in anticipation of post-conviction proceedings was anything but reasonable under the circumstances.  Accordingly, qualified immunity should preclude plaintiffs' denial of access claim against defendant Naiman.  Plaintiffs' motion for summary judgment should accordingly be denied.

## IV.    CONCLUSION

Defendant Deborah Naiman respectfully requests that plaintiffs' joint motion for partial summary judgment be denied.

Respectfully submitted,

MICHAEL C. O'MALLEY (0059592)
Prosecuting Attorney of Cuyahoga County, Ohio

By:  s/ Jennifer M. Meyer                 _
JENNIFER M. MEYER (0077853)
CHARLES E. HANNAN (0037153)
Assistant Prosecuting Attorneys
1200 Ontario Street, 8th Floor
Cleveland, Ohio   44113
Tel:  (216) 443-7800/Fax: (216) 443-7602
jmeyer@prosecutor.cuyahogacounty.us
channan@prosecutor.cuyahogacounty.us

*Counsel for Defendants Carmen Marino,*
*Deborah Naiman, and Cuyahoga County*

20

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on October 2, 2017 and was served electronically on all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

  s/ Jennifer M. Meyer_____
Jennifer M. Meyer (0077853)

21