IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK WHEATT and LAURESE GLOVER, | ) ) ) | No. 1:17-CV-377 No. 1:17-CV-611 (consolidated) |
| Plaintiffs | ) ) | Judge James S. Gwin |
| v. | ) ) ) ) | **Plaintiffs' Joint Response to Defendants Cuyahoga County, Deborah Naiman, and Carmen Marino's Motion for Summary** |
| CITY OF EAST CLEVELAND, *et al.* | ) | **Judgment** |

Now come Plaintiffs, Derrick Wheatt, Laurese Glover, and Eugene Johnson, through their respective counsel, and hereby file this Joint Response to Defendants Cuyahoga County, Deborah Naiman, and Carmen Marino's Motion for Summary Judgment.

After their convictions were final and during a time when there were no post-conviction or any other criminal proceedings whatsoever, Plaintiffs submitted a public records request to the City of East Cleveland seeking the police reports in the Hudson homicide investigation. Given concern in the community over Plaintiffs' convictions, the Mayor of East Cleveland intended to release the records. However, before he could do so, Defendants Naiman and Marino intervened to stop the release of the records, even though they had no jurisdiction or any colorable claim of authority to do so. In taking these actions, Defendants obstructed the release of records that would have resulted in Plaintiffs' exoneration and release from prison. As a result, Plaintiffs spent an additional 17 years in prison until the records were released in 2013 by the City of East Cleveland in response to a new public records request—one in which Defendants Naiman and Marino did not interfere. As discussed in the attached Memorandum of Law, Defendants are not entitled to either absolute or qualified immunity for these actions that were outside of their jurisdiction and violated clearly established law.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

**MEMORANDUM OF LAW** ........................................................................................ 1

**STATEMENT OF FACTS** ........................................................................................... 1

**ARGUMENT** ................................................................................................................ 2

I.      Defendants Naiman and Marino Are Not Entitled to Absolute Immunity ......................... 3

      A.      Defendant Naiman and Marino Were Not Acting as Advocates because They Had No Jurisdiction Over and No Colorable Claim of Authority to Interfere with the City of East Cleveland's Response to a Public Records Request ............................ 4

      B.      Defendants Naiman and Marino Were Not Acting as Advocates because There Were No Ongoing Adversarial Proceedings ............................................................ 8

      C.      If Defendants Naiman and Marino's Letter Is Construed as "Legal Advice," Defendants Were Not Acting as Advocates in Giving This "Advice" ................. 10

      D.      Defendants Naiman and Marino's Arguments for Absolute Immunity Are Meritless ............................................................................................................ 11

II.     Defendants Naiman and Marino Are Not Entitled to Qualified Immunity on Plaintiffs' Denial of Access to Courts Claim (Count III) ................................................................. 16

      A.      Evidence Supports a Constitutional Violation for Denial of Access to Courts ..... 17

      B.      The Right to Access to Courts Was Clearly Established in June 1998 ................. 18

**CONCLUSION** ........................................................................................................... 20

# TABLE OF AUTHORITIES

*Adams v. Hanson*, 656 F.3d 397 (6th Cir. 2011) ...........................................................15

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................18

*Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015)........................................................18

*Ayers v. City of Cleveland*, 2013 WL 775359 (N.D. Ohio Feb. 25, 2013)....................20

*Barr v. Abrams*, 810 F.2d 358 (2d Cir. 1987).................................................................4

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ....................................................................18

*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)............................................18

*Bounds v. Smith*, 430 U.S. 817 (1977) ..........................................................................19

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................................20

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ..............................................................10

*Burns v. Reed*, 500 U.S. 478 (1993) ..............................................................................10

*Carter v. Heyns*, 2016 WL 805992 (W.D. Mich. Jan. 28, 2016)...................................17

*Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142 (1907).....................................19

*Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997) .............................................................19

*Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1996).............................................................4, 5

*Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 1992) ..........................................................14

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013)..................................................17

*Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953 (6th Cir. 1986) ....................19

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................................................19

*Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002).......................................................4

*Holden v. Sticher*, 427 F. App'x 749 (11th Cir. 2011) ..................................................10

*Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000).....................................................4, 14

*Hope v. Pelzer*, 536 U.S. 730 (2002) ............................................................................20

*Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992) ...............................................9, 15, 16

*Howell v. Sanders*, 668 F.3d 344 (6th Cir. 2012) ...............................................................3, 10, 11

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ........................................................................3, 5, 13, 15

*In re Lott*, 366 F.3d 431 (6th Cir. 2004) ........................................................................................18

*Jones v. Shankland*, 800 F.2d 77 (6th Cir. 1986).............................................................................3

*Joyce v. Godale,* 2007 WL 313938 (Ohio Ct. App. Feb. 2, 2007) ...................................................5

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ................................................................8

*Lomaz v. Hennosy*, 151 F.3d 493 (6th Cir. 1998) ..........................................................................11

*Marsilio v. Vigluicci*, 924 F. Supp. 2d 837 (N.D. Ohio 2013)..........................................................5

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997)......................................................................16

*Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017) ...........................................................................19

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ......................................................................................19

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................................................17, 18

*Pennsylvania v. Finley*, 481 U.S. 551 (1987) ................................................................................19

*Pettry v. City of Parma*, 2015 WL 5437772 (N.D. Ohio Sept. 15, 2015).....................................17

*Ross v. Choice Hotels Intern., Inc.*, 882 F. Supp. 2d 951 (S.D. Ohio 2012) ..................................3

*Rouse v. Stacy*, 478 F. App'x 945 (6th Cir. 2012) .......................................................................4, 5

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................................................19

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008)..........................................................3

*Spaulding v. Vilas*, 161 U.S. 483 (1896).........................................................................................4

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999)..............................................................3, 18

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003)........................................................... *passim*

*State ex rel. O'Connor v. Davis*, 745 N.E.2d 494 (Ohio Ct. App. 2000) ........................................6

*State ex rel. Steckman v. Jackson*, 639 N.E.2d 83 (Ohio 1994).....................................................12

*State v. Billingsley*, 978 N.E.2d 135 (Ohio 2012)............................................................................6

*State v. Johnson*, 529 N.E.2d 898 (Ohio 1988) .............................................................................20

iii

*State v. Larkins*, 2003 WL 22510579 (Ohio Ct. App. Nov. 6, 2003) ............................................18

*Stump v. Sparkman*, 435 U.S. 349 (1978)........................................................................................4

*Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731 (7th Cir. 2006) ....................................................2

*Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997)................................................18, 19

*Taft Broadcasting Co. v. United States*, 929 F.2d 240 (6th Cir. 1991)..........................................17

*Turner v. Safley*, 482 U.S. 78 (1987) ..............................................................................................19

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)............................................................................11

*Warney v. Monroe Cnty.*, 587 F.3d 113 (2d Cir. 2009) ..................................................................13

*White Oak Property Development, LLC v. Washington Twp.*, 606 F.3d 842 (6th Cir. 2010) .......16

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ......................................................................................19

*Yarris v. County of Delaware*, 465 F.3d 129 (3d Cir. 2006) ...........................................................9

## MEMORANDUM OF LAW
## STATEMENT OF MATERIAL FACTS

Plaintiffs incorporate by reference the Statement of Facts in their Joint Motion for Partial Summary Judgment ("Joint Motion"), Dkt. 86, as well as their previously-filed Exhibits, Dkts. 79-1 to 79-63.[1] In addition, Plaintiffs provide the following additional material facts:

Defendant Carmen Marino's position in the Cuyahoga County Prosecutor's Office ("CCPO") in 1998 was First Assistant. Dkt. 79-52 (Marino Dep.) at 16.[2] He did not supervise Naiman. Dkt. 79-50 (Naiman Dep.) at 14. Marino was not involved with public records requests and never got any requests when he was First Assistant. Dkt. 79-52 at 59, 62. He was not employed or hired by the City of East Cleveland ("City") in any way. *Id.* at 16. While Marino was First Assistant, he had no role as a law director or any role at all with the City. *Id.* Marino stated, "We didn't have jurisdiction over any cities." *Id.*; *see id.* at 36. Marino was not responsible for responding to any public records requests directed to the City. *Id.* at 63. Moreover, Marino had no involvement in the case either before or after trial: he didn't try the case against Plaintiffs, didn't have any role in investigating or preparing the case for trial, didn't know anything about it, and didn't have any interaction with and never talked to the trial prosecutor Michael Horn or any other prosecutor regarding the case. *Id.* at 16–19, 26. Similarly, Naiman also had no knowledge of the case, no role in investigating or prosecuting it, and never talked to Horn about it. Dkt. 79-50 at 19; *see also id.* at 90–91. Marino states that he did not even know the names of Plaintiffs in 1996. Dkt. 79-52 at 19. Furthermore, Marino did not speak with the Mayor or anyone from the City about the file or the case in 1998. *Id.* at 21.

---

[1] Plaintiffs' motion was originally filed as Dkt. 78, but an amended version with table of contents and table of authorities was filed as Dkt. 86.

[2] Page citations to depositions and transcripts are to the page number of the deposition or transcript. Page citations to other docket entries are to the page number of the docket entry (e.g., "1 of 10") in the file stamp at the top of the page.

1

Before Naiman presented the 6/24/98 letter to him, Marino had no knowledge, information, or connection with the case. *Id.* at 24–26. Naiman wrote the letter. *Id.* at 32. Prior to signing the letter, Marino did not review any of the files regarding the case. *Id.* at 25. Naiman handed Marino the letter, and "he would have had to have at least glanced at it while he was reading it or writing his name." Dkt. 79-50 at 74. The letter's assertion that release of the police file "could constitute a willful [sic] violation of the law" was "incorrect." Dkt. 79-52 at 33, 35. Marino testified that because the CCPO did not have any jurisdiction over cities, the letter was merely a "request" and the City did not have to follow the direction in the letter that the City turn over the police records and all copies to the CCPO investigator. *Id.* at 35–36, 51–52; *see* Dkt. 79-51 (6/24/98 Ltr.). Marino stated that the CCPO did not keep documents or records for cities. Dkt. 79-52 at 41. The CCPO kept its own file of a criminal case. *Id.* at 42. Marino stated that there "would be no reason" for the CCPO to request the original case file from the City of East Cleveland, when the appeals had already been exhausted. *Id.* at 43.

Marino is not familiar with the Ohio Public Records Act. *Id.* at 63. He did not know whether there was anything in the police file that anyone would have been entitled to under the public records law in 1998. *Id.* at 61.

## ARGUMENT

As an initial matter, Defendants Naiman and Marino argue only that they are entitled to absolute and qualified immunity. They do not argue that Plaintiffs have insufficient evidence to reach a jury on merits of their denial of access to courts claim. Thus, in this Response, Plaintiffs address only the arguments raised by Defendants. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("[I]f the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that

point, and the district court should not rely on that ground in its decision."). It will obviously be too late for Defendants to raise new arguments in reply. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (issue raised for first time in reply is waived); *Ross v. Choice Hotels Intern., Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012).

## I.      Defendants Naiman and Marino Are Not Entitled to Absolute Immunity.

Defendants have the burden of establishing entitlement to absolute immunity. *Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012). "[A]bsolute immunity is the exception rather than the rule, and has traditionally been reserved for those actors 'intimately associated with the judicial phase of the criminal process.'" *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The Supreme Court and the Sixth Circuit presume "that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486–87 (1993); *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003). The Supreme Court has been "quite sparing" in its recognition of absolute immunity and has "refused to extend it any further than its justification would warrant." *Burns*, 500 U.S. at 487 (internal quotation marks omitted).

Section 1983 was meant to be read in harmony with immunities that were historically available at common law. *Imbler*, 424 U.S. at 421–24. "We do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy." *Burns*, 500 U.S. at 493 (internal quotation marks omitted). "[A] prosecutor will only receive absolute immunity for activities that were an 'integral part of the judicial process.'" *Spurlock*, 330 F.3d at 797 (quoting *Imbler*, 424 U.S. at 430). Thus, a prosecutor's activities at trial, such as knowingly using false testimony and suppressing exculpatory evidence, are entitled to absolute immunity. *Id.*; *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). Under the functional

3

approach, courts look to the "nature of the function performed, not the identity of the actor who performed it." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). "The analytical key to prosecutorial immunity … is advocacy—whether the actions in question are those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (*en banc*). Prosecutors are not immune when they perform administrative, investigative, or other functions, such as giving legal advice to the police. *Holloway*, 220 F.3d at 775; *Burns*, 500 U.S. at 493.

Under this body of law, Defendants Naiman and Marino have not carried their burden of showing their entitlement to absolute immunity, as discussed below.

**A.      Defendant Naiman and Marino Were Not Acting as Advocates because They Had No Jurisdiction Over and No Colorable Claim of Authority to Interfere with the City of East Cleveland's Response to a Public Records Request.**

"The Supreme Court has long recognized that [absolute] immunity does not protect a prosecutor for actions clearly beyond his authority." *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) (unpublished) (citing *Spaulding v. Vilas*, 161 U.S. 483, 498 (1896); *Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (holding that an official has no absolute immunity when he has acted in the "clear absence of all jurisdiction")); *see also Doe v. Phillips*, 81 F.3d 1204, 1211 (2d Cir. 1996) (holding that a prosecutor who demanded that an accused swear to her innocence on a bible in church as a condition of dropping charges against her was not entitled to absolute immunity because he acted "manifestly beyond his authority"). "[W]here a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). If this were not so, "a prosecutor could immunize himself from suit for any manner of wrongdoing by merely claiming that it was 'related' to a legitimate prosecutorial duty." *Rouse*, 478 F. App'x at 951. In *Rouse*, the Sixth Circuit held that a prosecutor who ordered a jailer to beat a pretrial detainee into pleading guilty

was not entitled to absolute immunity because "by any objective view of the matter [the prosecutor] was not acting within the legitimate scope of his prosecutorial authority or jurisdiction in ordering the beating of Rouse." *Id.* at 953. (The prosecutor claimed that ordering a beating was within his prosecutorial function of plea bargaining. *Id.* at 954.) Simply "[a]ttaching a plea bargaining label to such conduct is insufficient to warrant prosecutorial immunity when such conduct is plainly outside of the prosecutor's legitimate authority." *Id.* This flows from the Supreme Court's decisions on absolute immunity. In *Imbler*, the Court took pains to note that the challenged acts were "within the scope" of the prosecutor's duties. 424 U.S. at 410. If the acts alleged to be unconstitutional are "plainly beyond the prosecutor's jurisdiction," then absolute immunity does not apply. *Doe*, 81 F.3d at 1210 (internal quotation marks omitted).

The scope of a county prosecutor's jurisdiction and authority is defined under Ohio law. Examination of the relevant statutes shows there is no statutory authority for Defendants Naiman and Marino's actions. Ohio Revised Code § 309.08 states:

> The prosecuting attorney may inquire into the commission of crimes within the county. The prosecuting attorney shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party, … and other suits, matters, and controversies that the prosecuting attorney is required to prosecute within or outside the county, in the probate court, court of common pleas, and court of appeals.

O.R.C. § 309.08(A). Naiman and Marino could only act as agents of the Prosecuting Attorney (Stephanie Tubbs-Jones); their authority did not exceed hers. Under Ohio law, "an assistant prosecuting attorney is a statutory agent of the elected prosecutor [] … and is authorized to act on the prosecutor's behalf as one who is 'necessary for the proper performance of the duties of [the] office ….'" *Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 851–52 (N.D. Ohio 2013) (quoting *Joyce v. Godale*, 2007 WL 313938, at *4 (Ohio Ct. App. Feb. 2, 2007)).

Further, Ohio Revised Code § 309.09 provides authority to the county prosecuting attorney to act as a legal adviser to certain county-related entities and townships, but not to municipal corporations (such as the City of East Cleveland):

> The prosecuting attorney shall be the legal adviser of the board of county commissioners, board of elections, all other county officers and board, and all tax-supported public libraries, and any of them may require written opinions or instructions from the prosecuting attorney in matters connected with their official duties. The prosecuting attorney shall prosecute and defend all suits and actions that any such officer, board, or tax-supported public library directs or to which it is a party ….

O.R.C. § 309.09(A); *see also* O.R.C. § 309.09(B)(1) ("[t]he prosecuting attorney shall be the legal adviser for all township officers, boards, and commissions …."); *State ex rel. O'Connor v. Davis*, 745 N.E.2d 494, 498 (Ohio Ct. App. 2000) (under R.C. 309.09(A), the prosecuting attorney "'has the statutory responsibility and authority to advise, prosecute, and defense county officers and boards as specified.'") (emphasis added); *State v. Billingsley*, 978 N.E.2d 135, 142 (Ohio 2012) ("A prosecuting attorney is a county officer whose election is provided for and whose duties are prescribed by statute.") (internal quotation marks omitted). Nothing in these statutes gives a prosecuting attorney (or any assistant prosecuting attorney) the authority or jurisdiction to be a legal adviser to a municipal corporation. Defendants Naiman and Marino did not have any jurisdiction or colorable claim of authority to interfere with the City of East Cleveland's response to a public records request.

Defendant Marino expressly admitted that he had no jurisdiction over the City. Dkt. 79-52 at 16, 36. Naiman admitted that the jurisdiction of the CCPO was to prosecute felonies in Cuyahoga County. Dkt. 79-50 at 88. The following facts are not even disputed: (1) the public records request was submitted to the City of East Cleveland, not the County or the CCPO; Dkt. 79-47 (Onunwor Aff.); Dkt. 79-49 (6/9/98 Ltr. from Watson to Onunwor); Dkt. 79-50 at 54; (2) Naiman and Marino were not attorneys for the City, did not represent the City, and had no role in

responding to public records requests directed to the City, Dkt. 79-50 at 36; Dkt. 79-52 at 16, 62; (3) Cuyahoga County prosecutors were not legal counsel for the ECPD or the City, Dkt. 38 (1/29/15 Hrg. Tr.) at 129–30; *see* Dkt. 79-55 (O'Shea Report) at 4–5; (4) the East Cleveland Law Director would have been the person with authority to address any concerns or questions about a public records request directed to the City, Dkt. 79-63 (Forbes Aff.). Neither Naiman nor Marino handled public records requests directed to the *County* or the *CCPO*, much less requests directed to the entirely separate governmental entity of the City of East Cleveland. Dkt. 79-52 at 62. At the time, Naiman was an attorney in the CCPO's child victim unit. Dkt. 79-50 at 14, 89–90. Marino was the First Assistant. Dkt. 79-52 at 16. Neither of them had any jurisdiction or authority over the City of East Cleveland or the ECPD. Nor did they have any authority to direct the City of East Cleveland to withhold the City's own file in response to a public records request. *See* Dkt. 79-55 at 4–5. And, significantly, it was not a practice of the CCPO to tell municipalities what to do in response to public records requests or to tell municipalities to hand over their files for "safekeeping" (as Naiman claimed). Dkt. 79-50 at 67–68. Neither Naiman nor Marino had ever directed a municipality to turn over an original police file and all copies to the CCPO, even when there was the possibility of post-conviction litigation. *Id.* at 66, 68, 94, 96; Dkt. 79-52 at 44, 55–56. Nor had they ever heard of another prosecutor at the CCPO doing this. Dkt. 79-50 at 101. This was never done before (or since) because county prosecutors had no authority or jurisdiction to do it.

Not only did Defendants Naiman and Marino act without any colorable claim of authority or jurisdiction, but they actually directed the City to violate the law (the Ohio Records Retention Act), by "direct[ing]" the City to turn over the entire file and all copies to CCPO investigators. Dkt. 79-51. In so doing, Defendants were attempting to prevent the City from disclosing the

records—which the City had every right to disclose—and to prevent any scrutiny of their actions. On this point, the Ninth Circuit's decision in *Lacey v. Maricopa County*, 693 F.3d 896, 912–14 (9th Cir. 2012), is instructive. The Ninth Circuit held that a prosecutor who had issued purported grand jury subpoenas but had not followed the procedures provided under Arizona law for doing so had deprived himself of absolute immunity: "Prosecutors generally enjoy absolute immunity for their conduct before grand juries … [b]ut we can find no justification for extending absolute immunity to the acts of a prosecutor designed to *avoid* the 'judicial phase.'" *Id.* at 913. The judicial process normally serves as a check on prosecutorial actions, but "[w]here the prosecutor has side-stepped the judicial process, he has forfeited the protections the law offers to those who work within the process." *Id.* at 914. Naiman admitted that she wrote the letter in order to frustrate the City's intended response to the records request—disclosure. Dkt. 79-50 at 61–63. This was a "side-stepping" of the judicial process.

### B. Defendants Naiman and Marino Were Not Acting as Advocates because There Were No Ongoing Adversarial Proceedings.

The Sixth Circuit has held that a prosecutor is not entitled to absolute immunity for actions taken when there are no ongoing adversarial proceedings. In *Spurlock*, the plaintiff sued a prosecutor for acts taken during his second trial, as well as after that trial's conclusion. The plaintiff alleged that the defendant prosecutor threatened or coerced a third-party witness more than a year after the plaintiff's second criminal trial had been completed. *Spurlock*, 330 F.3d at 798. The prosecutor had absolute immunity for the knowing use of false testimony at plaintiff's trial, but that the prosecutor was not and could not have been acting as an advocate when he threatened the witness after the conclusion of the second trial. *Id.* The court held:

> There were no ongoing adversarial proceedings. Absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings, including direct appeals, habeas corpus proceedings, and parole proceedings, *where the prosecutor is*

8

> *personally involved in the subsequent proceedings and continues his role as an advocate.* However, where the role as an advocate has not yet begun, namely prior to indictment, *or where it has concluded*, absolute immunity does not apply.

*Id.* at 799 (emphasis added) (citing *Houston v. Partee*, 978 F.2d 362, 365–66 (7th Cir. 1992) (similar holding)); *accord Yarris v. County of Delaware*, 465 F.3d 129, 137–38 (3d Cir. 2006). The court explained that when the prosecutor threatened the third-party witness after the second trial, he was not doing so to "prepare [him] as a trial witness or to make any professional evaluation of the evidence, but rather to hinder the investigation into the wrongdoing of himself and others, and to defeat Plaintiffs' civil rights suit." *Spurlock*, 330 F.3d at 799. The court distinguished *Shankland* because the "cover-up" by the prosecutor in that case occurred "during the criminal prosecution," whereas the "cover-up" at issue in *Spurlock* "was not contemporaneous with the underlying wrongdoing sought to be covered up." *Id.* at 801. Thus, the acts of the prosecutor were not those of an advocate or intimately related to the judicial process.

Here, there were no ongoing adversarial proceedings when Naiman and Marino sent their June 24, 1998 letter to the City. Plaintiffs' criminal trial concluded in January 1996. Dkt. 79-5 (Trial Tr.) at 509–11. By June 1998, Plaintiffs' convictions had become final, their direct appeals were over, and there were no ongoing adversarial proceedings. Dkt. 79-44 (Glover Docket) at 8; Dkt. 79-45 (Wheatt Docket) at 9; Dkt. 79-46 (Johnson Docket) at 10. No post-conviction petitions or motions for new trial had been filed yet. *Id.* Naiman knew that there had been a conviction and the appeals had been completed. Dkt. 79-50 at 48. Thus, Naiman and Marino were not and could not have been acting as "advocates" for the State when there were no ongoing adversarial proceedings. Naiman and Marino were even further removed from the judicial process because they were never "personally involved" in the Plaintiffs' criminal cases at any stage (before or after conviction). *Spurlock*, 330 F.3d at 799. They both claimed they had

9

no knowledge of Plaintiffs' case, no role in it, and never even looked at the case file.  Dkt. 79-50 at 18–19, 65; Dkt. 79-52 at 17–19, 22, 24–25.

### C.  If Defendants Naiman and Marino's Letter Is Construed as "Legal Advice," Defendants Were Not Acting as Advocates in Giving This "Advice."

In *Burns v. Reed*, the Supreme Court held that prosecutors were not entitled to absolute immunity for giving legal advice to the police in the "investigative stage" of a criminal case because such conduct was not "intimately associated with the judicial phase of the criminal process." 500 U.S. at 493. Here, if Defendants Naiman and Marino's June 24, 1998 letter is construed as "legal advice," Defendants are not entitled to absolute immunity for giving this "advice" because it was not "intimately associated with the judicial phase of the criminal process."[3] *Id*. Defendant Marino characterized the June 24, 1998 was merely "a request" because he did not have "jurisdiction" over the City. Dkt. 79-52 at 35–36, 52. But "[p]rosecutors do not receive absolute immunity for giving legal advice to police where a prosecutor guides police rather than where a prosecutor prepares his or her own case." *Holden v. Sticher*, 427 F. App'x 749, 751 (11th Cir. 2011) (unpublished).

Defendants claim that *Burns* is inapposite because the legal advice given by the prosecutor in that case was before probable cause had developed. But that timing is not dispositive. As the Sixth Circuit has explained, "[t]he existence or nonexistence of probable cause … is not determinative of whether absolute immunity applies …." *Howell*, 668 F.3d at 351. The "dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process." *Id.* (internal quotation marks omitted). Under *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 & n.5 (1993), "the inquiry remains

---

[3] The letter stated, "It is our position that said police file and its contents are not public record, thus any release could constitute a willful [*sic*] violation of the law." Dkt. 79-51. Plaintiffs' contention is that this was a direction given by Defendants Naiman and Marino without any colorable claim of authority, but even if it is construed as "legal advice," it is not protected by absolute immunity.

10

one of function and not probable cause." *Howell*, 668 F.3d at 350; *Buckley*, 509 U.S. at 274 n.5 ("Of course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards.").[4] The "function" that Defendants Marino and Naiman were performing when they sent the June 24 letter to the City was not associated with the judicial phase of the criminal process at all. Nor did the letter have anything to do with Defendants' advocacy functions.[5]

### D. Defendants Naiman and Marino's Arguments for Absolute Immunity Are Meritless.

Defendants Naiman and Marino make several arguments for absolute immunity, none of which have any merit. First, *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), does not require the extension of absolute immunity to Naiman and Marino. In *Van de Kamp*, the Supreme Court applied absolute immunity to prosecutors involved in supervision, training, or information-system management relating to the disclosure of exculpatory or impeachment information. *Id.* at 344. Those prosecutors may not have been directly involved in particular trials, but they were responsible for "a certain kind of administrative obligation—*a kind that itself is directly connected with the conduct of a trial.*" *Id.* The tasks at issue "concern how and when to make impeachment information available at a trial. They are thereby directly connected with the prosecutor's basic trial advocacy duties." *Id.* at 346. Here, however, Defendants Naiman and Marino's June 24, 1998 letter had nothing to do with their basic trial (or appellate or post-conviction) advocacy duties. The letter had nothing to do with any prosecutorial duties at all

---

[4] There was never any probable cause to begin with because the evidence against Plaintiffs had been fabricated and exculpatory evidence withheld.

[5] Defendants' citation to *Lomaz v. Hennosy*, 151 F.3d 493, 499 (6th Cir. 1998), is unavailing. That case held that the prosecutors were "acting as advocates for the state when they appeared in from of Judge DiPaulo with the affidavit and search warrant," and when directing the continuation of a seizure "because all of the items listed in the warrant were necessary to the judicial proceedings, and … because the execution of the warrant could not be begun again if it were discontinued." *Id.* at 499. Unlike in this case, those acts were intimately connected with the judicial phase of the criminal proceedings.

11

because the public records request was not even directed to the CCPO. It was directed to the City. And, responding to a public records request directed to a municipal police department is not necessarily a lawyer function, much less a prosecutorial one. No lawyer or prosecutor was involved in the City's response to Ohio Innocence Project's public records request in 2013. *See* Dkt. 79-48 (Fax from Cmdr. Gerhard).

Second, Defendants argue that *State ex rel. Steckman v. Jackson*, 639 N.E.2d 83 (Ohio 1994), meant that the City could have claimed an exemption from disclosure under the Ohio Public Records Act at the time. Dkt. 87 at 9–11. But even assuming that that is true, it does not change several material facts: (1) the City had the right to release the records in response to public records requests if it wanted to, Dkt. 79-52 at 52; Dkt. 79-55 at 5, and it did want to, Dkt. 79-47; (2) the City did not claim any exemption at the time; and (3) it was not within Defendants' jurisdiction to direct the City on how to respond to a records request directed to the City. Disclosure of the records by the City would have been lawful; it was Defendants Naiman and Marino's actions that were unlawful. At most, Defendants were providing "legal advice," which is what they seem to claim themselves, when they assert that the letter "served to communicate to the recipients that the attempt to obtain that department's police file by public records request was not proper under Ohio law." Dkt. 87 (County Defs.' MSJ) at 11.

Defendants claim that because this was an act "undertaken by prosecutors in the post-conviction judicial phase of criminal proceedings," they are entitled to absolute immunity. *Id.* at 12. But that is not how absolute immunity works. They are not entitled to it simply because they were prosecutors (and inserted themselves into a matter over which they had no authority). *Buckley*, 509 U.S. at 273 ("the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor"). Furthermore, the letter was not sent in the "post-conviction

12

judicial phase of criminal proceedings." There were no criminal proceedings at the time. The conviction was final. No post-conviction petitions or motions had been filed yet. At that time, Defendants did not even know whether Plaintiffs might file any post-conviction petitions.[6] Plaintiffs were seeking the records as part of their post-conviction *investigation*, but that has nothing to do with the *judicial* phase of the criminal process. *Van de Kamp*, 555 U.S. at 345; *Imbler*, 424 U.S. at 430; *Spurlock*, 330 F.3d at 799.[7] Defendants' claim that they "utilized their legal skills as advocates for the State in order to defend Plaintiffs' recently-affirmed convictions from collateral attack," Dkt. 87 at 13, is unsupported by anything in the record. They did not do anything as "advocates" or have any involvement in any judicial proceeding whatsoever.

Third, Defendants also argue that even though there were no ongoing post-conviction proceedings, their actions were taken in "anticipation" of such proceedings. This, too, is factually and legally unsupported. First, Defendant Marino claimed not to know anything about the case at all besides what was in the letter. Dkt. 79-52 at 24. Second, Defendant Naiman may have believed that Plaintiffs might use any police records they obtained for an eventual post-conviction petition but that is insufficiently connected to the judicial phase of the criminal process. A similar argument was rejected by the Supreme Court with respect to giving legal advice to the police in *Burns*: "Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the

---

[6] Nor did Defendants ever learn later whether Plaintiffs filed any because, as they testified, they knew nothing about the case and learned nothing about the case other than the June 1998 letter they sent. Further, as Plaintiff's expert Michael O'Shea explained, governmental entities were not allowed to ask what the purpose of a request was, or even who the requestor was. Dkt. 79-55 at 5.

[7] On page 11 of their brief, Defendants misleadingly quote *Spurlock* in a parenthetical. The entire quote is reproduced *supra*, p. 8–9. *Spurlock* made clear that absolute immunity applies to the adversarial acts of prosecutors in post-conviction proceedings "where the prosecutor is personally involved in the subsequent proceedings and continues his role as an advocate." 330 F.3d at 799. That is not the case here, by Defendants' own admissions. On that same page of their brief, Defendants cite to *Warney v. Monroe Cnty.*, 587 F.3d 113 (2d Cir. 2009), but that case does not support their position. That case held that the prosecutor who was in the midst of personal involvement in post-conviction proceedings and delayed in disclosing exculpatory DNA test results was entitled to absolute immunity. *Id.* at 123–25. The acts of having the DNA tested and disclosing the results were integrally related to the judicial phase of the criminal process. *Id.* at 124. Those facts bear no similarity to the facts in this case.

13

ultimate decision whether to prosecute, but we have never indicated that absolute immunity is

that expansive." 500 U.S. at 495. Prosecutors are entitled to absolute immunity "only for actions

that are connected with the prosecutor's role in judicial proceedings, not for every litigation-

inducing conduct." *Id.* at 494. Plaintiffs' attempt to obtain the police reports was merely

investigative; they had no idea if there was anything that could be helpful. Defendants' acts were

plainly not those of an "advocate." *Holloway*, 220 F.3d at 775.

Fourth, Defendants argue that withholding exculpatory evidence is prosecutorial in nature

and entitled to absolute immunity. Dkt. 87 at 14–15. But this argument conflicts with

Defendants' claim that they did not know of any exculpatory evidence in the first place.

Furthermore, Plaintiffs' denial of access to courts claim does not rise or fall on whether or not

Defendants knew that there was exculpatory evidence in the file, only on whether Defendants'

actions were obstructive. And, assuming that Defendants did know of the evidence, the Sixth

Circuit has only applied absolute immunity to withholding of exculpatory evidence after trial

when the prosecutor is personally involved in ongoing adversarial post-conviction proceedings.

*Spurlock*, 330 F.3d at 799. Likewise, the Seventh Circuit has held that after *Van de Kamp*, the

immunity analysis must focus "not only on whether a prosecutor is actively participating on a

trial team when he suppresses material evidence, but also on whether he owes a continuing

*Brady* or *Giglio* obligation to the defendant in question." *Fields v. Wharrie*, 672 F.3d 505, 514

(7th Cir. 1992). The court held that *Brady* and *Giglio* obligations are "functionally prosecutorial"

and that prosecutors have those duties *until a defendant's conviction becomes final*, which is

after the conclusion of the direct appeal. *Id*. at 514–15. Furthermore, the court found that the

defendant prosecutor was entitled to absolute immunity because he had been the trial prosecutor

in the case and was familiar with the evidence in the case:

14

> As the original prosecutor on the case, Wharrie had a continuing *Brady* obligation to reveal material evidence to the defense *until Fields' conviction became final*, as the ongoing judicial process continued to evolve. … *He was not an uninvolved prosecutor in the office who had never before heard of the case or knew relatively little about its details and happened upon and suppressed material evidence*. Were he so, we could fairly characterize him as "in the same position as … state law enforcement officials who … discovered—and then suppressed—evidence which could have exculpated [*Fields*]."

*Id*. at 516 (quoting *Houston*, 978 F.2d at 367) (emphasis added). Here, Defendants were "uninvolved prosecutors" who had no knowledge of the case who were in the "same position" as law enforcement officials who discovered and suppressed exculpatory evidence.

Finally, Defendants characterize themselves as having been "drawn into the underlying criminal case proceedings" and "called upon" to exercise "prosecutorial functions." Dkt. 87 at 15. These characterizations are unsupported by the record. Besides the fact that there were no case proceedings at the time and they did not exercise any "prosecutorial functions," they were not "drawn into" anything. They inserted themselves into a matter—a public records request directed to a municipality—that they had no business in and no jurisdiction over. As the Court of Common Pleas observed:

> The Marino letter also demanded that the East Cleveland Police Department send the reports at issue directly to the Cuyahoga County Prosecutor's Office Investigators. The Court concludes that must have been done in order to remove them from the possession of the Police Department. Fortunately, the East Cleveland Police Department did retain the reports, and the letter from Carmen Marino. Surely, they must have suspected that Marino's letter was unethical and unlawful.
> Marino was not counsel for the East Cleveland Police Department, nor was the County Prosecutor legally authorized to give advice to the Department. In fact, Marino's letter itself is unlawful, as he had no legal authority to issue such a demand to the East Cleveland Police Department ….

Dkt. 79-59 (3/26/15 Opinion) at 13.

Finally, there are several policy considerations that must be considered in determining whether to grant absolute immunity. *Imbler*, 424 U.S. at 422–31; *Adams v. Hanson*, 656 F.3d 397, 409 (6th Cir. 2011). The Defendants have not shown that any of them apply here. First,

15

Defendants have not provided evidence of any common law tradition of according immunity in similar situations—i.e., when prosecutors interfere in another governmental entity's response to a public records request. Second, denying immunity here would not cause a chilling effect because Defendants' conduct was so unusual, unprecedented, and outside of their authority that it would not chill prosecutors in performing their functions as advocates for the state. Third, no adequate checks on prosecutorial abuse other than individual suits against the prosecutor exist here. Defendants Marino and Naiman acted wholly outside of the judicial process. Prosecutors who act outside of the judicial process frustrate the normal checks and balances inherent in the process. *Houston*, 978 F.2d at 368. Here, three Plaintiffs each spent an additional 17 years in prison as a result of Defendants Naiman and Marino's misconduct.

## II.    Defendants Naiman and Marino Are Not Entitled to Qualified Immunity on Plaintiffs' Denial of Access to Courts Claim (Count III).

Defendants' argument that they are entitled to qualified immunity on Plaintiffs' denial of access to courts claim is skeletal and confuses the claim with one about withholding of exculpatory evidence.[8] Dkt. 87 at 20–21. Defendants also fail to support their argument with any citation to the law or the record. Such undeveloped argument results in waiver or forfeiture. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at development or argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to … put flesh on its bones."); *White Oak Property Development, LLC v. Washington Twp.*, 606 F.3d 842, 850 (6th Cir. 2010) (holding that a "nebulous" and

---

[8] As explained in Plaintiffs' Joint Motion for Partial Summary Judgment, the denial of access to courts claim is different from a claim regarding withholding of exculpatory evidence. Dkt. 86 at 26–29. In a denial of access to courts claim, Plaintiffs need not prove that Defendants knew the police reports were exculpatory and failed to disclose them; all they need to prove for that element is "obstructive actions" by the Defendants. *Id.* at 27–28. Defendant Naiman clearly engaged in obstructive actions, as she herself admitted at her deposition. And, as discussed below, a reasonable jury could also conclude that Defendant Marino engaged in obstructive actions by approving and signing the June 24, 1998 letter.

16

"perfunctory" argument was forfeited); *Pettry v. City of Parma*, 2015 WL 5437772, at *2 (N.D.

Ohio Sept. 15, 2015) (no meaningful analysis of qualified immunity resulted in waiver); *Carter*

*v. Heyns*, 2016 WL 805992, at *5 n.1 (W.D. Mich. Jan. 28, 2016) (same).[9]

### A.      Evidence Supports a Constitutional Violation for Denial of Access to Courts.

Even if the court did not deem this argument waived, the evidence on Plaintiffs' denial of

access to courts claim is sufficient to reach a jury. Plaintiffs incorporate by reference the

arguments made in their Joint Motion for Partial Summary Judgment. *See* Dkt. 86 at 26–29.

Thus, one prong of the qualified immunity inquiry—whether the facts make out the violation of a

constitutional right—is met as to Naiman. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The facts in the record also make out a violation of Plaintiffs' constitutional right to

access to courts by Defendant Marino. A reasonable jury could find in Plaintiffs' favor on: their

possession of a non-frivolous underlying claim; substantial prejudice to the underlying claim that

cannot be remedied by the state court; and a request for relief which the plaintiff would have

sought on the underlying claim and is now otherwise unattainable. *Flagg v. City of Detroit*, 715

F.3d 165, 174 (6th Cir. 2013); Dkt. 86 at 27–29. And, a reasonable jury could find that Marino

engaged in obstructive actions. Marino denies that he read the June 24, 1998 letter, or that he

read it closely, Dkt. 79-52 at 51, but Naiman testified that the fact that he signed it indicated that

he "did not disagree with it, otherwise he would not have signed it." Dkt. 79-50 at 74. Of course,

now that Marino is a defendant in this lawsuit, he tries to distance himself from the letter by

saying he did not read it closely and admitting that the letter's assertion about it being a "willful

---

[9] In evaluating cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Defendants cannot be permitted to make any new arguments in their reply, and any arguments they make in their response to Plaintiffs' Joint Motion for Partial Summary Judgment cannot be considered in determining whether to grant Defendants' motion for summary judgment.

violation of the law" to disclose the police file was "incorrect," Dkt. 79-52 at 33, but a reasonable jury could decide that Marino is not credible on whether he read the letter, especially in light of his history of misconduct. *See In re Lott*, 366 F.3d 431, 433 n.1 (6th Cir. 2004); *State v. Larkins*, 2003 WL 22510579 (Ohio Ct. App. Nov. 6, 2003). The fact remains that Marino signed the letter, which directed the City to turn over the file and all copies to the CCPO. This caused the Mayor not to disclose the file, when he otherwise would have. A reasonable jury could conclude that Marino engaged in "obstructive actions."

Defendants argue that they cannot be found liable because they "did not prevent Plaintiffs from filing post-conviction court proceedings." Dkt. 87 at 21. But that is not the test. "[T]o deny such access defendants need not literally bar the courthouse door or attack plaintiffs' witnesses." *Bell v. City of Milwaukee*, 746 F2d 1205, 1261 (7th Cir. 1984) (quoted in *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997)). "Otherwise, to what avail would it be to arm a person with such a constitutional right, when the courtroom door can be hermetically sealed by a functionary who destroys the evidence crucial to his case." *Swekel*, 119 F.3d at 1262. As discussed above, Defendants' actions rendered ineffective Plaintiffs' ability to seek effective post-conviction relief. *See id.* at 1264; Dkt. 86 at 29.

### B.     The Right to Access to Courts Was Clearly Established in June 1998.

Defendants Marino and Naiman's conduct violated a clearly established constitutional right. An official's conduct is not protected by qualified immunity if, in light of existing law, it was apparent that conduct, when undertaken, constituted a violation of the right at issue. This is true even if the "very action in question" had not then been held to be a constitutional violation.[10]

---

[10] The qualified immunity defense focuses on whether the defendant's conduct violated a clearly established constitutional right, not on whether a defendant believed he would be held civilly liable for his actions. *Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015) (citing *Pearson*, 555 U.S. at 231 ("conduct"); *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) ("conduct"); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("actions");

*Anderson*, 483 U.S. at 640. The question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Defendants' own subjective views on the legality of their actions are "essentially irrelevant." *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997).

Here, the right of access to courts has been clearly established in this Circuit since at least 1997. In *Swekel*, the Sixth Circuit held, "if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts." 119 F.3d at 1262. *Swekel* relied on earlier Supreme Court cases. It held that the right of access to courts "finds support in several provisions of the Constitution, including: the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, the First Amendment, and the Privileges and Immunities Clause of Article IV." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Turner v. Safley*, 482 U.S. 78, 84 (1987); and *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907), among other cases); *see also Bounds v. Smith*, 430 U.S. 817, 822 (1977) (judicial access must be "adequate, effective, and meaningful"); *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986) ("[i]t is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution).

Defendants argue that "there was no clearly established law in 1998 suggesting that a prosecutor's failure to disclose exculpatory evidence violated a constitutionally protected right of access to the courts." Dkt. 87 at 21. But, as discussed above, Plaintiffs' denial of access to courts claim does not require proving that Defendants knew that there were exculpatory police reports in the file. Rather, Plaintiffs need only show that Defendants took obstructive actions, which they

---

*Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) ("actions"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("conduct"); *Miller v. Maddox*, 866 F.3d 386, 395 (6th Cir. 2017) ("actions"); *Spurlock*, 167 F.3d at 1005–06 ("actions").

did. Naiman did not want the police reports disclosed to the Plaintiffs in the event that they might try to use them in any post-conviction petitions. Dkt. 79-50 at 114, 121–22. Whether or not that was Plaintiffs' purpose, and whether they could have used any police reports obtained through a public records request in a post-conviction petition was simply not within her authority or jurisdiction to determine. *See* Dkt. 79-55 at 4–5. And, Naiman's claim that Plaintiffs *could not have used* the police reports in a post-conviction petition while *Steckman* was the law is untrue. They did so in this very case in 2013, when *Steckman* was still good law. *Steckman* only addressed whether a respondent had a duty to produce certain documents, not whether information in the documents would be admissible at a hearing. *Larkins*, 2003 WL 22510579, *3. *Larkins* held that a post-conviction petitioner "lawfully obtained the police records" through a public records request submitted by a third party, and "[c]ontrary to the State's assertion, the trial court properly allowed Larkins to rely on information contained in the police records which constituted exculpatory evidence. Furthermore, the trial court correctly recognized that "'exculpatory evidence is always discoverable.'" *Id.* (citing *Brady v. Maryland*, 373 U.S. 83 (1963); *State v. Johnson*, 529 N.E.2d 898 (Ohio 1988), syllabus paragraph four). Furthermore, even if there is not a prior case where prosecutors directed another governmental entity to deny a records request to a requestor, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court deny Defendants Naiman and Marino's motion as to Plaintiffs' denial of access to courts claim (Count III). Plaintiffs do not object to dismissal of other claims against the County Defendants.[11]

---

[11] Plaintiffs' indemnification claim (Count XI) should only be dismissed without prejudice as premature.

Respectfully submitted,

s/ Elizabeth Wang

| | |
|---|---|
| Michael Kanovitz | Elizabeth Wang |
| LOEVY & LOEVY | LOEVY & LOEVY |
| 311 N. Aberdeen St., 3rd Fl. | 2060 Broadway, Ste. 460 |
| Chicago, IL 60607 | Boulder, CO 80302 |
| O: (312) 243-5900 | O: (720) 328-5642 |
| mike@loevy.com | elizabethw@loevy.com |

*Counsel for Plaintiffs Derrick Wheatt and Laurese Glover*

s/ Michael B. Pasternak

| | |
|---|---|
| Michael B. Pasternak | Brett Murner |
| Park Center II, Suite 411 | 208 North Main Street |
| 3681 South Green Road | Wellington, OH  44090 |
| Beachwood, OH  44122 | O: (440) 647-9505 |
| O: (216) 360-8500 | bmurner@yahoo.com |
| Mpasternak1@msn.com | |

*Counsel for Plaintiff Eugene* Johnson

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that on October 2, 2017, I served the foregoing Plaintiffs' Joint Response to Defendants Cuyahoga County, Deborah Naiman, and Carmen Marino's Motion for Summary Judgment, to all counsel of record via electronic service by filing it on CM/ECF.

s/ Elizabeth Wang
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum complies with the 20-page limitation for dispositive motion memoranda in a Standard Track case.

s/ Elizabeth Wang

---

*Ayers v. City of Cleveland*, 2013 WL 775359, at *16 (N.D. Ohio Feb. 25, 2013) (Gwin, J.).