IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK WHEATT and LAURESE GLOVER, | ) ) ) | No. 1:17-CV-377 No. 1:17-CV-611 (consolidated) |
| Plaintiffs | ) ) | Judge James S. Gwin |
| v. | ) ) ) ) | **Plaintiffs' Joint Reply in support of Joint Motion for Partial Summary Judgment against Defendant Naiman** |
| CITY OF EAST CLEVELAND, *et al.* | ) | |

Now come Plaintiffs, Derrick Wheatt, Laurese Glover, and Eugene Johnson, through their respective counsel, and hereby file this Joint Reply in support of their Joint Motion for Partial Summary Judgment against Defendant Naiman ("Joint Motion"). In her Response to Plaintiffs' Joint Motion, Defendant Naiman argues that she is entitled to absolute, and in the alternative, qualified immunity. Dkt. 95 ("Response"). For the reasons Plaintiffs explained in their Response in Opposition to the County Defendants' Motion for Summary Judgment, Dkt. 96, Defendants Naiman (and Marino) are not entitled to absolute or qualified immunity. Plaintiffs incorporate by reference those arguments herein. Plaintiffs' Memorandum of Law is attached:

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

MEMORANDUM OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Defendants' Objections To Plaintiffs' Exhibits 38 And 59 Have No Merit. . . . . . . . . . . 2

II.     Defendant Naiman Is Not Entitled To Absolute Immunity. . . . . . . . . . . . . . . . . . . . . . 3

III.    Defendant Naiman Is Not Entitled To Qualified Immunity On Plaintiffs' Denial
        Of Access To Courts Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      There Is No Genuine Dispute of Material Fact that Defendant Naiman
                Committed a Constitutional Violation of Denial of Access to Courts. . . . . . . . . 7

                1.      Non-frivolous underlying Fourteenth Amendment due process claim. . . . 7

                2.      Naiman took obstructive actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                3.      Substantial prejudice to the underlying Fourteenth Amendment claim
                        that cannot be remedied by state court. . . . . . . . . . . . . . . . . . . . . . . . . . 16

                4.      Request for relief which Plaintiffs would have sought on the
                        underlying claim that is now otherwise unattainable. . . . . . . . . . . . . . . . 17

        B.      The Right to Access to Court Was Clearly Established in June 1998. . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987) .............................................................. 18

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................................................................... 20

*B&S Transport, Inc. v. Bridgestone Ams. Tire Ops.*, LLC, 171 F. Supp. 3d 669 (N.D. Ohio 2016) ............................................................................................................ 2

*Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015) .................................................... 18, 20

*Bounds v. Smith*, 430 U.S. 817 (1977) ....................................................... 7, 10, 19, 20

*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................... 15

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ........................................................... 4, 6

*Burns v. Reed*, 500 U.S. 478 (1993) .............................................................................. 4

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ........................... 19

*Chambers v. Baltimore & O.R.R.*, 207 U.S. 142 (1907) ................................................. 19

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004) ............................ 2

*Christopher v. Harbury*, 536 U.S. 403 (2002) ...................................................... 7, 8, 20

*Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997) .......................................................... 18

*Ex parte Hull*, 312 U.S. 546 (1941) ............................................................................. 8

*Filler v. Kellett*, 859 F.3d 148 (1st Cir. 2017) .............................................................. 2

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013) ....................................... 7, 10, 20

*Ganesh v. United States,* 658 F. App'x 217 (6th Cir. 2016) ......................................... 2

*Gilmore v. Lynch*, 319 F. Supp. 105 (N.D. Cal. 1970) ................................................. 8

*Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953 (6th Cir. 1986) .................... 19

*Glover v. Johnson*, 75 F.3d 264 (6th Cir. 1996) ........................................................... 8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ................................................................ 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................................. 18

*Johnson v. Avery*, 393 U.S. 483 (1969) ............................................................................ 19

*Knop v. Johnson*, 977 F.3d 996 (6th Cir. 1992) ............................................................... 20

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................................ 16

*Park v. Coakley*, 2015 WL 413814 (N.D. Ohio Jan. 30, 2015) ................................... 8, 14

*Pennsylvania v. Finley*, 481 U.S. 551 (1987) .............................................................. 8, 19

*Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007) ................ 16

*Pray v. City of Sandusky*, 49 F.3d 1154 (6th Cir. 1995) ................................................. 18

*Saucier v. Katz*, 533 U.S. 194 (2001). ............................................................................. 18

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003) ...................................................... 4

*State ex rel. Caster v. Columbus*, 2016 WL 7448756 (Ohio Dec. 28, 2016) ................... 15

*State ex rel. Steckman v. Jackson*, 639 N.E.2d 83 (Ohio 1994) ....................... 13, 14, 15

*State v. Calhoun*, 714 N.E.2d 905 (Ohio 1999) ............................................................... 8

*State v. Larkins*, 2006 WL 60778 (Ohio Ct. App. Jan. 12, 2006) .................................. 15

*State v. Milanovich*, 325 N.E.2d 540 (Ohio 1975) ........................................................... 8

*State v. Russell*, 2011 WL 494744 (Ohio Ct. App. Feb. 10, 2011) ................................. 15

*Swekel v. City of River Rouge,* 119 F.3d 1259 (6th Cir. 1997) ........................... 10, 18, 19

*Taft Broadcasting Co. v. United States*, 929 F.2d 240 (6th Cir. 1991) ............................. 1

*Thomas v. Arnold*, 696 F. Supp. 2d 882 (N.D. Ohio Mar. 18, 2010) ............................... 2

*Turner v. Safley*, 482 U.S. 78 (1987) .............................................................................. 19

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ...................................................................... 19

*Younger v. Gilmore*, 404 U.S. 15 (1971) .......................................................................... 8

**Statutes**

O.R.C. § 149.351(A)............................................................................................... 9

O.R.C. § 149.43 ................................................................................................. 4, 15

O.R.C. § 309.08 ................................................................................................. 6, 10

O.R.C. § 309.09 ..................................................................................................... 10

**Rules**

Fed. R. Civ. P. 56.................................................................................................... 2

Fed. R. Civ. P. 56(c)(2)........................................................................................... 2

## MEMORANDUM OF LAW

Before turning to the substance of Defendant Naiman's arguments in her Response, Plaintiffs make an initial observation. In Plaintiffs' view, there are no genuine disputes of material fact relating to absolute or qualified immunity that warrant a trial against Naiman, because no reasonable jury could resolve any factual questions in Naiman's favor. In other words, with respect to absolute immunity, there is no genuine dispute that Naiman was not acting as an advocate because she had no jurisdiction over and no colorable claim of authority to interfere with the City of East Cleveland's response to a public records request; Naiman was not acting as an advocate because there were no ongoing adversarial proceedings; and to the extent Naiman's letter is construed as "legal advice," she was not acting as an advocate in giving this "advice." Likewise, with respect to qualified immunity, there is no genuine dispute of material fact on each of the elements relating to Plaintiffs' denial of access to courts claim, and no reasonable jury could find in Naiman's favor on the only genuinely disputed element—whether she engaged in obstructive actions.

In Defendant Naiman's Response, she characterizes the facts in the manner most favorable to her—which she may do as the non-movant when Plaintiffs are moving for summary judgment against her (just as Plaintiffs may do as non-movants in responding to Defendants' motions for summary judgment). *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). However, if this Court were to find that there are any genuine disputes of material fact pertaining to the absolute or qualified immunity questions, then the result would not be—as Naiman suggests in her Response[1]—judgment in her favor. The result (when the Court is considering *Plaintiffs'* motion against Naiman) would be a jury trial. A jury would have to

---

[1] *See* Dkt. 95 at 24 (arguing that "qualified immunity should *preclude* plaintiffs' denial of access claim against defendant Naiman") (emphasis added).

resolve any genuine issues of material fact. Rule 56 does not allow a *non-movant* to obtain

judgment in her favor. *See* Fed. R. Civ. P. 56. (Similarly, when evaluating Defendant Naiman

and Marino's motion for summary judgment, if the Court were to find that there are any genuine

disputes of material fact, then those disputes must be resolved by a jury.[2])

    As discussed below, however, even construing the evidence in Naiman's favor, there is

no genuine dispute of material fact for trial. No reasonable jury could decide in her favor.

## ARGUMENT

## I.    Defendants' Objections To Plaintiffs' Exhibits 38 And 59 Have No Merit.

    Defendant Naiman objects to Plaintiffs' Exhibits 38 and 59 as hearsay. *See* Dkt. 95 at 6.

Exhibit 38 is a transcript of the January 2015 motion for new trial hearing and Exhibit 59 is the

Court of Common Pleas' opinion and order granting Plaintiffs a new trial. Dkts. 79-38, 79-59.

Naiman is incorrect, because testimony given by the witnesses at the motion for new trial

hearing, including Michael Horn and Richard Drucker, is admissible on summary judgment.

Rule 56(c)(2) only allows a party to "object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2);

*Ganesh v. United States*, 658 F. App'x 217, 220 (6th Cir. 2016) (quoting the Rule). Clearly,

these witnesses (Horn and Drucker) can testify at trial, and their testimony from the 2015 hearing

is evidence of what they would or could testify to under oath at trial. "[T]he objection

contemplated by [the Rule] is not that the material 'has not' been submitted in admissible form,

but that it 'cannot' be." *B&S Transport, Inc. v. Bridgestone Ams. Tire Ops.*, LLC, 171 F. Supp.

3d 669, 678–79 (N.D. Ohio 2016).

---

[2] Questions of absolute immunity rarely turn on questions of fact. *See Filler v. Kellett*, 859 F.3d 148, 152 (1st Cir. 2017). Question of qualified immunity more frequently turn on questions of fact, and courts often deny qualified immunity at the summary judgment stage because of disputed questions of fact. *See, e.g., Thomas v. Arnold*, 696 F. Supp. 2d 882, 885 (N.D. Ohio Mar. 18, 2010) (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)).

Defendant Naiman's objection to Exhibit 59 is also without merit. Plaintiffs cite the court's opinion as evidence of element (1) of their denial of access to courts claim—that they had a non-frivolous underlying claim that they could have litigated earlier. Plaintiffs are not seeking to use the court's opinion or factual findings as collateral estoppel, as Defendant claims. *See* Dkt. 95 at 6, 20. Moreover, the court's findings about the Naiman/Marino letter are persuasive evidence of what a reasonable jury could conclude about what Naiman and Marino's actions. *See* Dkt. 79-59 at WG14600–01.

## II.    Defendant Naiman Is Not Entitled To Absolute Immunity.

Plaintiffs incorporate by reference the arguments made on this issue in their Response to the Cuyahoga County Defendants' Motion for Summary Judgment. *See* Dkt. 96 at 8–21.[3] In sum, Defendant Naiman is not entitled to absolute immunity because she was not acting as an advocate for the State at the time she sent her June 24, 1998 letter to the City of East Cleveland. First, she had no jurisdiction over and no colorable claim of authority to interfere with the City's response to a public records request. *Id.* at 9–13. Second, Naiman was not acting as an advocate for the State because there were no ongoing adversarial proceedings. *Id.* at 13–15. Naiman does not address the Supreme Court and Sixth Circuit's binding guidance on the meaning of "ongoing adversarial proceedings" for purposes of determining absolute immunity. There is no dispute about the fact that there were no ongoing adversarial proceedings because Plaintiffs' convictions were final and direct appeals completed. *Id.* at 14. Naiman even admitted that she knew the conviction was final and the appeals had been completed. Dkt. 79-50 (Naiman Dep.) at 48. Third, even if Naiman's letter were construed as "legal advice" to the City, Naiman was not

---

[3] Page citations to depositions and transcripts are to the page number of the deposition or transcript. Page citations to other docket entries are to the page number of the docket entry (e.g., "1 of 10") in the file stamp at the top of the page.

3

acting as an advocate in giving this "advice." Dkt. 96 at 15–16. Plaintiffs further respond to Naiman's arguments in her Response as follows:

First, Naiman claims that her motive in sending the letter was to "protect the integrity of the file" because this was a case that the County had jurisdiction over because it had prosecuted the case. Dkt. 95 at 9. But the case was *over*. The conviction was final, the appeals were completed, and none of the Plaintiffs had filed any post-conviction petition or motion for new trial between the completion of the appeals and June 1998. Dkt. 79-44 (Glover Docket), at 8; Dkt. 79-45 (Wheatt Docket) at 9; Dkt. 79-46 (Johnson Docket) at 10. Naiman knew this. Dkt. 79-50 at 48. Although Naiman thought of herself as an advocate for the State because she *anticipated* that the Plaintiffs might bring post-conviction petitions,[4] that is not the test under well-established Supreme Court and Sixth Circuit law. *See* Dkt. 96 at 13–15. Naiman does not cite any cases for her position. Dkt. 95 at 11. Naiman's personal, subjective opinion that she wrote the letter "from the perspective of an advocate whose office would in all likelihood have to answer and defend against those [anticipated] post-conviction proceedings," *id.* at 11, does not give her absolute immunity. *See Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003). Absolute immunity has never been viewed that expansively. *See Burns v. Reed*, 500 U.S. 478, 495 (1993). As the Supreme Court has explained, prosecutors are not entitled to absolute immunity simply because they do something as a prosecutor. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). There was no judicial phase of the criminal proceedings at the time, and she was never involved in any aspect of the case, whether pretrial, at trial, during appeal, or in the post-conviction proceedings that occurred after 1998.

---

[4] Moreover, according to Plaintiffs' expert Michael O'Shea, governmental entities are not even allowed to ask what the purpose of a public records request is when determining how to respond. Dkt. 79-55 (O'Shea Report) at 5 (citing O.R.C. § 149.43).

Second, even if Naiman's motives were relevant to the absolute immunity inquiry, the idea that she was merely trying to get a copy of the police file for the Cuyahoga County Prosecutor's Office ("CCPO") and trying to "protect the integrity" of the file "for safekeeping" is totally unsupported by the evidence. She claims that she wanted the "dust to settle and people to figure out what it is they were going to do," Dkt. 79-50 at 42, but when asked *who*, exactly, was going to decide "what to do," after she had ordered the City to turn over the entire file and all copies, she did not know. *Id.* at 60–61, 81. No reasonable jury could find that Naiman was trying to "protect the integrity of the file," when the CCPO would already have gotten a copy of the file when they were prosecuting the case during trial. Dkt. 79-52 (Marino Dep.) at 53 ("We're supposed to get one copy of everything they have."); *see also id.* at 42, 54. When Marino was asked:

> Q. So what reason would the county have to request the original file from the city of East Cleveland … when the appeals have already been exhausted? Explain that to me.
> A. If we already have the file?
> Q. Yeah.
> A. **There would be no reason to it. I never requested files from a city because I assumed that we got everything that they have**. …
> Q. Right. In this case the trial had occurred, the appeals have been exhausted, the direct appeals have been exhausted. … You would expect … there's nothing in the city file that the county would need at that point?
> A. If they've sent us everything. I'm assuming everything was sent down.

*Id.* at 43–44 (emphasis added). Furthermore, as both Naiman and Marino admitted, how a city police department decides to maintain its file is a different question from how a prosecutor's office keeps *its* file for the prosecution of a case. *Id.* at 40–41. Marino stated, "How they keep their records in the city of … East Cleveland … may be different than the way we keep records. Our records are kept in the case file. **We don't keep all of these documents for cities.**" *Id.* at 41. The fact that the County had jurisdiction to prosecute the felony case arising out of East Cleveland gave it the authority and jurisdiction to manage the *County's own file* on the

5

prosecution. But that did not give the County jurisdiction over *the City's file* or how the City should respond to a public records request for the file after the conclusion of the criminal proceedings. Naiman's Response makes it sound as if what she did was routine. Far from it. Both Naiman and Marino admitted that they had never, in their combined 58 years of working at the CCPO, directed another municipality to turn over an original police file and all copies to the CCPO, even when there was the possibility of post-conviction litigation. Dkt. 79-50 at 66, 68, 94, 96; Dkt. 79-52 at 44, 55–56. Nor had Naiman ever heard of another prosecutor doing anything similar. Dkt. 79-50 at 101. Naiman also admitted that it was not a practice of the CCPO to direct municipality on how to respond to public records requests, and that it was not a practice of the CCPO to tell municipalities to turn over their files to the CCPO for "safekeeping" during the pendency of any potential post-conviction litigation. *Id.* at 67–68. Naiman cites no facts or legal authority for her argument otherwise. Ohio law clearly defines the scope of a county prosecutor's jurisdiction, and Naiman's actions do not fall within it. O.R.C. §§ 309.08, 309.09.

Finally, Naiman characterizes her actions as absolutely immune because she was obtaining police reports "to be used as evidence in judicial proceedings." Dkt. 95 at 11. But this characterization does not help her. The gathering of evidence is clearly an investigative function, not a prosecutorial one. *See Buckley*, 509 U.S. at 273.

## III.   Defendant Naiman Is Not Entitled To Qualified Immunity On Plaintiffs' Denial Of Access To Courts Claim.

Even construing the facts in the light most favorable to Defendant Naiman, she has not pointed to any genuine dispute of material fact that would allow a reasonable jury to conclude that she did not violate Plaintiffs' constitutional right to denial of access to courts. Nor has she shown that the law was not clearly established in 1998. Naiman is not entitled to qualified immunity, for the reasons discussed below.

6

### A. There Is No Genuine Dispute of Material Fact that Defendant Naiman Committed a Constitutional Violation of Denial of Access to Courts.

In order to prevail on this claim, Plaintiffs must show: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable. *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). Plaintiffs incorporate by reference their arguments from their Joint Motion on the merits of their denial of access to courts claim. Dkt. 86 at 26–29.

### 1. Non-frivolous underlying Fourteenth Amendment due process claim

Plaintiffs clearly had a non-frivolous underlying claim: the underlying claim upon which Plaintiffs won a new trial and release from prison in 2015 was the Fourteenth Amendment due process (*Brady*) violation caused by the withholding of the exculpatory police reports. *See* Dkt. 79-59; Dkt. 79-60 (5/5/16 Opinion) at WG14263–75. This underlying due process claim is non-frivolous because Plaintiffs prevailed on it, albeit 17 years later than they would have if they had received the police file in 1998, when they first requested it. Defendant Naiman's arguments otherwise have no merit. She argues that *Christopher v. Harbury*, 536 U.S. 403 (2002), does not contemplate or include "criminal post-conviction relief" as a cause of action that was lost. Dkt. 95 at 14. But nothing in *Christopher* that even remotely suggests that. True, the facts in *Christopher* concerned a civil cause of action that was lost. But the Court's discussion of a denial of access to courts claim is quite broad: backward-looking cases cover claims that officials "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or *the loss of an opportunity to seek some particular order of relief* …." 536 U.S. at 414 (emphasis added). It is well-established that a denial of access to courts claim includes prisoners seeking post-conviction relief. *See, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("it is now

7

established beyond doubt that prisoners have a constitutional right of access to the courts. This Court recognized that right more than 35 years ago when it struck down a regulation prohibiting state prisoners from filing petitions for habeas corpus unless they were found 'properly drawn' by the 'legal investigator' for the parole board. … We held this violated the principle that 'the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus.'") (quoting *Ex parte Hull*, 312 U.S. 546 (1941)); *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996) ("Access to the courts … encompasses all the means a defendant might require to ensure a fair hearing from the judiciary on all charges brought against him or grievances alleged by him.") (quoting *Gilmore v. Lynch*, 319 F. Supp. 105, 110 (N.D. Cal. 1970), *aff'd sub nom. Younger v. Gilmore*, 404 U.S. 15 (1971) (per curiam)).[5]

Furthermore, post-conviction and habeas proceedings are generally civil in nature. *See Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987) (federal habeas proceedings are civil in nature); *State v. Calhoun*, 714 N.E.2d 905, 909 (Ohio 1999) ("a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment."); *State v. Milanovich*, 325 N.E.2d 540, 542 (Ohio 1975). So, to the extent Naiman is arguing that a denial of access claim must be civil in nature (which is wrong anyway, as discussed above), collateral attacks on convictions *are* civil.

In sum, in both forward- and backward-looking cases, plaintiffs need only "identify a 'nonfrivolous,' 'arguable' underlying claim," and the "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher*, 536 U.S. at 415. Plaintiffs have done that.

---

[5] Notably, Defendant Naiman herself cites a case, *Park v. Coakley*, 2015 WL 413814, at *3 (N.D. Ohio Jan. 30, 2015), that recognizes that a plaintiff can prove a denial to access of courts claim if he "suffered an actual injury to a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action."

Naiman also points to the specific facts in *Christopher* to try to distinguish the case. But the problem with Harbury's denial of access claim was that she did not identify her non-frivolous, arguable underlying claim or cause of action. All she alleged in the complaint (her complaint had been dismissed at the motion-to-dismiss stage) was that deception on the part of government officials "'foreclosed [her] from effectively seeking adequate legal redress.'" *Id.* at 418; *see also id.* at 409 (describing similarly vague allegations in her complaint). Her claim failed because she did not say what her underlying claim that she was seeking to vindicate was. This is in stark contrast to Plaintiffs' evidence. Plaintiffs have identified, with admissible evidence that is not subject to dispute, a specific, nonfrivolous underlying claim or cause of action—the claim that their due process rights were violated when exculpatory police reports relating to the Petty brothers and Derek Bufford with withheld from them prior to trial. *See* Dkts. 79-57 (Mot. for New Trial filed by Wheatt and Glover), 79-58 (Mot. for New Trial filed by Johnson), 79-59, 79-60. Thus, Defendant Naiman's argument that Plaintiffs have not satisfied the first prong of their denial of access to courts claim should be rejected.

### 2.      Naiman took obstructive actions

Naiman admitted taking obstructive actions to prevent Plaintiffs from obtaining the East Cleveland police file. She told the City that release of the file would be in "violation of the law" when it would not, and she directed the City to turn over the file and all copies, even though that violated the Ohio Records Retention Act. *See* O.R.C. § 149.351(A). Naiman admitted that she did this because she did not want the City to release the file, and she believed that the reason the Plaintiffs wanted the file was for use in future post-conviction proceedings. According to Marino as well as Plaintiffs' expert Michael O'Shea, it would not have been a violation of the law for the City to release the file, and Naiman had no legal authority to direct the City's response to a

9

public records request in the first place. Indeed, Ohio law did not provide Naiman with the authority to direct the City's response to a public records act request directed to the City of East Cleveland at all. *See* O.R.C. §§ 309.08, 309.09; Dkt. 96 at 10–11.

Naiman claims that she did not take any obstructive actions because she did not know anything in the file was exculpatory. But she has cited *no authority* for the position that that (if true) would render her actions not obstructive. The cases clearly state that a plaintiff need show "obstructive actions" by a state actor. *Flagg*, 715 F.3d at 174 (citing *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262–63 (6th Cir. 1997)). Naiman *admitted* in her deposition that she wanted to prevent the Plaintiffs from obtaining anything that they could possibly use to file for post-conviction relief. This is the very definition of an obstructive action—she was obstructing the Plaintiffs by preventing them from getting the police file, which the City would have disclosed to them *but for* Naiman's interference. In her words, she wanted to "get[] [the file] out of dodge." Dkt. 79-50 at 81. And, she directed the City to turn over the file and all copies because she did not want the City to have *any copy* to turn over, should they disobey her unlawful directive. *Id.* at 42–43, 62–63. It is well-established that prisoners have a constitutional right to meaningful, adequate, and effective access to courts, and any reasonable prosecutor would have known this. *Bounds*, 430 U.S. 821–22.

But even if the Court were to find that Plaintiffs must show that Naiman knew of the exculpatory evidence in the police file, the only reasonable inference a jury could make from the evidence is that she did. What the evidence shows is that the Defendants in the ECPD knew that they had suppressed the exculpatory police reports during trial and withheld them from the trial prosecutor, Michael Horn. Thus, when the Defendant Officers realized that the Mayor was about to release the police file and expose their suppression of evidence, they called Naiman—a

10

prosecutor who, by her own admission, had a close relationship with local police and was willing to take their calls 24/7. Dkt. 79-50 at 34–35. Naiman had nothing to do with the Hudson case, either before, during, or after the case was tried. Nor did she have anything to do with responding to public records requests on behalf of the CCPO or the City or anyone else. This is the only reasonable inference for why the ECPD called Naiman instead of Horn. And the pattern of involving people who had no business being involved continued with Naiman. Instead of contacting either her direct supervisor or the head of the major trial division about the call from the ECPD, Naiman went to Marino, a prosecutor who had a reputation for withholding exculpatory evidence, to co-sign her letter. Dkt. 79-50 at 69–70. For his part, Defendant Dunn tried to distance himself from the letter at his deposition. He claimed not to have any idea why Naiman directed the letter to his attention. Dkt. 79-62 (Dunn Dep.) at 22–25, 29–34. At the same time, however, he admitted in a sworn interrogatory answer that he did deliver the file, and that if Defendant Teel had told him to do so, he would have done it. Dkt. 79-62 at 37; Dkt. 79-53 at 11; Dkt. 79-54. The evidence shows that Defendant Teel knew of the public records request and the Naiman/Marino letter because he faxed it to the requestor. Dkt. 93-6. The reasonable inference is that Defendant Teel, who was involved in the underlying investigation and knew of the exculpatory evidence that had been withheld, instructed Dunn to call Naiman about the exculpatory police reports.[6]

Naiman claims that she was not trying to hide the file because her letter was eventually sent to the requestor of the records. Dkt. 95 at 16. But the cited page of her deposition does not support her assertion that she was being open and transparent. On the cited page, she testified:

---

[6] Even if the Court found the evidence insufficient for *judgment* in Plaintiffs' favor, the facts are at least sufficient for a reasonable jury to find in Plaintiffs' favor such that a trial is required on the denial of access claim against Defendant Naiman.

> Q. Are you aware that the deputy safety director of the city of East Cleveland, Charles Teel, then faxed your letter to the requester?
>
> A. No. I had no idea.
>
> Q. Did you ever have any conversations with Teel about it?
>
> A. I don't—not that I recall. …
>
> Q. Were you aware that East Cleveland would send your letter to the requester as a response to their public records request?
>
> A. Nope.

Dkt. 80-1 (Naiman Dep.) at 86–87 (cited in Dkt. 95 at 16). Defendant Teel faxed Naiman's letter three weeks later to James Avery, an advocate who had been advocating for Plaintiffs. Dkt. 93-6 (Teel Fax). But Teel did not do that because Naiman told him or asked him to. She did not know that he was going to do that, and she had no conversation with him about that. There is nothing in the record *at all* that reflects Naiman's professed desire to be open and transparent, as opposed to trying to secrete the police file in the CCPO. For instance, Naiman did not discuss her letter with the Mayor, or the Law Director. Dkt. 79-50 at 66. What the record reflects is that she wanted to get the original file and all copies out of the City of East Cleveland. Dkt. 79-51 (6/24/98 Ltr.). The fact that the City kept a copy of the file (whether purposefully or inadvertently) should not inure to her benefit. Naiman did not know that the City would keep a copy of the file. What she wanted was for the City to obey her directive. And although Naiman now wants to characterize her letter as only a request, and that the City could have disregarded it, the letter speaks for itself. It is strongly worded and explicitly warns the City that "any release could constitute a wilful [sic] violation of the law." *Id.* It also concludes with, "Thank you for your anticipated cooperation in this matter." *Id.* Naiman used her position as a prosecutor (with the imprimatur of the First Assistant, Carmen Marino, to whom she went instead of her own direct supervisor for an additional signature) to threaten the City into giving her the file. If it were not for the fact that the City happened to keep a copy of the file, and Plaintiffs' persistence

12

in continuing to seek post-conviction relief after years of being denied, Plaintiffs would never have been released from prison.

Naiman also claims that she was simply trying to enforce compliance with *State ex rel. Steckman v. Jackson*, 639 N.E.2d 83 (Ohio 1994). Dkt. 95 at 16. But, as Plaintffs have explained, *Steckman* is irrelevant when the City *wanted to disclose the records*. While *Steckman* may have been a basis for the City to withhold the records if it wanted to, it did not want to. *See* Dkt. 79-47 (Onunwor Aff.). No reasonable prosecutor could have believed that *Steckman* prevented the City from disclosing the file if it wanted to do so. What *Naiman* wanted the City to do with its own file does not matter, because it was not her (or the County's) file.

Furthermore, no reasonable jury could find her favor on this. First, this was not within her authority or jurisdiction. This was not a "criminal discovery dispute." *Id.* It was a public records request, and it was a public records request to the City, not even to the CCPO. If the City wanted to deny the records request on the basis of *Steckman*, it could have. But it didn't, and it didn't want to, because the Mayor was planning to release the file. Dkt. 79-47 ¶ 5. By Naiman's own admission, she *knew* that the Mayor was planning to release the file, because Dunn told her that on the phone. She wanted to prevent that from happening, and she was successful. Onunwor states that the only reason he did not release the file was because of Naiman's letter, which, on its face, is threatening in tone. *Id.* ¶¶ 6–8. Onunwor also avers, "I did what I could to try to re-open the case and come to the truth about who killed Clifton Hudson, but the County would not allow it." *Id.* ¶ 11. This evidence is undisputed by Naiman.

Second, no reasonable official could have made the same mistake that Naiman did, as she argues. *See* Dkt. 95 at 18. No reasonable prosecutor in Naiman's position could have believed that she had the authority to tell the City what to do in response to a public records request. Her

13

letter was not simply the giving of advice. She did not simply make a phone call to the Mayor or the Law Director to give them her opinion about whether or not they should disclose the file under the law. She wrote a letter that "directed" the City to turn over the file and all copies, warned the City that release of the file would be, in her and First Assistant Marino's opinion, a "*wilful* violation of the law," and then ended it with her expectation of compliance. *See* Dkt. 79-51. Notably, when Michael Horn was asked at the motion for new trial hearing what the basis of authority was for writing the letter was, he could not say. Dkt. 79-38 at 129–30. Nor could counsel for the State. *Id.* at 138–39.

Finding that this was obstructive action on Naiman's part would not "amount[] to strict liability," as she claims. Dkt. 95 at 19. She had the intention to prevent not only the disclosure of the police file, but the disclosure of the police file *because she did not want Plaintiffs to potentially use it in a post-conviction filing*. Thus, the case cited by Naiman, *Park*, 2015 WL 413814, at *4, is distinguishable. In *Park*, a prisoner alleged that he had been denied access to courts because the officer failed to respond to the prisoner's request to staff within the time requested. *Id.* The court found that "[n]egligence does not suffice to state an access to the courts violation." *Id.* There was only evidence of negligence because "There is no mention of needing legal material to file a timely petition with the Supreme Court." *Id*. Here, Naiman admits that she was trying to prevent the City from disclosing the police file so that Plaintiffs would not be able to use it in court. Her actions were intentional, not merely negligent or accidental.

Third, *Steckman* only barred records that were not otherwise discoverable under then-existing Criminal Rule 16. *Steckman*, 639 N.E.2d at 85 (providing, in syllabus paragraph 5, "*[e]xcept as required by Crim. R. 16*, information assembled by law enforcement officials in connection with a probable or pending criminal proceeding is, by the work product exception

14

found in R.C. 149.43(A)(2)(c), excepted from required release as said information is compiled in anticipation of litigation.") (emphasis added). Evidence that is favorable to the defense, or exculpatory evidence, was discoverable under Rule 16. Indeed, Rule 16 could not have required otherwise, since this was (and is) a constitutional requirement. *Brady v. Maryland*, 373 U.S. 83 (1963); *State v. Larkins*, 2003 WL 22510579, at *3 (Ohio Ct. App. Nov. 6, 2003) (holding that post-conviction petitioner could use police records obtained through public records request in support of petition, and reaffirming that "exculpatory evidence is always discoverable"); *State v. Larkins*, 2006 WL 60778 (Ohio Ct. App. Jan. 12, 2006); *see also State v. Russell*, 2011 WL 494744, at *4 (Ohio Ct. App. Feb. 10, 2011) (same). The rationale of *Steckman* was that a post-conviction petitioner should not be able to obtain *more* information on (potential) retrial than they would have been entitled to in their original trials. *Steckman*, 639 N.E.2d at 92–93.

Thus, not every piece of paper in a police file would be exempt from disclosure. Items discoverable under Rule 16, as well as original offense and incident reports were not exempt under O.R.C. § 149.43. And, since Naiman was intervening in the public request records directed to the City and telling the City that the file was not public record, she had the obligation to individually review what was in the file in order to determine which documents, if any, would be subject to disclosure. *See State ex rel. Caster v. Columbus*, 2016 WL 7448756, at *12 (Ohio Dec. 28, 2016). Yet, Naiman claims that she did not review what was in the file. Dkt. 79-50 at 64–65. No reasonable prosecutor would have sent the letter that Naiman sent without reviewing the file or knowing what was in it, because even *Steckman* does not exempt disclosure of everything that could possibly be in a police file.

Therefore, there are only two possible inferences that reasonable jury could make given this evidence. First, that Naiman sent a letter claiming that everything in the file was exempt

15

from public records to prevent Plaintiffs from getting it even though she knew that even under the 1998 version of Rule 16, there were certain documents that criminal defendants were entitled to have copies of. *See* Dkt. 79-50 at 65. Second, that Naiman knew of the exculpatory evidence in the file, either because she had been told by Dunn or someone else from the ECPD, or because she had reviewed the file (as she would have been required to do in order to reasonably claim that the whole file was exempt from disclosure), and ordered the City to turn it over to the CCPO so prevent Plaintiffs from getting it. Either way, Naiman would not be entitled to qualified immunity because her actions were obstructive and no reasonable official in her position would have done what she did.

Naiman tries to shift blame for the failure to obtain the police file earlier to Plaintiffs' counsel. *See* Dkt. 95 at 16. She argues that they could have challenged the withholding of the file back in 1998. But a constitutional tortfeasor, as is a common law tortfeasor, is responsible for the natural and foreseeable consequences of his or her actions. *Malley v. Briggs*, 475 U.S. 335, 337 (1986) (normal causation principles apply to § 1983 actions); *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) ("[t]raditional tort concepts of causation inform the causation inquiry on a § 1983 claim."). Naiman cannot shift the blame for the natural and foreseeable consequences of her actions to the Plaintiffs or their counsel.

### 3.    Substantial prejudice to the underlying Fourteenth Amendment claim that cannot be remedied by state court

Defendant Naiman's obstructive actions caused substantial prejudice to Plaintiffs' underlying claims for post-conviction relief. Plaintiffs had filed numerous other petitions for post-conviction relief, none of which were successful because they did not have the exculpatory police reports until they were released in 2013. *See* Dkt. 86 at 29. Naiman's argument otherwise misconstrues this element. *See* Dkt. 95 at 21. As this Court previously explained, "the state court

16

cannot remedy this prejudice—Plaintiffs were unsuccessful in pursuing their claims without the exculpatory evidence for seventeen years." Dkt. 40 at 17 n.111.

### 4. Request for relief which Plaintiffs would have sought on the underlying claim that is now otherwise unattainable

Defendant Naiman argues that Plaintiffs have not satisfied the fourth prong of a denial of access to court claim—a request for relief which plaintiff would have sought on the underlying claim and is now otherwise unattainable. *See* Dkt. 95 at 14. Naiman argues that Plaintiffs have brought other federal and state law claims, so this element cannot be met because Plaintiffs can seek relief on other claims. *Id.* But this Court has already rejected a similar argument from the East Cleveland Defendants, when they argued that Plaintiffs could pursue other tort claims. As this Court explained:

> Defendants misunderstand the fourth element. Whether Plaintiffs could pursue other claims against the East Cleveland Defendants is irrelevant. Instead, what matters is whether Plaintiffs now seek relief they were barred from seeking in the past due to Defendant's alleged actions. … In this case, Plaintiffs seek damages to compensate them for seventeen years of lost freedom that Defendants allegedly caused by concealing exculpatory evidence.

Dkt. 40 (Opinion denying EC Defs.' Mot. to Dismiss) at 17. Now, Plaintiffs have presented evidence that supports their allegations from their Complaint. They filed motions for new trial with the exculpatory police reports as quickly as they could after obtaining them. *See* Dkts. 79-56 (Godsey Aff.); 79-57 (Mot. for New Trial filed by Wheatt and Glover), 79-58 (Mot. for New Trial filed by Johnson). They cannot travel back in time to seek their freedom in 1998—seeking damages is now the best substitute. *See* Dkt. 40 at 17.

### B. The Right to Access to Courts Was Clearly Established in June 1998.

In her Response, Defendant Naiman focuses heavily on *her own subjective opinion* of the legality of her own actions. *See* Dkt. 95 at 8–10, 18–19. But, whether Naiman herself believed

her actions to be proper is irrelevant in determining whether she is entitled to qualified immunity. As the Sixth Circuit explained in *Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997), the defendant's "own subjective views on the legality of her … decisions are essentially irrelevant." *Id.* at 458 (citing *Anderson v. Creighton*, 483 U.S. 635 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Pray v. City of Sandusky*, 49 F.3d 1154 (6th Cir. 1995)). The test is an objective one, not a subjective one. *Id.* Thus, the question is whether a "reasonable" official in Naiman's position would have known that her conduct was unlawful in the situation she confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The law can still be clearly established even if the "very action in question" had not then been held to be a constitutional violation. *Anderson*, 483 U.S. at 640. The purpose of the "clearly established" prong of qualified immunity is to ensure that officials are on notice that their alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002). The question is whether the state of the law gave the defendant "fair warning," and "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741; *accord Baynes v. Cleland*, 799 F.3d 600, 612 (6th Cir. 2015) ("the *Hope* Court determined that an action's unlawfulness can be 'clearly established' from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that a court employs.").

Here, Defendant Naiman had "fair warning" that obstructing Plaintiffs' access to the courts would be a violation of their constitutional rights. The right of access to courts has been clearly established in this Circuit since at least 1997 (and long before). In *Swekel*, the Sixth Circuit held, "if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's *state court remedy* ineffective, they have violated his right of access to the courts." 119 F.3d at 1262 (emphasis added). *Swekel* held, "It is beyond dispute that the right of

access to the courts is a fundamental right protected by the Constitution." *Id.* at 1261 (quoting *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986)); *see also Johnson v. Avery*, 393 U.S. 483, 385 (1969) (the right to access to the courts is fundamental). In *Graham*, the Sixth Circuit observed not only that the right of access to courts is "beyond dispute" a "fundamental right," but that the Supreme Court has "found several constitutional bases for this right. 804 F.3d at 959 (citing *Chambers v. Baltimore & O.R.R.*, 207 U.S. 142, 148 (1907) (right of access is a privilege and immunity secured under article IV of the Constitution and the Fourteenth Amendment); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (right of access is one aspect of First Amendment right of petition); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (right of access is founded in the Due Process Clause).) *Swekel* also relied on earlier Supreme Court cases. It found that the right of access to courts "finds support in several provisions of the Constitution, including: the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, the First Amendment, and the Privileges and Immunities Clause of Article IV." *Id.* at 1262 (citing *Wolff*, 418 U.S. at 579; *Finley*, 481 U.S. at 557; *Turner v. Safley*, 482 U.S. 78, 84 (1987); and *Chambers*, 207 U.S. at 148, among other cases). *Swekel* also cited to *Bounds*, 430 U.S. at 822. *Id.*

Nothing in *Swekel* or any of the Supreme Court or Sixth Circuit's other cases limits this right to a civil state court remedy, as Naiman contends. *See* Dkt. 95 a 23. As discussed above, it was well-established before 1998 that a denial of access to courts claim includes prisoners seeking post-conviction relief. *See Bounds*, 430 U.S. at 821.

The well-established case law on prisoners' right to access to courts goes well beyond *Swekel*. In *Bounds v. Smith*, the Supreme Court held that the Constitution requires states to affirmatively assist prisoners in obtaining access to courts for presentation of their claims related

19

to their confinement, and that such access must be adequate, effective, and meaningful. 430 U.S. at 822. In *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992), the Sixth Circuit observed that this basic right of access to courts was "well established" and "the parameters of the doctrine are relatively clear." *Id*. at 999, 1003. Defendant Naiman asks the Court to disregard *Christopher* and *Flagg* because these cases were decided after 1998. But those cases in themselves recognized that the right to access to courts has been recognized for decades. *See Christopher*, 536 U.S. at 415 n.12 (collecting cases); *Flagg*, 715 F.3d at 173.

Defendant Naiman argues that *Swekel* is "readily distinguishable on its facts." Dkt. 95 at 23. But that is not the test for determining whether the constitutional right to access of courts was clearly established. As *Baynes* explained, "[w]hile it is apparent that courts should not define clearly established law at a high level of generality, it is equally apparent that this does not mean that 'a case directly on point' is required." 799 F.3d at 613 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "In fact, under *Hope*, a requirement that a prior case be 'fundamentally' or 'materially' similar to the present case would be too rigid an application of the clearly established inquiry." *Id*. Plaintiffs need not find a prior case with facts exactly like this one. Instead, Defendant Naiman is not protected by qualified immunity here because "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson*, 483 U.S. at 640. No reasonable official in Naiman's position would have acted as she did, in light of clearly established law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the court deny Defendant Naiman's claim of absolute and qualified immunity and grant Plaintiffs' motion for summary judgment against Naiman on their denial of access to courts claim.

20

Respectfully submitted,

s/ Elizabeth Wang

| | |
|---|---|
| Michael Kanovitz | Elizabeth Wang |
| LOEVY & LOEVY | LOEVY & LOEVY |
| 311 N. Aberdeen St., 3rd Fl. | 2060 Broadway, Ste. 460 |
| Chicago, IL 60607 | Boulder, CO 80302 |
| O: (312) 243-5900 | O: (720) 328-5642 |
| mike@loevy.com | elizabethw@loevy.com |

*Counsel for Plaintiffs Derrick Wheatt and Laurese Glover*

s/ Michael B. Pasternak

| | |
|---|---|
| Michael B. Pasternak | Brett Murner |
| Park Center II, Suite 411 | 208 North Main Street |
| 3681 South Green Road | Wellington, OH  44090 |
| Beachwood, OH  44122 | O: (440) 647-9505 |
| O: (216) 360-8500 | bmurner@yahoo.com |
| Mpasternak1@msn.com | |

*Counsel for Plaintiff Eugene* Johnson

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that on October 9, 2017, I served the foregoing Plaintiffs' Joint Reply in support of Joint Motion for Partial Summary Judgment against Defendant Naiman, to all counsel of record via electronic service by filing it on CM/ECF.

s/ Elizabeth Wang
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum complies with the 20-page limitation for dispositive motion memoranda in a Standard Track case.

s/ Elizabeth Wang

21