IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DERRICK WHEATT and LAURESE GLOVER, | ) ) No. 1:17-CV-377 & |
| | ) No. 1:17-CV-611 (consolidated) |
| Plaintiffs | ) |
| v. | ) ) Judge James S. Gwin |
| CITY OF EAST CLEVELAND, *et al*. | ) ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION *IN LIMINE* NO. 1:**
**Barring Defendants from Calling Witnesses Not Timely Disclosed and**
**Barring All References to Documents Not Timely Disclosed**

Plaintiffs Derrick Wheatt, Laurese Glover, and Eugene Johnson, by and through their attorneys, respectfully request that the Court grant their Motion *in Limine*, as follows:

**FACTUAL BACKGROUND**

On February 10, 1995, at around 5:50 p.m., Clifton Hudson was shot and killed across from the post office on Strathmore Avenue in East Cleveland, Ohio. His murderer has never been caught because police officers for the City of East Cleveland ("Defendants") chose to go for an easy conviction of Plaintiffs by fabricating evidence and manipulating a key eyewitness instead of doing the hard work of finding the true killer.

Plaintiffs were 16 and 17-year-old boys when Mr. Hudson was killed. Their only connection to the murder was that they happened to be driving down the same street when the murderer killed Mr. Hudson. When they heard the shots and saw what was happening, they did what anyone would have done when seeing someone shooting a gun: they drove away from it. To be clear, none of them had anything to do with the crime—they were only witnesses. But each was taken from his home and forced to endure years of wrongful imprisonment.

**ARGUMENT**

The Federal Rules of Civil Procedure prohibit trial by ambush. *See* Fed. R. Civ. P. 26; *see, e.g., Southern Wabash Communications, Ltd. v. Union County Broadcasting Co., Inc.*, 69 F. App'x 285, 292 (6th Cir. 2003). Discovery was open in this case for over six months. There was plenty of time for the Defendants to investigate this case and do what they needed to do to disclose the witnesses they wanted to call at trial. Instead of complying with the deadlines imposed by the Federal Rules of Civil Procedure and the Court, the Defendants have made last-minute disclosures and listed witnesses and documents on the Final Pretrial Order that were never timely disclosed. All such witnesses and documents should be barred at trial.

**I.      Previously Undisclosed Witnesses Should Be Barred**

Plaintiffs diligently pursued discovery about all of the evidence Defendants may seek to introduce at trial. In doing so, Plaintiffs properly relied on Defendants' disclosures under Federal Rule of Civil Procedure 26. Rule 26(a)(1) required Defendants to identify individuals who might have discoverable information that they may rely on to support their defenses. Similarly, Rule 26(a)(2) requires Defendants to disclose to Plaintiffs the identity of any witness that they may call at trial to present expert testimony under Federal Rules of Evidence 702, 703, or 705. Defendants have not complied with the Federal Rules.

On November 21, 2017, a mere six days before the closure of discovery, the East Cleveland Defendants disclosed a new witness named Renee Kendall. *See* Ex. A (11/21/17 Hemmons Email with Kendall Aff.). The relevance of Ms. Kendall's testimony is unclear. She did not even start working at the East Cleveland Police Department until 1996 (the police reports in this case were generated in 1995). *See id.* (Kendall Aff.). Regardless, the disclosure of this witness is extremely late, and Ms. Kendall should be barred from testifying. The other new

witnesses disclosed for the first time in the East Cleveland Defendants' email dated November 21, 2017 (*e.g.*, David Deardon, Deena Mays, and Jean May) should also be barred from testifying. These witnesses were never disclosed in response to Plaintiff's interrogatories served much earlier during discovery seeking the identities of all individuals with knowledge relevant to this case. *See* Ex. B (Pl. Wheatt's First Set of Interrogatories to Defs. Perry, Johnstone, Miklovich, Lane, Teel, Bradford, and Dunn) at No. 1; *Ferreri v. City of Strongsville*, 2011 WL 2457404, at *2 (N.D. Ohio June 16, 2011) (Gwin, J.) (where party asked for names of all potential witnesses, opposing party was obligated to timely provide that information).

Furthermore, the East Cleveland Defendants apparently intend to have Kendall, Deardon, Mays and May testify to "the policy and procedures of the East Cleveland Police Records Department regarding request for police reports." *See* Final Pretrial Order, Appendix C (East Cleveland Defs.' Witnesses). Such testimony must be barred in light of the Court's order granting Plaintiffs' requested sanctions. Dkt. 135. During discovery, Plaintiffs sought a Rule 30(b)(6) witness from the City to testify about the City's policies and procedures for responding to public records requests in 1998. The City repeatedly refused to provide a witness, and then it designated a comatose witness. *See* Dkts. 103, 114, 133. Finally, the Court granted Plaintiffs' requested sanction of barring the City from arguing that there was a lawful or otherwise legitimate basis for their failure to produce the Clifton Hudson homicide file in response to the 1998 public records request. Dkt. 135 at 3-4. Defendants' pre-trial listing of witnesses to testify about public requests for police reports is far too late.

Second, the East Cleveland Defendants included other new witnesses on their witness list in the Final Pretrial Order: prosecutor Mark Major and Hugh B. Shannon. Not only was Mark Major never previously disclosed, but Defendants intend to have him testify "to probable

3

cause."[1] *See* Final Pretrial Order, Appendix C (East Cleveland Defs.' Witnesses). That is not a permissible topic of witness testimony. Whether or not probable cause existed to prosecute Plaintiffs is a question for the jury. *See, e.g., Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005). Furthermore, Administrator Shannon and the documents that the Defendants want him to testify about should be barred for the reasons discussed in Section II, *infra*.

Third, on November 28, 2017, the East Cleveland Defendants disclosed two new witnesses, Ernest Stanford and Eric Brewer, and added these witnesses to their witness list on the Final Pretrial Order. Ex. C (11/28/17 Emails between Hemmons, Wang, and Pasternak). Stanford and Brewer must be barred from testifying because: (1) these witnesses never previously disclosed in any Rule 26(a)(1) disclosures; (2) they were never disclosed in response to Plaintiffs' interrogatories asking about potential witnesses; (3) they were disclosed *after* the close of fact discovery on November 27, 2017; and (4) they have no relevant testimony to provide. Defendants have listed Stanford to testify because "[a]s an East Cleveland Police Officer since 1989 and Detective (primarily for juveniles) since 1999, [he] will testify as to East Cleveland procedure for binding over juvenile suspects." *See* Final Pretrial Order, Appendix C (East Cleveland Defendants' Witnesses). Such testimony is not relevant to any issue in this case. If Defendants intend to have Stanford testify about probable cause for the criminal prosecution, that is not permissible testimony; it is a question for the jury to resolve. As to Eric Brewer, Defendants describe his testimony as: "Former Chief of Staff for former Mayor Emmanuel Onunwor, 1998-2000, former Mayor of East Cleveland, 2006-2010, and self-styled investigative journalist, will testify as to how the 'Free East Cleveland Three' social movement started and was implemented during the Administration of Mayor Onunwor." *Id.* None of this testimony is

---

[1] They also intend to have Michael Horn testify to probable cause. *See* Final Pretrial Order, Appendix C (East Cleveland Defs.' Witness List).

relevant to any issue in this case. Both Stanford and Brewer should be barred on relevance grounds.

Fourth, on October 29, 2018, the East Cleveland Defendants added an entirely new witness to their witness list on the Final Pretrial Order: Tammany Moss. *See* Final Pretrial Order, Appendix C (East Cleveland Defs.' Witnesses). Ms. Moss was never disclosed during discovery and is being disclosed for the first time over eleven (11) months after discovery closed in November 2017. Ms. Moss should be barred from testifying at trial, not only because she was never disclosed during discovery, as Defendants were required to do, but because she has no relevant testimony to provide.

Furthermore, this Court's Order regarding expert disclosures required the Defendants to identify any experts by July 3, 2017. Dkt. 30. Defendants did not tender any disclosures under Rule 26(a)(2). Plaintiffs relied on those disclosures in developing their litigation strategy. Specifically, Defendants did not disclose any witnesses who would provide any opinion testimony regarding substances purportedly consistent with gunshot residue found on Plaintiff Wheatt's hands, a glove supposedly belonging to Johnson, or on Glover's vehicle. Thus, Defendants should be barred from calling any such witnesses or eliciting any such testimony at trial. If Plaintiffs had known that Defendants intended to call any witnesses to provide testimony under Rules 702, 703, or 705, they would have filed an appropriate *Daubert* motion (or obtained rebuttal experts), in accordance with the deadlines set by this Court. *See id*. Instead, because Defendants did not disclose any experts under Rule 26(a)(2), Plaintiffs did not file any *Daubert* motions or retain any rebuttal experts, and the deadlines for those actions have long passed.

Defendants should not be permitted to call witnesses not in their disclosures under Rule 26 (or not otherwise deposed). Rule of Civil Procedure 37(c)(1) requires compliance with Rule

5

26(a)—it "'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003); *Ferreri*, 2011 WL 2457404, at *1; *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 908-09 (N.D. Ohio 2008). "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Johnson*, 325 F.3d at 782.

Defendants are unable to meet their burden to demonstrate either justification or harmlessness here. The relevant witnesses to the underlying events have been known for decades so that justification in not disclosing those witnesses seems unlikely. There is no justification for Defendants' late disclosure of Hugh Shannon, Renee Kendall, David Deardon, Jean May, Deena Mays, Ernest Stanford, or Eric Brewer. Nor can any new disclosures be considered harmless given that Plaintiffs reasonably relied on Defendants meeting their obligations under Rule 26, and any last minute disclosures would adversely impact Plaintiffs' litigation strategy. Simply put, the disclosure of new witnesses just days before and after the close of discovery, is not harmless, because Plaintiffs have been deprived of the opportunity to depose the witnesses, and Plaintiffs are attempting to prepare for trial.

**II.     Late-Disclosed Documents from the Medical Examiner/Coroner's Office and Any Testimony from Any Witness relating to Them Should Be Barred**

On November 16, 2017—a mere 11 days before the fact discovery deadline—the East Cleveland Defendants disclosed a set of police reports that their counsel asserts was "delivered to the Cuyahoga County Coroner's Office" on "February 22, 1995." Ex. D (EC Defs.' Supp. Prod. dated 11/16/17). This set of police reports includes the exculpatory Petty and Bufford police reports alleged to have been withheld. *See id.* at 38, 40-43, 50.

6

After receiving these documents from the East Cleveland Defendants, Plaintiffs asked Defendants to explain: (1) when these documents were received by them; and (2) any foundation testimony from a representative of the Coroner's Office to authenticate these documents. Ex. E (11/16/17-11/17/17 Emails between Wang and Hemmons) at 2, 4. In response, Defendants admitted that they had received the documents almost two months before producing them to Plaintiffs—the fax stamp at the top of the documents (with the date "09-25-'17") indicates when the documents were faxed from the Coroner's Office to the East Cleveland Detective Bureau. *Id.* at 1 (11/17/17 Hemmons Email, 11:22 a.m.). In addition, Plaintiffs requested an explanation of the purpose of the documents, the name and contact number of all persons who will testify regarding the documents, and an explanation as to how the documents were obtained and received, especially given the "CONFIDENTIAL INFORMATION RESTRICTED TO CORONER'S PERSONNEL" stamp on the documents. Ex. F (11/17/17 Pasternak Email to Hemmons). Plaintiffs never received a copy of any subpoena from the Defendants to the Coroner's Office for these (or any other) documents.[2]

The East Cleveland Defendants did not answer any of these questions about this eleventh-hour disclosure. The only person that the East Cleveland Defendants have disclosed as a witness who will testify about the records is Administrator Hugh B. Shannon of the Cuyahoga County Medical Examiner's Office, or his representative, who the Defendants maintain will authenticate the records. Ex. E at 1. The East Cleveland Defendants have listed these late-disclosed documents on their exhibit list in the Final Pretrial Order, and they have included Mr. Shannon on their witness list as someone who will "testify to receiving the coroner's copy of the

---

[2] In fact, in May 2017, Plaintiffs served a subpoena *duces tecum* on the Coroner's Office for documents relating to the Clifton Hudson homicide, and the Coroner's Office produced documents (mostly relating to forensic testing done by them). The Coroner's Office did not produce these police reports and gave no indication that it had these police reports in its possession (such as through a privilege log).

East Cleveland Clifton Hudson Homicide Report EC9503123." *See* Final Pretrial Order, Appendix C (East Cleveland Defs.' Witnesses).

For several reasons, Defendants should be barred from referencing or introducing any evidence at trial relating to the late-disclosed police reports from the Coroner's Office. First, these documents were not timely produced. It would be wholly prejudicial to Plaintiffs to allow Defendants to introduce any evidence or make any argument whatsoever relating to these late-disclosed documents. The East Cleveland Defendants produced their version of the Coroner's file a mere 11 days before the fact discovery deadline. This deprived Plaintiffs of any opportunity to conduct any follow-up discovery on those documents. The East Cleveland Defendants admitted that the Coroner's Office produced these documents to the East Cleveland Detective Bureau *on September 25, 2017*—that is what the fax stamp shows. Ex. E at 1. Yet, there is no explanation for why Defendants did not disclose these documents for nearly *two months* after receiving them. Rule 26(e) requires that a party supplement its disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A).

In fact, if Plaintiffs had had timely notice of these documents, Plaintiffs could have asked trial prosecutor Michael Horn about them at his deposition on November 7, 2017. Instead, the East Cleveland Defendants chose not to disclose these documents until *a week after* Horn's deposition, thereby depriving Plaintiffs of the opportunity to ask Horn if he may have received any of these police reports from the Coroner's Office prior to trial. The untimely disclosure also deprived Plaintiffs of the opportunity to conduct written discovery about the records. For example, if Plaintiffs received the documents promptly after they were received by the Defendants on September 25, 2017, Plaintiffs could have sent interrogatories, requests for admission, or requests for production relating to the documents, so that they would be answered

8

before the close of discovery on November 27, 2017. Plaintiffs would likely have wanted to depose the purported record keeper or conduct other discovery into these records. Now, it is far too late for that. Plaintiffs should not be forced to take precious time away from preparing for trial to deal with these late-disclosed documents and witnesses, *especially when the Defendants had the documents in their possession for a full two months prior to the closure of discovery yet did not disclose them*. In sum, barring Defendants from referencing, making any argument about, or introducing any evidence regarding these documents from the Coroner's Office is an appropriate sanction under Rule 37 for Defendants' failure to abide by the discovery rules and this Court's orders. *See* Fed. R. Civ. P. 37(c)(1); *Ferreri*, 2011 WL 2457404, at *3 (barring most of defendants' newly disclosed witnesses due to untimely disclosure).

Second, Defendants have not given any indication how these documents are remotely relevant. Presumably, Defendants intend to try to use these reports to show that someone in the East Cleveland Police Department provided these police reports (including the exculpatory ones) to the Coroner's Office, and that this somehow discharged the Defendant Officers' *Brady* obligation. This would be mistaken, because the Defendant Officers only discharge their *Brady* obligations if they produce exculpatory evidence to the prosecutor (or to the Plaintiffs or defense counsel). *Moldowan v. City of Warren*, 578 F.3d 351, 377-78 (6th Cir. 2009).

Third, Defendants may intend to argue that, somehow, the disclosure of these police reports to the Coroner's Office meant that the prosecutor had access to them or that the prosecutor received them. Any such assertion would be based on pure speculation. The Defendants have not disclosed any witness who can testify to that. And in fact, the version of the Coroner's Office documents produced by Naiman and Marino on the last day of discovery contain a listing of persons to whom certain documents in the file were sent. This list states

9

"Verdict, lab, protocol Michael Horn, 9th Floor-Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113 gratis, July 14, 1995 da" and "Verdict, lab, protocol send to Ralph T. DeFranco, Atty, Suite 730 Leader Bldg. Cleveland, Ohio 44114 August 11, 1995 da." Ex. G (List) at 1. What this list apparently indicates is that copies of the verdict, lab results, and autopsy protocol were sent to Horn and DeFranco, but the police reports were not, because they are not listed. This is unsurprising given the "CONFIDENTIAL INFORMATION RESTRICTED TO CORONER'S PERSONNEL DO NOT REMOVE FROM OFFICE" stamp on them and the fact that no such document with that stamp appears in the prosecution's file. *See* Ex. D; Ex. H (Declaration of Melinda Ek).

The only person that the East Cleveland Defendants have disclosed to testify about these reports is Hugh B. Shannon, the Administrator of the Medical Examiner's Office or his representative, who Defendants state will authenticate the documents. (They did not disclose this witness until little over a week before discovery closure). But authenticating the documents as having come from the files of the Coroner's Office does not establish (1) when they were first received by the East Cleveland Police Department (*i.e*., on or about February 22, 1995, as defense counsel asserts),[3] or—more importantly—(2) that they were then disclosed to the Prosecutor's Office or to the prosecutor, Michael Horn. The Defendants have not disclosed any document from the Coroner's Office (or any other source) that documents that these police reports were, in fact, received from the ECPD on or about February 22, 1995. And the confidential stamp on the documents, combined with the list of documents that were sent to prosecutor Michael Horn indicates that the police reports were not produced to Horn.

---

[3] Indeed, Plaintiffs' understanding from a conversation that undersigned counsel had with Mr. Shannon is that he was not working in the Cuyahoga County Medical Examiner's Office in 1995 and could not testify to receiving a copy of the police reports in 1995. The documents themselves do not include any stamp on them that shows when they were received by the Coroner's Office. *See* Ex. D.

Fourth, Defendants might attempt to argue that because the Coroner's Office had the exculpatory police reports in their possession prior to trial (assuming that they could show this in the first place), Plaintiffs' trial counsel would have had access to them. But there is nothing in the file that indicates that, and there is no witness (including Plaintiffs' former trial counsel) who may provide that testimony. In fact, the file produced by Naiman and Marino includes copies of requests by various people for copies of documents in the Coroner's file, including a document signed by Ralph DeFranco (Plaintiff Glover's former trial counsel), which requested a copy of the autopsy report, autopsy protocol, coroner's verdict, and laboratory report. Ex. I (Request from DeFranco). It does not say that anything else (such as police reports) was requested, and there is no indication that police reports were provided. (And again, the police reports were stamped "CONFIDENTIAL RESTRICTED TO CORONER'S PERSONNEL DO NOT REMOVE FROM OFFICE," which itself is an indication that those documents were not shared outside of the Coroner's Office.)

Thus, any suggestion that the fact the police reports were in the Coroner's Office meant that either the prosecutor or the defense counsel had seen them would be pure speculation. Any argument or evidence from the Defendants that the exculpatory police reports were produced to the Coroner's Office before Plaintiffs' trials would be inadmissible not only because it lacks foundation and calls for speculation, but because it would not be probative or relevant under Rule 402. Even if the reports were produced to the Coroner's Office prior to Plaintiffs' criminal trials, it does not discharge the Defendant Officers' *Brady* obligations. So even if the Defendants could come up with admissible evidence for this fact, it would not make any fact in issue more or less likely—it would be irrelevant. Fed. R. Evid. 402. Furthermore, this evidence is inadmissible under Rule 403 because any probative value is substantially outweighed by the danger of unfair

11

prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. The jury might be confused or misled into thinking that because both the Medical Examiner's and Prosecutor's Offices are part of Cuyahoga County, the Prosecutor's Office (or Michael Horn, the trial prosecutor in this case) must have known of these reports. There is simply no evidence for that.

WHEREFORE, Plaintiffs respectfully request an order barring the following from testifying: (1) any lay witness not disclosed under Rule 26(a)(1) or otherwise deposed in this case (other than purely impeachment witnesses); (2) any witness who would provide testimony under Federal Rule of Evidence 702, 703, or 705 (since none were disclosed under Rule 26(a)(2)); and (3) Mark Major, Hugh Shannon or his representative from the Coroner's Office, Renee Kendall, David Deardon, Deena Mays, Jean May, Ernest Stanford, and Eric Brewer. Plaintiffs further request an order barring the admission of the documents produced by Defendants from the Coroner's Office; barring all references to these documents, and barring any witness from testifying about these documents at trial.

Respectfully submitted,

s/ Elizabeth Wang

Mark Loevy-Reyes
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: (312) 243-5900
mark@loevy.com
*Counsel for Plaintiffs Wheatt and Glover*

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: (720) 328-5642
elizabethw@loevy.com

s/ Michael B. Pasternak
Michael B. Pasternak
Park Center II, Suite 411
3681 South Green Road
Beachwood, OH 44122
O: (216) 360-8500
Mpasternak1@msn.com
*Counsel for Plaintiff Johnson*

Brett Murner
208 North Main Street
Wellington, OH 44090
O: (440) 647-9505
bmurner@yahoo.com

## **CERTIFICATE OF SERVICE**

I, Elizabeth Wang, an attorney, hereby certify that on October 29, 2018, I served via CM/ECF the foregoing Plaintiffs' Motion *In Limine*.

s/ Elizabeth Wang
Attorney for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Memorandum complies with the 15-page limitation for memoranda relating to a non-dispositive motion in a case assigned to the Standard Track.

s/ Elizabeth Wang
