IN THE UNITED STATES DISTRICT COURT§§§
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DERRICK WHEATT,** *et al.,* | ) | CASE NOs.: 1:17-CV-0377 |
| | ) | and 1:17-CV-0611 |
| **Plaintiffs,** | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE WILLIAM H |
| **CITY OF EAST CLEVELAND,** *et al.*, | ) | BAUGHMAN, JR., |
| | ) | |
| **Defendants.** | ) | |

### CITY DEFENDANTS' OPPOSITION
### TO PLAINTIFFS' MOTION TO STRIKE

First of all, it must be pointed out that Plaintiffs have **already responded** to "*City Defendants Motion for Relief from a Final Judgment or Order pursuant to Federal Civil Rule 60(b) Based Upon Fraud, Misrepresentation, or Misconduct by an Opposing Party,*" Dkt. 365 in their "*Response to [367] Amended Motion for relief from a Final Judgment or Order pursuant to FRCP 60(b), [365] Motion for relief from a Final Judgment Or Order Pursuant to FRCP 60(b) Based Upon Fraud Misrepresentation or Misconduct by an Opposing Party.*" Dkt. 378. So, they are thereby precluded from having it, Dkt. 365, stricken as they 'cannot have their cake and eat it, too.'

Further, as far as the defense's objection to Attorney Fees, Dkt. 370 is concerned, admittedly the main problem with that is that it did blanket almost an entire law firm when several of the law professionals included in the Plaintiffs Motion for Attorney Fees had never even entered an appearance into the within lawsuit yet requested fees therefrom. Dkt. 369.

"Joint Motion for attorney fees *under 42 U.S.C. 1988* by Elizabeth C. Wang, Joint Motion for costs *under 28 U.S.C. 1920* filed by Laurese Glover, Eugene Johnson, Derrick Wheatt. (Attachments: # (1) Exhibit A (emails between Hemmons and Wang), # (2) Exhibit B (Wang declaration and timesheet), # (3) Exhibit C (Loevy-Reyes declaration and timesheet), # (4) Exhibit D (Kanovitz

1

declaration and timesheet), # (5) Exhibit E (Loevy declaration and timesheet), # (6) Exhibit F (Newell declaration and timesheet), # (7) Exhibit G (paralegals declarations and timesheets, # (8) Exhibit H (Laffey matrix), # (9) Exhibit I (Pasternak declaration and timesheet), # (10) Exhibit J (Murner declaration and timesheet), # (11) Exhibit K (bill of costs and receipts))(Wang, Elizabeth)"

At any rate, in what may prove to be a telling "Freudian slip" Plaintiff Eugene Johnson's counsel, in urging this Court to strike Defendants' motions in their entirety at docket numbers **365 and 370** argues that "…these filings attempt to impugn the honesty and professionalism of Plaintiffs' counsel" (see Doc **#: 379, at pg. 1**); as the City Defendants' counsel accuses, "Plaintiffs' counsel of committing a fraud upon the court and improperly manipulating the testimony of Tamika Harris." See Doc #: 379, at pg. 1. Indeed, Plaintiff Eugene Johnson's counsel "*freudiantly*" asserts that "defense counsel is accusing a variety of people of suborning perjury of Tamika Harris." See Doc #: 379 PageID #: 8746; clearly intimating that Tamika Harris' testimony was perjured.

However, a review of the "*City Defendants Motion for Relief from a Final Judgment or Order Pursuant to FCRP 60(b) based upon Fraud, Misrepresentation, or Misconduct by an Opposing Party*" (Doc #: 365) fails to evidence any such allegation as levied against Plaintiffs' counsel.

Furthermore, and although the City Defendants state clearly, in *City Defendants' Objection to Plaintiffs' Motion for Attorney Fees* (Doc #: 370), their belief that Rosemary Johnson manipulated Ms. Harris, compelling her to falsely recant her identification of Eugene Johnson; and despite the fact that Eugene Johnson's co-Plaintiffs recognize Ms. Harris as being a highly pliable witness. See Doc #: 377, Page ID #: 8586 ("Defendant Perry manipulated Harris into falsely identifying Plaintiffs….") Eugene Johnson takes issue with the City Defendants' opposition to Plaintiff Eugene Johnson's counsel's claim for attorneys' fees, where Defendants

2

simply state: "No good can come of aligning oneself with nefarious activities either unknowingly or, even worse, knowingly." Dkt. 370.

If Plaintiffs object to the word "nefarious," the Court can strike that portion of the Defense pleading without throwing the baby out with the bath water, *Gainer v. City of Winter Haven*, 134 F. Supp. 2d 1295. In *Gainer*, the Court related "Fed. R. Civ P. 12(f) provides that upon motion by a party, or upon the court's initiative at any time, the court may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter."

Plaintiff Eugene Johnson wants this Court to ignore the admonition that a wary eye is to be cast upon recanting witnesses, where it has been provided:

> "We have repeatedly stated that evidence which recants testimony given at trial is "looked upon with the utmost suspicion." *See*, *e.g.*, *State v. Rossi,* 2d Dist., Montgomery No. 24740, 2012-Ohio-2545, ¶ 17. This is "because, 'where a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times.'" *United States v. Earles,* 983 F.Supp. 1236, 1248 (N.D.Iowa 1997), quoting *United States v. Provost,* 969 F.2d 617, 620 (8th Cir. 1992).

Ms. Tamika Harris has not only marred the judicial process allowing three murderers to escape justice, she has endangered an entire community, by emboldening the criminal element. Through her recantation, Ms. Tamika Harris has proven herself to be mendacious having provided false testimony in 1996 or now or both times.

Eugene Johnson then assails the City Defendants' counsel arguing that "Ms. Hemmons did not subpoena Ms. Johnson for testimony at trial to address or develop her theory regarding the purported manipulation/perjury of Ms. Harris." Id at Doc #: 379, p. 1.

However, the docket clearly demonstrates that Tamika Harris was indeed subpoenaed to testify by the City Defendants. See Doc. No. 327. Indeed, the docket further demonstrates that

3

this Court entered its Order on October 22, 2018 granting in part defendants' motion to allow remote witness testimony.

However, Ms. Harris would come with excuse after excuse, (most likely engineered from outside sources) to avoid testifying by live video. Instead, through a highly scrubbed and sanitized version of her earlier video deposition, Ms. Harris' testimony was provided to the Jury in an avoidance of all justice whatsoever.

Eugene Johnsons' counsel goes further applauding Ms. Harris' tenancity, observing that:

> "She then sent emails to a website called "Innocent Inmates," which was trying to help the Plaintiffs obtain post-conviction relief. *Id.* at 34:19-35:20. She then got in touch with investigators and attorneys for Plaintiff Johnson and signed an affidavit in 2004 recanting her original trial testimony. *Id.* at 34:21-38:25. Her 2004 affidavit said that she never clearly saw the shooter's face (which is what she told the police on February 10, 1995) and that she did not see the shooter into the vehicle. *Id.* at 38:16-25

Additionally, this Court is urged to note that her **affidavi**ts are conflicting. Clearly signifying that she is willing to put her honor on the line for anyone who wishes to listen to her.

In an effort to defend Tamika Harris' honor, Plaintiff's counsel goes on to recite as virtuous her testimony and that based on her recantation, that Judge Nancy Margaret Russo of the Court of Common Pleas granted Eugene Johnson a new trial on in 2004. *See* Dkt. 361 (11/14/18 Trial Tr.) at 477:25-478:2.

Plaintiff Counsel fails to acknowledge that Ms. Harris only had 'second thoughts' after being 'found' a thousand miles away in Arkansas by Rosemary Johnson and her various 'advocacy' groups including the Black on Black cohort. She certainly did not 'voluntarily' come forward before that. She certainly did not conjure up Eugene Johnson's email addresses on her own. In fact, it was Rosemary Johnson that gave her his email address. And, it is clear that they reek of the guilt trip that Rosemary Johnson put her on with reference to her being the 'star' witness against her son:

4

> "Q. Okay. And how long after you spoke with Ms. Johnson did you go to the Innocent Project website?
>
> A. It says I talked to her a few days before Thanksgiving, and then the email date on this is December 2nd, so.
>
> .
>
> Q. Oh, okay.
>
> A. Maybe did it within a week or so.
>
> .
>
> Q. Okay. So you went to the website after you spoke with Ms. Rosemary Johnson?
>
> .
>
> A. That's what it says, uh-huh (affirmative response.)
>
> Q. And Ms. Rosemary Johnson is who to Eugene Johnson?
>
> A. His mother."

See Doc #: 79-8,Tamika Harris Deposition- August 23, 2017; Pp. 62 ln. 23-25; Pp. 63 ln. 1-11

So, it was only after the "meeting" with Eugene Johnson's mother that Ms. Harris felt compelled to "right" the "wrong" she had committed as a fifteen year old:

BY MS. HEMMONS:

> Q. Okay. Why did you send that email?
>
> A. Well, like I said, I talked to his mother and, you know, she was basically telling me what was going on. And -- and then, like I said, I learned about that -- that website. And I went on that website and then I read everything. Because this is, like, really, after I went on that website that was, like, really the first time in forever that I read over everything that was said, all the testimony and stuff like that. And I read over all that again. And then, not to mention at 22 I had my second child, and I had just lost his dad. So unfortunately
>
> Q. What do you mean you lost his dad?
>
> A. His father was killed. Somebody actually shot him and killed him dead."

See Doc #: 79-8,Tamika Harris Deposition- August 23, 2017; Pp. 66 ln. 20-25; Pp. 67 ln. 1-11

So it was at the urging of Rosemary Johnson that Tamika Harris accessed the 'innocentinmate project' and wrote an email stating:

"Q.· ·--- Harris -- Harris deposition Exhibit 4?

A.    My name is Tamika, and I was the State star witness.· Let them tell it.· The reason I am writing you is because I talked to your mother Rosemary and she told me basically about everything and about Innocentinmates.org.· But I went through and read everything, every fact, every case argument, I read everything. And like I asked your mother, what is it that I can do.· I mean, all I said was that I did not see his face clearly, and the reason I identified you was because your clothing fit the description.· If I was wrong, I apologize. I know that my apologizing won't bring back the eight years of your life that you have missed or the many birthdays that Laurese missed for his daughter.· I'm sorry, but I was 14 then and now 22 -- and 22 now.· What more could I do for you. You know I wished I didn't see nothing that day, period.· I have too much shit going on in my life right now, entirely too much stuff.· And to just put this case right on top of the pile, the way your mother put it -- put it, your -- your life is --your life is in my hands again for the second time, and this time even if it is too late, I want to do what is right.

Q.    Okay.· So at the time when you were 14, you testified you wanted to do what is right, and –

A.    Uh-huh (affirmative response).

Q.·   -- then again at 21, 22 --

A.·   Two.

Q.· ·--- you wanted to do what was right?"

See Doc #: 79-8, Tamika Harris Deposition- August 23, 2017; Pp. 65 ln. 10-25; Pp. 66 ln. 1-11.

So, the Tamika Harris recantation was essentially effectuated by Rosemary Johnson as her son, Eugene Johnson corroborated in his trial testimony. Dkt. 360, Transcript of Jury Trial Proceedings held 11/13/18, pp. 283-285.

Hence, is quite clear that Plaintiff Counsel's Motion to Strike represents a petulant and overzealous protest against it being stated that Attorneys for Plaintiffs might have "unknowingly" or "knowingly" associated with nefarious characters.  Such could be said of any

6

attorney who has represented criminal clients. The crux is to recognize when one has been duped and disassociate oneself with any malfeasance. However, if one believes ones clients, then one should continue to advocate zealously for them. But, the same goes both ways. If one believes adamantly that the actions of law enforcement clients were unassailable, then one should be able to engage in advocacy consistent with those beliefs without being subjected to meritless Motions to Strike.

This is particularly true here where the trial has already been held; and, as we head into the appellate stages, the statistics favoring a court of appeals overturning a jury verdict are dim.

WHEREFORE, and by reason of the foregoing, Defendants pray that the Court DENIES *Plaintiffs Motion to Strike City Defendants Motion for Relief from a Final Judgment or Order pursuant to Federal Civil Rule 60(b) Based Upon Fraud, Misrepresentation, or Misconduct by an Opposing Party,"* Dkt. 365, and *City Defendants' Objection to Plaintiffs' Motion for Attorney Fees.* Dkt. 370.

    Respectfully submitted,

/s/ *Willa M. Hemmons*
Willa M. Hemmons, Esq. (0041790)
Law Director
City of East Cleveland
14340 Euclid Avenue
East Cleveland, Ohio 44112
whemmons@eastcleveland.org
Counsel for Vincent K. Johnstone and Michael Perry

7

## CERTIFICATE OF SERVICE

A true and accurate copy of *City Defendants Objection to Plaintiffs Motion to Strike City Defendants Motion for Relief from a Final Judgment or Order pursuant to Federal Civil Rule 60(b) Based Upon Fraud, Misrepresentation, or Misconduct by an Opposing Party,"* Dkt. 365, and *City Defendants' Objection to Plaintiffs' Motion for Attorney Fees.* Dkt. 370 was electronically filed with the Court on this 27th day of December, 2018; and that by operation of this Court's electronic notification system a copy thereof is made available to all registered parties.

                                                      */s/ Willa M. Hemmons*
                                                      Attorney for City Defendants