UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------------

|  |  |  |
|---|---|---|
| DERRICK WHEATT, *et al.*, | : | CASE NOS. 1:17-CV-377 & |
|  | : | 1:17-CV-611 (consolidated) |
| Plaintiffs, | : |  |
|  | : |  |
| vs. | : | OPINION & ORDER |
|  | : | [Resolving Docs. 351, 354, 357, |
| CITY OF EAST CLEVELAND, *et al.*, | : | 358, 363, 365, 367, 369, 371, 375, |
|  | : | 379, 384] |
| Defendants. | : |  |
|  | : |  |

-------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs Derrick Wheatt, Laurese Glover, and Eugene Johnson brought this civil rights action claiming that Defendants Vincent Johnstone and Michael Perry[1] violated their constitutional rights. In their lawsuit, Plaintiffs claim these constitutional rights violations resulted in their wrongful murder convictions and twenty-year incarceration.

The case went to trial. On November 15, 2018, a jury returned a $15 million verdict for the Plaintiffs.

The parties now bring various post-trial motions. For the following reasons, the Court **DENIES** Defendants' motion for a new trial, **DENIES** Defendants' motions to set aside the verdict, and **DENIES** Defendants' motion to offset the judgment. Further, the Court **STAYS** and **HOLDS IN ABEYANCE** Plaintiffs' motion to reinstate their indemnification claim, **GRANTS** Plaintiffs' motion to amend the judgment, **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for Attorney's fees and costs, and **DENIES** Plaintiffs' motion to strike as moot.

---

[1] Defendant Michael Perry passed away on December 9, 2018.

## I.  Background

In January 1996, an Ohio jury convicted Plaintiffs of murder for the February 10, 1995, Clifton Hudson shooting death.  At the state court murder trial, Ohio used testimony from then-fourteen-year-old Tamika Harris.  Tamika Harris observed the killing from a position somewhat distant from the killing.  At trial, Harris identified Plaintiff Johnson as the shooter.  Ohio charged the other state court defendants as accomplices to the murder.

In 2004, nine years after the murder, Tamika Harris recanted her testimony.  In her recanting testimony, Harris said that she never clearly saw the shooter and that Defendant Perry, an East Cleveland police officer, pressured Harris to identify Johnson as the culprit.

In 2013, the Ohio Innocence Project submitted a public records request to the East Cleveland Police Department for the police investigatory file in Plaintiffs' case.  This Ohio Innocence Project request uncovered exculpatory evidence that was not provided to defense counsel before the criminal trial.  Unknown to Plaintiffs at the time of the murder trial, immediately after the killing, East Cleveland Police had interviewed two eyewitnesses—brothers Eddie Dante Petty and Gary Petty.  In those interviews, the Petty brothers gave descriptions of the shooting that differed significantly from the shooting description that Harris had given.

Before trial, police also failed to give defense counsel evidence that persons had shot at Victim Hudson's brother shortly before Hudson's murder.

Armed with Harris's recantation and the Petty brothers report, Plaintiffs successfully challenged their convictions.  In March 2015, an Ohio Court granted their motion for a new trial, and the new trial order was affirmed on appeal.

Plaintiffs then sued under 42 U.S.C. § 1983. At trial, Plaintiffs made two claims. First, Plaintiffs argued that Defendants Perry and Johnstone used an unnecessarily suggestive photo identification procedure and pressured Tamika Harris to identify Plaintiff Johnson as the shooter. Second, Plaintiffs argued that Defendants Perry and Johnstone withheld the exculpatory Petty brothers report in violation of *Brady v. Maryland*.[2]

## II. Discussion

### A. The Court Denies Defendants' Rule 59 Motion[3]

Firstly, Defendants move for a new trial under Rule 59, citing nine grounds for relief.[4] The Court may only grant a motion for a new trial if it finds that the verdict is clearly against the manifest weight of the evidence.[5] However, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."[6]

Rule 59 motions may also raise "questions of law arising out of substantial errors in the admission or rejection of evidence."[7]

### i. The Jury's Verdict Was Not Against the Manifest Weight of the Evidence

At trial, Plaintiffs claimed that Defendants Perry and Johnstone knew about the Petty brothers' exculpatory evidence and did not give this evidence to Prosecutor Michael Horn before Plaintiffs' criminal trial. The Petty brothers described seeing the killer come from a

---

[2] 373 U.S. 83 (1963).
[3] On November 19, 2018, Defendants filed a motion for reconsideration of denial of pre-verdict motion for judgement as a matter of law. Doc. 351. The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration. Nonetheless, the Court will treat it as being filed under Rule 59, and the analysis concerning Defendants' express Rule 59 motion, Doc. 363, will also apply to Defendants' motion for reconsideration, Doc. 351.
[4] Doc. 363. Plaintiffs oppose. Doc. 377. Defendants reply. Doc. 382.
[5] *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967).
[6] *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000).
[7] Charles Allen Wright, et al., 11 *Fed. Prac. & Proc. Civ.* § 2805 (2019).

location different from Plaintiff Johnson's location and described the killing different from Tamika Harris' killing description. The Petty brothers also described being much closer to the killing than witness Harris had been.

At the time of the state court murder trial, the Cuyahoga County Prosecutor's office used a problematic disclosure procedure. Assigned prosecutors would meet privately with defense attorneys at the pretrial stage. At these pretrial meetings and after reviewing the investigatory file, the prosecutors would orally summarize any exculpatory information. The responsible prosecutors, who each carried large caseloads, likely enjoyed little time to review the police investigation before the pretrial meeting with defense attorneys. Even well-intended prosecutor risked overlooking potential *Brady* materials.

At the 2019 trial of this § 1983 lawsuit involving a 1995 murder, Prosecutor Horn could understandably give only generalized recollection of his prosecution management. Prosecutor Horn testified that he did not recall ever seeing police reports on the Petty brothers' shooting description until 2014 when Plaintiffs moved for a new trial.[8] Prosecutor Horn also testified that at the time of the state court prosecution, he understood his constitutional duty to disclose exculpatory evidence. With his appreciation of the *Brady* obligations, Prosecutor Horn testified that he would have disclosed the Petty report to Defense counsel if he had seen it.[9] And Plaintiffs' criminal defense attorney, Richard Drucker, testified that at the criminal pretrial or otherwise, Prosecutor Horn never told him about the Pettys' account.[10]

---

[8] Doc. 361 at 20.
[9] *Id.* at 21.
[10] Doc. 360 at 219.

At trial, Defendants responded that Prosecutor Horn received the Petty brothers' reports before the state court trial. Defendant Police Officers argue that the Cuyahoga County Prosecutor's Office received the Petty brother's account and any inadvertent or intentional failure to give the Petty information to the state court defendants was the prosecutors', but not their fault.

In support of this contention that Prosecutor Horn received the Petty brothers' murder description, Defendants showed that Prosecutor Horn had written the phrase "8 yr. old Eddie Petty" on the back of a witness list Prosecutor Horn prepared for subpoenas of trial witnesses. The front of the list was dated November 8, 1995. Prosecutor Horn testified that he had given this list to his secretary before Plaintiffs' criminal trial but could not say with certainty when the phrase "8 yr. old Eddie Petty" was written on the page.[11]

The Court agrees that Petty's name on the back of this 1995 list is strong evidence that Prosecutor Horn received notice of the different Petty shooting report before the trial, suggesting that Defendants had given it to him. But the witness list Petty references does not conclusively show that Prosecutor Horn received information on the Petty brother statements before trial. Horn testified that he didn't recall when he wrote the note on the back of the witness list.[12] The notes on the back of the witness list were not dated, and they did not contain the same information (addresses) as the names on the front.[13]

---

[11] Doc. 377-1 at 2.
[12] Doc. 361 at 26.
[13] *See* Doc. 377-1. Although the Plaintiffs did not raise this point at trial or in their submissions, the Court also notes that the handwriting on the back does not match the writing on the front. The subpoena list on the front is printed, and the names on the back are written in cursive. Only one phrase on the front of the list is written in cursive: the note "Call Prosecutor HORN," which was obviously not written by Horn himself.

The jury had to choose between two competing explanations for Eddie Petty's name's appearance on the back of Prosecutor Michael Horn's witness list: either Horn saw the Petty report before trial, or Horn wrote the name down at some later date. The jury's choice between these two explanations turned, in part, on their assessment of Horn's credibility—whether they believed his repeated testimony that he did not believe he had ever seen the Petty reports before the state court trial.

Under Rule 59, the Court is not free to re-weigh the evidence and disturb the jury's resolution of this factual issue.

### ii. Defendants Are Not Entitled to Effective Assistance of Counsel

Secondly, Defendants argue that their co-counsel violated their Sixth Amendment right to effective assistance of counsel.

However, there is no Sixth Amendment right to counsel in civil cases, much less a right to effective counsel.[14] It is bold for Defendants to accuse co-counsel of incompetence in a filing that itself so regularly misstates the relevant legal standards and record evidence.

### iii. The Court Properly Granted Plaintiffs' Motion *in Limine* to Exclude References to Gunshot Residue

At trial, the Court granted Plaintiffs' motion to bar references to gunshot residue purportedly found on Plaintiffs' hands, clothes, or vehicle.[15] Defendants say that this ruling prevented them from showing that they ultimately had the right suspects.

Defendants miss the mark for two reasons. First, whether the substances found on Plaintiffs' persons and property was "gunshot residue" is opinion testimony. Only a person

---

[14] *See Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 26 (1981) (holding that the due process clause *may* guarantee a right to counsel in civil cases implicating a defendant's liberty interests).
[15] Doc. 279.

who "is qualified as an expert" can offer such testimony under Federal Rule of Evidence

702.[16]  The Court had required Defendants to identify any experts Defendants would use.

Defendants never disclosed any such expert to Plaintiffs.  The Court granted the motion in

*limine* because Defendants failed to comply with Evidence Rule 702 disclosure requirements.

Moreover, any gunshot-residue evidence would have been both irrelevant and

unfairly prejudicial under Federal Rules of Evidence 401[17] and 403.[18]

Plaintiffs submitted two claims to the jury[19]: that Defendants used an unduly

suggestive photo-identification procedure, and that they withheld *Brady* materials from

Plaintiffs.  Any gunshot residue had no arguable relevance for either claim.

iv.     The Court Properly Denied Defendants' Motion to Bifurcate the Trial

The Court denied Defendants' motion to bifurcate the trial into separate liability and

damages proceedings.[20]  In their motion for a new trial, Defendants claim this denial

confused the jury and prejudiced Defendants,[21] because Plaintiffs testified—at times

emotionally—about the damages caused by their lengthy incarceration.

Bifurcation is the exception, and not the rule.[22]  As the Sixth Circuit cautions, it

"should be resorted to only in the exercise of informed discretion and in a case and at a

---

[16] Fed. R. Evid. 702.

[17] Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

[18] Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

[19] Plaintiffs voluntarily dismissed their claim that they had been held without probable cause before submitting the case to the jury.  *See* Doc. 362 at 19.

[20] Doc. 307.

[21] *See* Fed. R. Civ. P. 42(b) (Providing that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues.").

[22] *See* Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment ("[S]eparation of issues for trial is not to be routinely ordered.").

juncture which move the court to conclude that such action will really further convenience

or avoid prejudice."[23]  Bifurcation would not have been convenient: this was a three-day

trial, and the parties would have had to re-call the same witnesses for the second

proceeding.  Further, Defendants have not pointed to any extraordinary potential prejudice

making bifurcation mandatory.  Finally, the relatively limited damages testimony described

no damage that would be unexpected after a wrongful nineteen-year incarceration.

     v.      <u>The Court Properly Admitted Tamika Harris's Videotaped Deposition</u>

Defendants argue that the Court's admission of Tamika Harris's videotaped

deposition testimony violated their rights under the Confrontation Clause.  However, the

Confrontation Clause only applies to criminal defendants in criminal proceedings.[24]

Furthermore, Defendants did not object to its admission at trial,[25] and they had the

opportunity to cross-examine Harris at the video deposition presented to the jury.

     vi.    <u>The Court Did Not Bar Defendants from Showing that Cuyahoga County
Prosecutor Michael Horn Was Responsible for Plaintiffs' Conviction</u>

Defendants claim that the Court prevented them from arguing that Cuyahoga County

Prosecutor Michael Horn was to blame for failing to disclose exculpatory evidence.

However, the Court expressly permitted Defendants to offer evidence and to argue that

---

[23] *Moss v. Associated Transp., Inc.*, 344 F.2d 23, 26 (6th Cir. 1965).

[24] *See* U.S. Const. amend. VI ("In all *criminal* prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]") (emphasis added).

[25] Had Defendants objected, the Court would have found the evidence admissible hearsay under Federal Rules of Evidence 804(b)(5)(B) and 805(b)(1).

Prosecutor Horn, not them, failed to disclose the Petty evidence.[26] And throughout the trial

Defendants centered their defense on this Horn culpability theory.[27]

    vii.    The Court Properly Barred References to Gangs and Tattoos

    At the trial of this § 1983 action, the Court granted Plaintiffs' motion *in limine* to bar

references to gangs and tattoos. In their motions for a new trial, Defendants contend that

this ruling prevented them from presenting the defense that "[t]he officers were operating

in the middle of violent gang wars."

    Gangs and tattoos were irrelevant[28] to whether Defendants used an impermissibly

suggestive photo array or withheld exculpatory evidence. Defendants' argument vividly

illustrates why these references would have been unduly prejudicial.[29] The only reason to

mention gangs and tattoos would be to convince the jury that the officers were justified in

using unconstitutional means to combat gang violence.

    viii.    The Jury Found that Defendants' Use of an Unduly Suggestive Photo Array
          Was Not Harmless

    Defendants confusingly argue that Defendants' use of an unduly suggestive photo

array was "harmless" because 1) Defendants had already arrested the Plaintiffs before the

identification, and 2) Harris later identified Plaintiffs in court.

---

[26] Doc. 360 at 6-7. ("[T]here's always in these cases the empty chair defense, and so, if the defendant wants to, the defendant would be permitted to offer argument or evidence that somebody else was responsible for the -- for the conviction, and more specifically could argue that the Cuyahoga County prosecutors may have been involved in the conviction.").

[27] *See, e.g.*, Doc. 361 at 23-25 (Defendants' cross-examination of Horn, suggesting that Horn must have gotten the Petty information from Defendants because the name appeared on his witness list). Defendants also seemingly argue that Cuyahoga County prosecutors Carmen Marino and Deborah Naiman blocked Plaintiffs' 1998 public records request, making them partially responsible for Plaintiff's post-1998 incarceration. As discussed below, Defendants never made this argument at trial.

[28] Fed. R. Evid. 401.

[29] Fed. R. Evid. 403.

The "harmlessness" of an alleged constitutional violation is not a ground for relief under Rule 59. Further, the jury has already resolved this factual dispute against Defendants. The jury was instructed that it could only return a Plaintiffs verdict if the suggestive photo array proximately caused Plaintiffs' wrongful conviction and incarceration.[30] Even if the Court agreed with Defendants, it could not disturb the jury's finding on this point.

ix.     Defendants Are Not Entitled to Qualified Immunity

Finally, Defendants argue that they are entitled to assert a qualified immunity defense.

Defendants did not raise qualified immunity on summary judgment. They raised qualified immunity as a defense in their notice of appeal challenging the Court's denial of their motion for leave to amend their answer[31] and the Court's imposition of sanctions on them for failure to produce a witness.[32] In an interlocutory appeal, the Sixth Circuit held that Defendants had forfeited this defense on summary judgment.[33]

At trial, immediately before the Court charged the jury, Defendants stated that "we would like to renew our motion for qualified immunity."[34] The Court denied the motion but stated that Defendants could raise qualified immunity in a post-judgement motion.[35]

First, the Court finds that Defendants gave up this defense. Defendants are not entitled to qualified immunity because they merely used the "qualified immunity" phrase in

---

[30] Doc. 362 at 119.
[31] Doc. 126.
[32] Doc. 128.
[33] Doc. 213 at 5.
[34] Doc. 362 at 594.
[35] *Id.*

a brief.  They must *show* this entitlement by citing to relevant legal precedent showing that the constitutional violations were not clearly established.

Defendants do not make this showing.  Their brief presents a series of logically disconnected arguments mis-citing to irrelevant legal authorities.  In our adversarial system, it is not the Court's responsibility to root around in Defendants' scattershot and legally incoherent submission in search of a coherent legal argument.

Nevertheless, out of an abundance of caution, the Court addresses Defendants' claim on the merits.  The Court construes Defendants' motion as a renewed Rule 50(b) motion for judgment as a matter of law.

Qualified immunity shields public officials from suit.[36]  To overcome qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[37]  When the Court considers the legal question of qualified immunity in light of a plaintiff jury verdict, the court "must review the evidence in the light most favorable to the Plaintiffs, making all reasonable inferences in their favor."[38]

Here, the jury has found that Defendants violated Plaintiffs' constitutional rights.  The only remaining issue is whether the rights in question were "clearly established" in 1995.

Plaintiffs' first claim was that Defendants violated their due process rights to a fair trial by using an unduly suggestive photo array.  The Supreme Court's 1977 *Manson v. Braitwaithe* decision held that an identification procedure violates due process when it is

---

[36] *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).
[37] *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)).
[38] *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

unnecessarily suggestive and unreliable.[39]  *Manson* itself held that using only a suspect photo in an out-of-court identification was unnecessarily suggestive.  Here, Defendants did just that.[40]

And when the Court instructed the jury on the factors bearing on the identification's reliability, the Court cited *Manson*'s reliability factors verbatim.[41]  Because the jury found that Defendants violated Plaintiffs' constitutional rights applying legal standards established in 1977, the Court finds that the rights were clearly established at the time of the 1995 suggestive identification.  Defendants are not entitled to qualified immunity on this claim.

Plaintiffs' second claim was that Defendants knowingly fabricated evidence or withheld evidence favorable to Plaintiffs.  The 1963 *Brady v. Maryland* decision ruled that evidence must be turned over to defense counsel where it "would tend to exculpate [the defendant]."  Here, Defendants have stipulated that the Petty brothers' report was exculpatory.  Furthermore, the Sixth Circuit has held in *Moldowan v. City of Warren* that police officers' shared obligation to turn over exculpatory materials was clearly established in August 1990.[42]  Thus, the Court finds that Defendants are not entitled to qualified immunity on this claim either.

**B.  The Court Denies Defendants' Rule 60(b) Motions to Set Aside the Verdict**

Defendants submit three separate motions to set aside the jury verdict under Federal Rule of Civil Procedure 60(b).

---

[39] 432 U.S. 98, 109 (1977).

[40] *Id. See also Stoval v. Denno*, 388 U.S. 293, 302 (1967) ("The practice of showing suspects singly to persons for the purposes of identification, and not part of a lineup, has been widely condemned.").

[41] *Manson*, 98 U.S. at 114-15.

[42] 578 F.3d 351, 382 (6th Cir. 2009) ("Although our recognition of this type of a claim is more recent and less specific, the overwhelming number of decisions from other circuits recognizing this type of claim satisfies us that any reasonable police officer would know that suppressing exculpatory evidence was a violation of the accused's constitutional rights.").

Defendants first submit a "Motion for a New Trial Based on Newly Discovered Evidence Per FRCP 59(b) and 60(b)(2)."[43]  To obtain relief under Rule 60(b)(2),[44] the movant "needs to show by clear and convincing evidence (1) that it exercised due diligence to obtain the evidence and (2) that the evidence is material, *i.e.*, would have clearly resulted in a different outcome."[45]

The "newly discovered evidence" is a December 2011 letter from Cuyahoga County prosecutor Amey Tucker to East Cleveland Detective Ernest Stanford.  The letter gives an opinion that police may not photograph juveniles under Ohio Revised Code § 2151.313 without a court order, unless there is probable cause to believe the juvenile committed a felony.[46]  However,  it also states that "[p]hotographing and fingerprinting of juveniles is routinely conducted during the booking process and is permitted under [Ohio law],"[47] Defendants say this letter supports their claim that they were excused from using an appropriate photo array before 2011.

But the letter itself suggests that the officers could have assembled a photo array that included pictures of other juveniles where the police had probable cause to believe those other juveniles had committed felonies.

Defendants also do not explain why they were unable, with reasonable diligence, to discover this letter until after trial.  Defendants say that they were prevented from discovering this letter because Plaintiffs refused to attend Detective Sandford's

---

[43] Doc. 354.  Plaintiffs oppose.  Doc. 378.
[44] Fed. R. Civ. P. 60(b)(2) (providing that the Court may set aside the verdict if there is "newly discovered evidence that, which reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b).").
[45] *Luna v. Bell*, 887 F.3d 290, 294 (6th Cir. 2018).
[46] Doc. 354-1.
[47] *Id.* at 1.

-13-

deposition.[48]  Even if this were true, it does not explain why Defendants were prevented

from timely offering the letter in discovery or calling Sandford at trial.

Additionally, the evidence is not material.  The letter does not support Defendants'

argument that they were prohibited from using a photo array of juveniles before 2011.

Second, Defendants move under Federal Rule of Civil Procedure 60(b)(1), [49] arguing

that the verdict was the product of "mistake, inadvertence, surprise or excusable neglect."[50]

Defendants request relief because they inadvertently stipulated to the fact that the Petty

brothers' statement to police identifying another shooter was exculpatory.

Under Rule 60(b)(1), the Court considers, "(1) culpability—that is, whether the

neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party

holds a meritorious underlying claim or defense."[51]  If the party seeking relief does not first

show a lack of culpability, the Court does not consider the final two factors.[52]

Defendants have not shown excusable neglect.  This stipulation was included in the

final pretrial order, which Defendants approved.[53]  Even if Defendants mistakenly believed

that they were agreeing to an earlier version of the pretrial order, which struck out the word

"exculpatory" in the stipulation,[54] this does not excuse their failure to spot this error for the

two-week period before trial.

---

[48] Doc. 354 at 1.
[49] Doc. 367.  Plaintiffs oppose.  Doc. 378.  Defendants reply.  Doc. 381.
[50] Fed. R. Civ. P. 60(b).
[51] *Yeschick v. Mineta*, 675 F.3d 622, 628–29 (6th Cir. 2012).
[52] *Id.* at 629.
[53] *See* Doc. 378-1 at 1 (email from Defendants' counsel to Plaintiffs' counsel, failing to object to the stipulation).
[54] *See* Doc. 367 at 8 ("Defense Counsel thought the redlined [final pretrial order] draft of October 29, 2018 that struck out the word exculpatory was incorporated into [the parties'] 'agreement.'").

Defendants also did not object when the Court went over this stipulation while reviewing the jury instructions with the parties.[55]

Because Defendants fail to show excusable neglect, the Court need not consider whether this error prejudiced Plaintiffs or whether Defendants hold a meritorious claim or defense.[56]

Finally, Defendants move for relief under Rule 60(b)(3) on the grounds that Plaintiffs' fraud produced the verdict.[57]  Defendants argue that Plaintiff Eugene Johnson's mother, Rosemary Johnson, wrongfully induced Tamika Harris to recant her testimony.

Rule 60(b)(3) requires the moving party to "show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding."[58]

Defendants' vague and unsupported allegations do not meet this standard. Defendants' offer only the following: when asked at her deposition whether Johnson had pressured her, Harris said "not necessarily."[59]  But Harris's full response to this question was:

> Not necessarily.  I mean, she was like any mother who would want justice for her son.  You know, she was kind of, you know, first kind of like just played the background, like, you know, she just listened to whatever me and Mr. Avery talked about.  *And that was pretty much it.*  She was just, like, you know, once I came forward I -- I seen her again and she was, like, thank you, you know, you know, for, you know, everything that you're doing.[60]

---

[55] *See* Doc. 362 at 594:11-596:25.

[56] They do not—the Petty brothers' report was obviously exculpatory and favorable to Plaintiffs, because it gave an entirely different account of the shooting.  Defendants did not meaningfully contest this point at trial.  Defendants' assertion that the report was not exculpatory because the boys were not credible is also frivolous—the question under *Brady* is whether the evidence is *favorable* to the criminal defendants, not whether it was decisive.

[57] Doc. 365.  Plaintiffs oppose.  Doc. 378.  Defendants reply.  Doc. 381.

[58] Info-Hold, Inc. v. Sound Merch., Inc., 538 F.3d 448, 455 (6th Cir. 2008).

[59] Doc. 377-7 at 41:25.

[60] *Id.* at 41:25-42:9. (emphasis added)

Furthermore, Witness Harris denied that Ms. Johnson pressured her in any way. When asked if Rosemary Johnson threatened her, Harris said "[n]o. No, she was a sweet person."[61] When asked, "[h]as anyone ever, that was involved with this case, put any pressure on you to come forward as you will?" Harris said "No."[62]

The Court denies Defendants' Rule 60(b) motions.

## C. The Court Denies Defendants' Motion to Offset the Judgement

In 1998, two years after their 1996 conviction, Plaintiffs made a public records request seeking copies of all police and investigatory records related to their case. East Cleveland denied this request.

When Plaintiffs initially sued, they claimed that Cuyahoga County prosecutors Carmen Marino and Deborah Naiman learned of this 1998 record request and directed East Cleveland Police to deny it. Plaintiffs claimed that prosecutors Marino and Naiman had no case responsibilities justifying their interference with the public records request. In addition to this denial-of-access-to-courts claim against Marino and Naiman, Plaintiffs also brought *Monell* claims against Cuyahoga County. Before a scheduled trial, Plaintiffs settled these claims for $4.5 million.

Defendants, relying upon *McDermott, Inc. v. AmClyde*,[63] argue that the Court should offset the judgment against Defendants Perry and Johnstone by the amount Cuyahoga paid.[64]

---

[61] *Id.* at 42:11.
[62] *Id.* at 42:21-25.
[63] 511 U.S. 202 (1994).
[64] Doc. 357. Plaintiffs moved for an extension of time to respond to respond to Defendants' motion to offset. Doc. 358. The Court grants Plaintiff an extension. Plaintiffs oppose Defendants' motion. Doc. 358.

i. <u>The Jury Found that Perry and Johnstone Were Responsible for Plaintiffs' Conviction and Wrongful Incarceration</u>

Defendants' motion confuses two legally distinct questions. At times, Defendants seem to be arguing (as they did in their motion for Rule 59 relief) that the Court should offset because Cuyahoga County prosecutor Michael Horn was responsible for failing to turn over exculpatory material to Plaintiffs' criminal defense counsel. As noted above, the Court allowed Defendants to make this argument at trial. But the jury did not buy the argument.

This argument has a fatal flaw: the jury already resolved the question of Horn's responsibility against the defendants. The jury was specifically instructed to only award damages proximately caused by Defendants Perry and Johnstone.[65]

ii. <u>Defendants Are Not Entitled to a Setoff Without a Jury's Joint Responsibility Finding</u>

In their motion, Defendants seem to be gesturing toward a different argument: while the jury found East Cleveland liable for Plaintiffs' initial unlawful detention, Defendants argue that the Cuyahoga County Defendants are jointly responsible for Plaintiffs' *continued* detention after the denied 1998 records request. It is at least conceivable that Defendants and the Cuyahoga County Defendants contributed to the same injury in different ways.

This argument is deficient in several respects. First, whether a setoff remedy is available under § 1983 is not settled in this circuit. *McDermott* was an admiralty case applying federal common law. There is considerable dispute whether federal common law or state law governs offset remedies in § 1983 actions.[66]

---

[65] Doc. 362 at 122 (instructing the jury that "[i]f you return a verdict for the plaintiffs, then you must award them a sum of money that you believe will fairly and justly compensate them for any injury or damage that you believe they actually sustained as a proximate cause -- *as a proximate result of the conduct of the defendants*").

[66] *See Beck v. Manistee Cty.*, No. 1:97-CV-533, 2005 WL 3262437, at *2 (W.D. Mich. Dec. 1, 2005) (nothing that the governing law for setoff remedies under § 1983 is "an interesting and unsettled question").

Second, the *McDermott* setoff remedy comes into play only where the factfinder has found the settling party responsible for the injury. Defendants could have requested a jury instruction apportioning responsibility for Plaintiffs' continued detention between East Cleveland Defendants and the Cuyahoga County Defendants. While the Court did bar prejudicial references to the settlement, the Court explicitly told Defendants that they could make "empty chair" arguments about the settling parties.

Had they done so, *McDermott*'s rule diminishing a plaintiff's claim by the "equitable share of the obligation of the released tortfeasor" might apply.[67] But they did not. And in the absence of a jury verdict apportioning responsibility to the Cuyahoga County Defendants, there is no basis for the Court to grant a setoff against the Cuyahoga County Defendants' settlement.[68]

Defendants are not without recourse. They could, of course, sue Cuyahoga County for contribution under Ohio law.[69]

### D. The Court Holds Plaintiffs' Motion for Judgment on Their Indemnification Claim in Abeyance

Plaintiffs' complaint made state-law indemnification claims against the City of East Cleveland under Ohio Revised Code § 2744(B). That state law requires Ohio political subdivisions to indemnify their public employees for certain claims. Earlier, Plaintiffs moved for summary judgment on this claim, and the Court held that the motion was not ripe before

---

[67] *McDermott*, 511 U.S. at 209.
[68] *See Beck*, 2005 WL 3262437 at *2 (concluding that setoff not warranted where "[t]he jury heard little if any evidence regarding [the settling defendant's] policy and actions and the jury was specifically instructed to confine itself to the particular claims against the [trial defendant]").
[69] *See* O.R.C. § 23078.25.

a judgment became entered against an employee.[70]  Judgment in hand, Plaintiffs now move for summary judgment on this claim.[71]

Ohio Revised Code § 2744(B) provides that "a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment . . . that is obtained against an employee in state or federal court"[72] unless the employee was not acting in good faith or not acting within the scope of their employment.[73]

Plaintiffs argue that they are entitled to judgment against East Cleveland because the City of East Cleveland admitted in its interrogatory responses that it was obligated to indemnify Defendants.[74]  Further, Plaintiffs say they withdrew their City of East Cleveland *Monell* claim in reliance on East Cleveland's indemnification representation.[75]

Defendants argue that the Court should deny the motion because in *Ayers v. City of Cleveland*,[76]  the Ohio Supreme Court will decide whether § 2744(b) gives a judgment creditor standing to proceed directly against a municipality when the employee does not seek indemnification.[77]

First, the Court notes that it is completely improper for the City of East Cleveland to represent Defendants Johnstone and Perry on this issue.  The attorney for the City of East Cleveland submitted its brief on this issue on behalf of Defendants Perry and Johnstone.[78]

---

[70] *See* Doc. 124 at 38.
[71] Doc. 375.
[72] O.R.C. § 2744(B)
[73] O.R.C. § 2744(B)(2).
[74] *See* Doc. 375-1 at 17.
[75] Dkt. 28.  This conference was not transcribed.
[76] No. 2018-0852.  Oral Argument in *Ayers* was held on January 12, 2019; the Ohio Supreme Court has yet to decide the case.  *See* docket, available at: http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2018/0852.
[77] *Id.*
[78] *See* Doc. 376 at 5.

Because Defendants Johnstone and Perry have a conflicting interest in whether to contest

indemnification, East Cleveland's representation presents an obvious conflict of interest.

However, *Ayers* is (at least potentially)[79] relevant to Plaintiff's indemnification claim.

Defendants' concession that they are obligated to indemnify Perry and Johnstone does not

concede the issue in *Ayers*—whether Plaintiffs (as judgment creditors) may directly assert

these claims against East Cleveland.

Thus, the Court holds Plaintiffs' motion in abeyance pending the Ohio Supreme

Court's resolution of *Ayers*. Once *Ayers* is decided, Plaintiffs may renew their argument that

Defendants should be equitably estopped from contesting indemnification.

**E. The Court Grants Plaintiffs' Motion to Amend the Judgment to Add Post-Judgment Interest**

Plaintiffs move[80] under Federal Rule of Civil Procedure 59(e) to amend the judgment

to include post-judgment interest.[81] 28 U.S.C. § 1961(a) provides that interest "shall be

allowed on any money judgment in a civil case recovered in a district court," at a rate "equal

to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week

preceding the date of judgment."[82] For the week prior to the December 4, 2018, judgment,

the rate was 2.7%.[83] The Court grants this motion.

---

[79] Defendants' motion does not indicate whether Defendant Johnstone or Defendant Perry's estate has sought indemnification from East Cleveland.

[80] Doc. 371. Defendants oppose. Doc. 374. Plaintiffs

[81] Fed. R. Civ. P. 59(e) (providing that "[a] motion to alter amend a judgment must be filed no later than 28 days after the entry of the judgment.").

[82] 28 U.S.C. § 1961(a).

[83] *See*
https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=c3ec77dedd37c9aa112f71c9eba34b50&lastobs=5
2&from=&to=&filetype=csv&label=include&layout=seriescolumn&type=package&pp=Download. Plaintiffs requested the interest rate for the week prior to the *verdict*. However, as the text of the statute indicates, the correct interest rate is for the week prior to the judgment.

## F.  The Court Grants in Part Plaintiffs' Motion for Attorney's Fees and Costs

   i.   <u>Attorney's Fees</u>

48 U.S.C. § 1988 provides that the Court may, in its discretion, award reasonable attorney's fees to the prevailing party in a Federal civil rights case.[84]  The Plaintiffs move for attorney's fees, supporting their motion with detailed time records.[85]

Defendants oppose, arguing that the Court should not pay attorney fees because Plaintiffs' attorneys engaged in misconduct.  They raise the same argument raised in their Rule 60(b)(3) motion—that Plaintiffs' counsel encouraged Rosemary Johnson to pressure Tamika Harris to fraudulently recant her testimony.  The Court finds these allegations not proven.

The Court uses the lodestar method to calculate reasonable attorney's fees.[86]  Under this approach, the Court multiplies the number of hours reasonably spent by the attorney's reasonable hourly rate.[87]  The "appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue."[88]

The Court considers the Ohio State Bar Association's 2013 economic survey of the law practice in Ohio when determining the Cleveland market rate.[89]  Finally, the Court also considers the twelve factors outlined in *Hensley v. Eckerhart*.[90]

---

[84] 48 U.S.C. § 1988.

[85] See Docs. 369 through 369-11.  Defendants oppose.  Doc. 370.  Plaintiffs reply.  Doc. 372.

[86] *See* *Wasniewski v. Grzelak-Johannsen, 549 F. Supp. 2d 965, 972 (N.D. Ohio 2008)*.

[87] *Id.*

[88] *B & G Mining, Inc. v. Dir., Office of Workers Comp. Programs, 522 F.3d 657, 663 (6th Cir. 2008)*.

[89] Ohio State Bar Association, *The Economics of Law Practice in Ohio in 2013* (2013), *available at:* https://www.ohiobar.org/globalassets/home/member-benefits/personal-finance/osba_econoflawpracticeohio.pdf. (hereinafter, "OSBA survey").

[90] 461 U.S. 424, 430 n. 3 (1983) ("The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and

The Leovy & Leovy law firm represented Plaintiffs Wheatt and Glover.  Attorneys

Michael Pasternak and Brett Murner represented Plaintiff Johnson.

Before discussing the reasonableness of the individual attorneys' requested rates,

the Court notes that the following findings apply to all Plaintiffs' attorneys: First, Plaintiffs'

attorneys obtained an excellent result for their clients, obtaining a $15 million judgment.

Second, Plaintiffs' attorneys showed high skill and professionalism level in this difficult case.

Third, the median 2012 hourly rate for Ohio Civil Rights practitioners is $350.[91]  Finally, the

2013 Ohio market rate survey is somewhat outdated—customary rates have generally risen

since the Ohio State Bar Association conducted the survey.  For all these reasons, the Court

finds that an above-median hourly rate reasonable.  In particular, the reasonable hourly rate

for this case is higher than if the Court only examined the attorneys' legal experience in

isolation.

Attorney Elizabeth Wang requests fees for 970.75 hours at $400 an hour.  Wang has

practiced law since 2005.  The Ohio 2013 median billing rate for an attorney with 11 to 15

years' experience is $200.[92]  For the reasons stated above, the Court finds that the requested

$400 rate is reasonable.

Attorney Mark Loevy-Reyes requests fees for 260.25 hours at $450 an hour.  Loevy-

Reyes has practiced law since 1992.  The Ohio 2013 median billing rate for an attorney with

---

ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with
the client; and (12) awards in similar cases.").

[91] OSBA survey at 40.  The 75th percentile hourly rate is $500 and the 95th percentile hourly rate is $800.

[92] *Id.* at 39.

26 to 35 years' experience is $225.[93] An above-median rate is justified. The Court finds that a $425 hourly rate is reasonable.

Attorney Michael Kanovitz requests fees for 21.5 hours at $550 an hour. Kanovitz has practiced law since 1994. The Ohio 2013 median billing rate for an attorney with 16 to 25 years' experience is $200.[94] The Court finds that a $425 hourly rate is reasonable.

Attorney Jon Loevy requests fees for 4 hours at $550 an hour. Loevy has practiced law since 1993, and the Ohio 2013 median billing rate for an attorney with 26 to 35 years' experience is $225.[95] An above-median rate is justified. The Court finds that a $425 hourly rate is reasonable.

Attorney Frank Newell requests fees for 19 hours at $350 an hour. Newell has practiced law since 2006, and the Ohio 2013 median billing rate for an attorney with 11 to 15 years' experience is $200.[96] The Court finds that a $275 hourly rate is reasonable.

Leovy & Leovy finally request fees for 60 hours of time by paralegals Melinda Ek, Brian Swift, and Lauren Lebata at $125 an hour. The Court finds that this rate is reasonable.

Plaintiff's attorney Michael Pasternak, counsel for Plaintiff Johnson, requests fees for 416 hours at $350 an hour. Pasternak has practiced law since 1992, and the Ohio 2013 median billing rate for an attorney with 26 to 35 years' experience is $225.[97] The Court finds that Pasternak's requested rate is reasonable.

---

[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] *Id.*

Finally, Plaintiff's attorney Brett Murner, counsel for Plaintiff Johnson, requests fees for 256.30 hours at $300 an hour.  Murner has practiced law since 2001, and the Ohio 2013 median billing rate for an attorney with 16 to 25 years' experience is $200.[98]  For the reasons given above, the Court finds that the requested $300 hourly rate is reasonable.

The Court also finds that the hours expended on the case, that Plaintiffs' counsel have documented, were reasonable.  The Court notes several factors bearing on this finding: first, Plaintiffs excluded time spent pursuing its settled claims against the Cuyahoga County Defendants.  Second, Defendants frequently bogged down this case with frivolous motions and discovery misconduct.[99]  Third, the Loevy & Loevy attorney with the lowest hourly rate, Elizabeth Wang, performed the lion's share of the work in this case.  Finally, this lawsuit was unusually difficult due its complex 20-year procedural history.

In sum, the Court grants Attorney's fees to Loevy & Loevy in the following amounts:

| Attorney | Hours | Reasonable Rate | Total |
|---|---|---|---|
| Wang | 970.75 | $400 | $388,300 |
| Loevy-Reyes | 260.25 | $425 | $110,606 |
| Kanovitz | 21.50 | $425 | $9,137.50 |
| Loevy | 4.00 | $425 | $1,700 |
| Newell | 19.00 | $275 | $5,225 |
| Paralegals | 60.00 | $125 | $7,500 |
| Loevy & Loevy Total | | | $522,468.50 |

---

[98] *Id.*
[99] *See, e.g.*, Doc. 128 (noting that East Cleveland had failed to produce a Rule 30(b)(6) witness as ordered); Doc. 135 (granting Plaintiffs' motion for Rule 37 sanctions).

The Court also grants Pasternak $145,600 in fees and grants Murner $76,890 in fees.

ii.    Costs and Expenses

Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920 provide that costs other than attorneys' fees will shall be allowed to the prevailing party.  Further, attorney's fees under § 1988 include expenses.

Plaintiffs document $18,392.63 in costs taxable under Rule 54(d) and $34,872.70 in expenses taxable under § 1988.[100]

Because Plaintiffs have adequately supported their motion for costs and expenses, the Court grants Plaintiffs' motion.

**G.  The Court Denies Plaintiffs' Motion to Strike as Moot**

Plaintiff Johnson moves to strike allegations of fraud contained in Defendants' Rule 60(b) motion and Defendants' opposition to Plaintiffs' motion for attorney's fees and costs.[101]  While the Court agrees that Defendants' unsubstantiated and insulting allegations probably represent sanctionable misconduct, they are also immaterial.

Because the Court has resolved these motions in Plaintiffs' favor, the Court denies the motion as moot.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion for a new trial, **DENIES** Defendants' motions to set aside the verdict, and **DENIES** Defendants' motion to offset the judgment.  Further, the Court **STAYS** and **HOLDS IN ABYEANCE** Plaintiffs' motion

---

[100] See Doc. 369-11.
[101] Doc. 379.  Defendants reply.  Doc. 380.

to reinstate their indemnification claim, **GRANTS** Plaintiffs' motion to amend the judgment,

**GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for Attorney's fees and costs, and

**DENIES** Plaintiffs' motion to strike as moot.

IT IS SO ORDERED

Dated:  August 29, 2019                              s/      *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE